AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT



for the

SEP 2 1 2022

BONNIE HACKLER
Clerk, U.S. District Court

By_____
Deputy Clerk

Deboraugh Rodgers
*Petitioner*

v.

Case No. CIV-22-237-JFH-KEW
*(Supplied by Clerk of Court)*

JASON CHENNAULT, CHEROKEE COUNTY SHERIFF
and THE CHEROKEE NATION SUPREME COURT
*Respondent*

SECOND AMENDMENT

*(name of warden or authorized person having custody of petitioner)*

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1. (a) Your full name: Deboraugh D. Rodgers
   (b) Other names you have used: McCarty, McEntire, Terrel, Allen, Deborah
2. Place of confinement:
   (a) Name of institution: Craig County JAIL
   (b) Address: 210 West Delaware
   Uinita, OK 74301
   (c) Your identification number: #81270
3. Are you currently being held on orders by:
   ☐ Federal authorities    ☐ State authorities    ☒ Other - explain:
   TRIBAL COURT: NO CHARGES: NO BOND: NO RELEASE DATE: NO COURT DATE
4. Are you currently:
   ☒ A pretrial detainee (waiting for trial on criminal charges)
   ☐ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
   If you are currently serving a sentence, provide:
      (a) Name and location of court that sentenced you:

      (b) Docket number of criminal case:
      (c) Date of sentencing:
   ☐ Being held on an immigration charge
   ☐ Other *(explain)*:

PAGE 1 (of 111)

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

*CIV-22-237-JFH-KEW*

## Decision or Action You Are Challenging

5.      What are you challenging in this petition:

☐ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

☒ Pretrial detention

☐ Immigration detention

☐ Detainer

☐ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)

☐ Disciplinary proceedings

☒ Other *(explain)*: I AM CHALLENGING THE JURISDICTION OF THE CHEROKEE NATION DISTRICT COURT AND HAVE APPEALED TO THE SUPREME COURT OF CN BUT THE DISTRICT COURT DENIED ME "DUE PROCESS" IN THAT APPEAL. I'M INCARCERATED AND

6.      Provide more information about the decision or action you are challenging:  RELEASED → CONT.

(a) Name and location of the agency or court: CHEROKEE NATION DISTRICT COURT AND CHEROKEE NATION SUPREME COURT (TAHLEQUAH, OK.)

(b) Docket number, case number, or opinion number: DISTRICT COURT: CM-21-772 / SUPREME COURT: SC-22-07

(c) Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed)*: [ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR WANT OF JURISDICTION] CHEROKEE NATION LACKS JURISDICTION OVER ME — HOWEVER THE UNITED KEETOOWAH BAND OF CHEROKEE INDIANS HAS JURISDICTION OF ME. I SHOULD BE IN THE UKB COURT AND NOT CNO COURT. IT IS ILLEGAL FOR CNO COURT TO HOLD ME INDEFINATELY

(d) Date of the decision or action: (CM-21-772) 8/12/2022

## Your Earlier Challenges of the Decision or Action

7.      **First appeal**

Did you appeal the decision, file a grievance, or seek an administrative remedy?

☒ Yes          ☐ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court: CHEROKEE NATION SUPREME COURT

(2) Date of filing: 8/22/22

(3) Docket number, case number, or opinion number: SC-22-07

(4) Result: PENDING

(5) Date of result: PENDING

(6) Issues raised: PLEASE SEE ATTACHED COPY OF #29 ISSUES RAISED AT PAGES 103-105 HEREIN LISTED AS EXHIBIT "C".

**Continuation of Page 2. ¶ 5, Other:**

On "OR Bond" for the Contempt of Court charge and the bond for the other three charges of DUI, Resisting Arrest and Firearm in Vehicle have been revoked.  I am now being held illegally without bond, charges, court date or release date.

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

*CIV-22-237-JFH-KEW*

(b) If you answered "No," explain why you did not appeal: _____

_____

8. **Second appeal**

After the first appeal, did you file a second appeal to a higher authority, agency, or court?

☒ Yes        ☐ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court: U.S. DISTRICT COURT EASTERN DISTRICT OF OKLAHOMA

(2) Date of filing: 8/25/22

(3) Docket number, case number, or opinion number: CIV-22-237-JFH-KEW

(4) Result: MAGISTRATE JUDGE WEST AMENDED TO 28 U.S.C § 2241

(5) Date of result: PENDING

(6) Issues raised: CHANGE OF VENUE TO UKB TRIBAL COURTS; SPEEDY TRIAL; LACK OF JURISDICTION FOR CNO; LACK OF DUE PROCESS; DENIED MOTION TO STAY; DENIED MOTION TO DISSMISS FOR WANT OF JURISDICTION; CHEROKEE NATION HAS IGNORED ITS OWN COURT RULES; CHEROKEE NATION COURTS WERE CREATED BY AN UNLAWFUL TRIBAL GOVERNMENT; CHEROKEE NATION DISTRICT COURT ILLEGALLY INCARCERATED ME ON 8/22/22 TO CHEROKEE COUNTY DETENTION CENTER AND ON 9/2/22 TRANSFERRED ME TO CRAIG Co. JAIL FOR UNLAWFUL CHARGE OF

(b) If you answered "No," explain why you did not file a second appeal: CONTEMPT OF COURT ON 8/22/22.

_____

9. **Third appeal**

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☐ Yes        ☒ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court: _____

_____

(2) Date of filing: _____

(3) Docket number, case number, or opinion number: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

CIV-22-237-JFH-KEW

_____

_____

_____

_____

(b) If you answered "No," explain why you did not file a third appeal: NO DECISION/ RULING HAS BEEN DETERMINED FROM THE FIRST APPEAL TO MY KNOWLEDGE.

10.    **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☒ Yes            ☐ No

If "Yes," answer the following:

(a)    Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

☒ Yes                ☐ No

If "Yes," provide:

(1) Name of court: U.S. DISTRICT COURT EASTERN DISTRICT OF OKLAHOMA

(2) Case number: CIV-22-237-JFH-KEW

(3) Date of filing: 8/25/2022

(4) Result: MAGISTRATE JUDGE WEST CONSTRUED THE ACTION AS ARISING UNDER 28 U.S.C. §2241

(5) Date of result: 8/29/2022

(6) Issues raised: CHANGE OF VENUE TO UKB TRIBAL COURTS; SPEEDY TRIAL; LACK OF JURISDICTION FOR CNO; LACK OF DUE PROCESS; DENIED MOTION TO STAY; DENIED MOTION TO DISMISS FOR WANT OF JURISDICTION; CHEROKEE NATION HAS IGNORED IT'S OWN COURT RULES; CHEROKEE NATION COURTS WERE CREATED BY AN UNLAWFUL TRIBAL GOVERNMENT; CHEROKEE NATION DISTRICT COURT ILLEGALLY INCARCER-ATED ME ON 8/22/22 TO CHEROKEE COUNTY DETENTION CENTER AND ON 9/2/22 TRANSFERRED ME TO CRAIG Co. JAIL FOR UNLAWFUL CHARGE OF CONTEMPT OF COURT

(b)    Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), 8/22/22. seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☐ Yes            ☒ No

If "Yes," provide:

(1) Name of court: _____

(2) Case number: _____

(3) Date of filing: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

PAGE 5 (of 111)

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241     CIV-22-237-JFH-KEW

_____
_____
_____
_____

(c)     Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your
conviction or sentence: I DO NOT HAVE A FEDERAL JUDGEMENT THAT
HAS IMPOSED A SENTENCE TO BE SERVED IN THE FUTURE
UNDER 28 U.S.C. § 2255 IN A FEDERAL COURT.
INSTEAD, A PRETRIAL DETENTION PETITION FOR
WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241
IS APPROPRIATE.

_____

11.   **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☐ Yes      ☒ No

If "Yes," provide:

(a)     Date you were taken into immigration custody: _____

(b)     Date of the removal or reinstatement order: _____

(c)     Did you file an appeal with the Board of Immigration Appeals?

☐ Yes            ☐ No

If "Yes," provide:

(1) Date of filing: _____

(2) Case number: _____

(3) Result: _____

(4) Date of result: _____

(5) Issues raised: _____
_____
_____
_____
_____
_____

(d)     Did you appeal the decision to the United States Court of Appeals?

☐ Yes      ☒ No

If "Yes," provide:

(1) Name of court: _____

(2) Date of filing: _____

(3) Case number: _____

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241          CIV-22-237-JFH-KEW

    (4) Result: _____

    (5) Date of result: _____

    (6) Issues raised: _____

_____

_____

_____

_____

_____

**12.** **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☐ Yes       ☒ No

If "Yes," provide:

(a) Kind of petition, motion, or application: _____

(b) Name of the authority, agency, or court: _____

(c) Date of filing: _____

(d) Docket number, case number, or opinion number: _____

(e) Result: _____

(f) Date of result: _____

(g) Issues raised: _____

_____

_____

_____

_____

_____

### Grounds for Your Challenge in This Petition

**13.**    State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**GROUND ONE:** DISTRICT COURT OF CHEROKEE NATION DENIED ME MOTION TO DISMISS CRIMINAL CHARGES FOR WANT OF JURISDICTION, THAT MOTION DEALT WITH THE FACT THAT THE CNO COURT SYSTEM HAD BEEN ENACTED BY CNO COUNCIL THAT EXCEEDED IT'S AUTHORITY UNDER IT'S PURPORTED CONSTITUTION.

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241    CIV-22-237-JFH-KEW

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

SEE MOTION OF DEFENDANT AND BRIEF IN SUPPORT THEREOF AT PAGES 15~79 OF THIS PETITION.

(b) Did you present Ground One in all appeals that were available to you?

☒ Yes            ☐ No

**GROUND TWO:** FAILURE OF DISTRICT COURT TO GRANT CHANGE OF VENUE TO UNITED KEETOOWAH BAND OF CHEROKEE INDIANS IN OKLAHOMA AND DENIAL OF ORAL ARGUMENT ON THAT MOTION.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

SEE MINUTE ORDER OF 5/19/22 AT PAGE 108 OF THIS PETITION.

(b) Did you present Ground Two in all appeals that were available to you?

☒ Yes            ☐ No

**GROUND THREE:** DENIAL OF DUE PROCESS BY NOT STAYING JURY TRIAL TO ENABLE ME TO APPEAL TO THE SUPREME COURT OF CNO REGARDING PETITIONER'S CHALLENGE TO JURISDICTION OF CNO DISTRICT COURT.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

SEE ORDER DENY STAY AND PETITIONER/DEFENDANT MOTION FOR STAY AT PAGES 90~94 OF THIS PETITION.

(b) Did you present Ground Three in all appeals that were available to you?

☒ Yes            ☐ No

PAGE 8 (OF 111)

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

CIV-22-237-JFH-KEW

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

_____

_____

_____

_____

_____

(b) Did you present Ground One in all appeals that were available to you?

❏ Yes             ❏ No

**GROUND** ~~TWO~~ **FIVE**: WHEN PETITIONER REFUSED TO PARTICIPATE IN JURY TRIAL BECAUSE OF PENDING APPEAL FROM DISTRICT COURT DENIAL OF MOTION CHALLENGING JURISDICTION OF COURT, JUDGE HELD PETITIONER IN CONTEMPT OF COURT, REVOKED HER BOND AND HAD HER INCARCERATED AT CCDC, APPROXIMATELY TEN DAYS LATER, PETITIONER WAS TRANSPORTED

(a) Supporting facts *(Be brief. Do not cite cases or law.)*: TO CRAIG COUNTY JAIL WHERE SHE CONTINUES TO BE HELD. THERE IS NO DOCUMENTATION ON FILE IN THE DISTRICT COURT FILE OR SUPREME COURT FILE JUSTIFYING SUCH TREATMENT. THIS TRANSFER AND CONTINUED INCARCERATION IS PATENTLY ILLEGAL.

PETITIONER WAS RELEASED ON O.R. BOND 8/30/22 AND YET IS STILL INCARCERATED. SEE COURT MINUTE / ORDER ON PAGE **111** OF THIS PETITION.

(b) Did you present Ground ~~Two~~ FIVE in all appeals that were available to you?

❏ Yes             ☒ No

**GROUND THREE**: _____

_____

_____

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

_____

_____

_____

_____

_____

(b) Did you present Ground Three in all appeals that were available to you?

❏ Yes             ❏ No

PAGE 9 (of 111)

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

CIV-22-237-JFH-KEW

**GROUND FOUR:** ATTEMPT BY CNO DISTRICT COURT JUDGE TO FORCE PETITIONER TO PARTICIPATE IN JURY TRIAL WHILE AN APPEAL FROM HIS ORDER DENYING JURISDICTIONAL CHALLENGE WAS PENDING BEFORE CNO SUPREME COURT AS WELL AS PENDING MOTION FOR STAY.

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

SEE PETITION IN ERROR AND MOTION FOR STAY FILED IN SUPREME COURT ON 8|22|22. SEE PAGES 95-107 OF THIS PETITION.

(b) Did you present Ground Four in all appeals that were available to you?

☒ Yes          ☐ No

14. If there are any grounds that you did not present in all appeals that were available to you, explain why you did not: PLEASE SEE ATTACHED MEMORANDUM ON PAGES 12 ~ 14 OF THIS PETITION.

**Request for Relief**

15. State exactly what you want the court to do: DEMAND STAY OF CNO DISTRICT COURT/SUPREME COURT PROCEEDINGS UNTIL JURISDICTION IS DETERMINED, ORDER THE PETITIONER'S IMMEDIATE RELEASE FROM CUSTODY, A DECLARATORY JUDGEMENT DECLARING THE CHEROKEE NATION ORGANIZATION AND COURTS AS UNCONSTITUTIONAL, INVESTIGATE JUDICIAL AND PROSECUTORIAL MISCONDUCT, DISMISS CHARGES BASED ON DOUBLE JEOPARDY.

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241   CIV-22-237-JFH-KEW

## Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

HAND DELIVERED BY POA TO BE FILED IN THE EASTERN DISTRICT OF OKLAHOMA COURT

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct. I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date: 9/19/22

_____ , pro se
Signature of Petitioner

_____
Signature of Attorney or other authorized person, if any

CIV-22-237-JFH-KEW

MEMORANDUM

LAST WEEK I WAS DENIED MY LEGAL DOCUMENTS AND SHARPENED PENCIL THAT I PURCHASED FROM THE COMMISSARY WHILE INCARCERATED AT CRAIG COUNTY JAIL. I INFORMED THE STAFF THAT I NEEDED THESE ITEMS DUE TO ME REPRESENTING MYSELF AS pro se. THE STAFF CONTINUED TO DENY ME THE OPPORTUNITY TO FILE THE PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 AS REQUESTED BY MAGISTRATE JUDGE K. WEST ON 8/28/22 IN WHICH I WAS GIVEN A DEADLINE OF 9/19/22. I THEN FILED A GRIEVANCE ON THE JAIL KIOSK BECAUSE I HAD BEEN INFORMED BY JAIL STAFF THAT THE SHERIFF, HEATH WINFREY IS THE PERSON THAT HAD MADE THE DECISION TO KEEP MY DOCUMENTS FROM ME. I EVENTUALLY DID RECEIVE MY ITEMS, HOWEVER, IT IS OBVIOUS THAT I WILL NOT ALWAYS HAVE THE SAME OPPORTUNITY IN THE FUTURE. THIS SHOULD BE A GRAVE CONCERN FOR EVERYONE.

ON 8/22/22 I WAS ARRESTED DURING TRIAL PRO-CEEDINGS STEMMING FROM THE CHEROKEE NATION OF OKLAHOMA DISTRICT COURT AMENDED CHARGES FILED ON 7/26/22 (CM-21-772). THE ABORTED

CIV-22-237-JFH-KEW

JURY TRIAL RESULTED IN A CONTEMPT OF COURT CHARGE. INITIALLY I WAS INCARCERATED AT CHEROKEE COUNTY DETENTION CENTER (CCDC) FROM 8/22/22 - 9/2/22. ON 8/23/22 I APPEARED (VIA TELEPHONE) BEFORE CNO JUDGE PAGE FROM THE LOBBY OF CCDC. HOWEVER, DUE TO ME STANDING IN THE LOBBY AS AN INCAPACITATED INDIVIDUAL, STEMMING FROM THE SHEER TORTURE I HAD ENDURED THE PREVIOUS TWENTY-FOUR HOURS PRIOR TO MY TELEPHONIC APPEARANCE, COURT WAS CONTINUED TO 8/30/22 IN WHICH JUDGE PAGE RELASED ME WITH O.R. BOND ON THE CONTEMPT CHARGES AND SET A COURT DATE. HOWEVER I REMAIN INCARCERATED WITH NO BOND; NO CHARGES; NO RELEASE DATE; NO COURT DATE. ON 9/2/22, I WAS TRANSFERRED TO CRAIG COUNTY JAIL TO BE HELD INDEFINATELY.

ON 8/22/22 JUDGE BARTEAUX AND ASSISTANT ATTORNEY GENERAL, MS. CROSSLIN, ENGAGED IN JUDICIAL AND PROSECUTORIAL MISCONDUCT BY GOING OFF THE RECORD AFTER THE JURY WAS SWORN IN AND THEN DISMISSING THE JURY. MS. CROSSLIN MADE SEVERAL MISLEADING CLAIM IN WHICH JUDGE BARTEAUX AGREED. IN FACT, JUDGE BARTEAUX HAD ASKED THE FORMER JUDGE

CIV-22-237-JFH-KEW

OF CHEROKEE COUNTY, Ms. CROSSLIN, ON HOW HE SHOULD PROCEED. THEY CONTINUED DIS-CUSSION BACK AND FORTH OFFERING SUGGESTIONS TO EACH OTHER UNTIL THEY DECIDED TO ARREST ME BASED ON Ms. CROSSLIN'S MISLEADING THE COURT STATEMENT REGARDING AN APPEALANT RULE. Ms. CROSSLIN STATED TO JUDGE BARTEAUX THAT THE CHEROKEE NATION SUPREME COURT HAD RECENTLY RULED ON THE CNO SUPREME COURT RULE #75 (THAT ALLOWS A DEFENDANT TO APPEAL A DISTRICT COURT DENIAL ON A MOTION) TO NOT ALLOW AN APPEAL ON THIS BASIS. IN FACT, THERE HAS NOT BEEN SUCH A RULING OR DECISION FROM THE CNO SUPREME COURT. HOWEVER, JUDGE BARTEAUX USED THIS FALSE INFORMATION TO ARREST ME ON CHARGES OF CONTEMPT OF COURT.

I BELIEVE THIS WAS RETALIATION FROM FORMER JUDGE, MS. SANDY J. CROSSLIN, THE FORMER JUDGE OF CHEROKEE COUNTY, THE VERY COUNTY IN WHICH I HAVE BOTH A TORT CLAIM AND AN OPPORTUNITY FOR A 42 U.S.C. 1983 LAWSUIT. THE TORT CLAIM DEADLINE IS APPROACHING AND I WILL NOT BE ABLE TO CONTINUE TO FILE APPROPRIATE LEGAL DOCUMENTS IN A TIMELY FASHION AS A DIRECT RESULT OF MS. CROSSLIN'S PROSECUTORIAL MISCONDUCT AND RETALIATIVE BEHAVIOR DIRECTED TO ME, PERSONALLY. MS. CRUSSLIN AND JUDGE BARTEAUX SHOULD RECUSE THEMSELVES

CIV-22-237-JFH-KEW

1

## IN THE DISTRICT COURT OF THE CHEROKEE NATION
## CRIMINAL DIVISION

CHEROKEE NATION,                    )

        **Plaintiff,**                  )

Vs.                                 )      Case No.  CM-21-772

Deboraugh Rodgers,                  )

        Defendant,                      )

### DEFENDANT'S MOTION TO DISMISS FOR WANT OF JURISDICTION

Defendant Deboraugh Rodgers, appearing *pro se,* moves the Court for an order dismissing the above styled and numbered case for want of jurisdiction and authority to act in civil and criminal cases.

### BRIEF OF DEFENDANT
### INTRODUCTION

Defendant is a duly enrolled "member" in the United Keetoowah Band of Cherokee Indians in Oklahoma (UBK) and a "citizen" of the Cherokee Nation of Oklahoma (CNO).  In the subject case, defendant is charged with three misdemeanor counts:   driving under the influence, obstruction of justice, and a firearms offense arising out of an arrest by Tahlequah and Cherokee County officers on April 7, 2021. Defendant has entered a plea of "Not Guilty" as to each count. The arrest of defendant occurred within the boundaries of the Cherokee Reservation "Territory" by Tahlequah Officer Matthew Frits and Lt. Dexter Scott, a Deputy Sheriff in Cherokee County, Oklahoma.



2

## ARGUMENT

**I.**   **THE UKB POSSESSES CIVIL AND CRIMINAL JURISDICTION OVER THE CHEROKEE RESERVATION**[1]

**A.**   **The UKB descend from the historical Cherokee Nation.**

The word "KEETOOWAH" is the traditional name for the Cherokee people in the Cherokee language.  The UKB traces its history to the Western Cherokees or Old Settlers, the traditional Cherokee people who began moving to the region of the Arkansas territory in the late 18th century to escape colonization and to maintain the traditional Cherokee culture, religion, and lifeways. In the west, they established a Cherokee government separate and distinct from the Eastern Cherokee government in the southeastern United States. In 1817, the Western Cherokee received a reservation in the Arkansas territory.[2]  In 1828, the Western Cherokee government agreed by treaty to relinquish its Arkansas reservations in exchange for a reservation in the Indian Territory which is today Oklahoma.[3] Today's Cherokee Reservation in northeastern Oklahoma is the remnant of that 1828 reservation for the Western Cherokee.

In 1835, a faction of the Eastern Cherokee, known as the Ridge Party, signed the treaty ceding the Eastern Cherokee lands and agreeing to join the Western Cherokee in Indian Territory.[4] The Western Cherokee welcomed these Eastern emigrants. Another faction of the Eastern

---

[1] Portions of this section are drawn from the "Brief of Amicus Curiae the United Keetoowah Band of Cherokee Indians in Oklahoma, In Support of Respondent" filed April 4, 2022, in the Supreme Court of the United States in *State of Oklahoma v. Victor Manuel Castro-Huerta* (21-429)

[2] Treaty With the Cherokee, 1817, 7 Stat. 156 (July 8. 1817); Treaty With the Cherokee, 1819, 7 Stat. 195 (February 27, 1819).

[3] Treaty With the Western Cherokee, 1828, 7 Stat. 311 (May 6, 1828).

[4] Treaty With the Cherokee, 1835, 7 Stat. 478 (Dec. 29, 1835)



3

Cherokee, the Ross party, objected to the Treaty, but were forcibly removed by the federal government to the Western Cherokee reservation by 1839.

The Ross party outnumbered the combined Ridge Party and Western Cherokee leading to significant division between the two factions. In 1846, the United States negotiated a treaty merging the two Cherokee governments into one entity, known as the Cherokee Nation.[5] Nevertheless, the traditional full-blood Cherokees maintained a Keetoowah Society, which sought to protect Cherokee traditions, religion, and culture. From 1846~1859, the two groups of Cherokee people respected the 1846 treaty and lived communally as the Cherokee Nation and under the government of the Cherokee Nation. And yet, they remained as two separate factions.

In 1859, the Keetoowah National Convention approved the constitution and laws forming a government separate from the 1846 Cherokee Nation government, which the Keetoowah's viewed as representing the interests of less traditional Cherokees. A central goal of this Keetoowah government was to oppose the Cherokee Nation's support of the South in the lead up to the Civil War.

During the Civil War, the Keetoowah's fought for the Union, while the Cherokee Nation government officially aligned with the Confederacy.[6] After the Civil War, in 1866, the United States once again treated with Keetoowah and the Cherokee Nation factions as one government.[7] The Keetoowah continued to maintain a Keetoowah Society to organize the affairs of the full-blood Cherokees.

---

[5] Treaty With the Cherokee, 1846, 9 Stat. 871 (Aug.6, 1846).
[6] Treaty With the Cherokee, 1861 Stat. 394 (C.S.A.) (Oct. 7, 1861).
[7] Treaty With the Cherokee, 1866, 14 Stat. 799 (July 19,1866).



4

From 1898 to about 1906, (following the enactment and implementation of the Curtis Act of 1898), the government of the tribes were wound up by the federal government by effectively terminating tribal governments and closing its membership which made the tribal laws unenforceable.[8] However, in 1905 while the United States was winding up the affairs of the historical Cherokee Nation government, the Keetoowah Society obtained a federal charter to assist it in governing Keetoowah affairs.[9] Meanwhile, during this 1905 period, an American Indian-led attempt to secure statehood for Indian Territory as separate from Oklahoma Territory was ongoing. A convention termed Sequoyah Constitutional Convention, was held and the region known as Indian Territory would be called the State of Sequoyah. Then in 1906, the Oklahoma Enabling Act assisted in the admission of the State of Oklahoma into the Union in 1907. This was only made possible by denying the Indians the right to have their own state.

During the Great Depression (1929-43), steps were taken to facilitate the organization of the Indian tribes. The first major step taken was the Indian Reorganization Act (also known as the Wheeler-Howard Act; Indian New Deal) of June 18, 1934, which included all states except Hawaii, Alaska, and Oklahoma. This act was intended to restore to Indians the management of their assets and government, those things taken from them by the Curtis Act of 1898. By 1936, John Collier, Commissioner of Indian Affairs, developed the Oklahoma Indian Welfare Act (OIWA also known as the Thomas-Rogers Act) with the premises of destroying the federal policy of the "twin evils" referring to allotment and assimilation in exchange for Indian self-government to include opportunities for rebuilding Indian tribal societies, return land to the tribes, rejuvenate Indian governments, and emphasize Native culture.

---

[8] Act of June 28, 1898. 30 Stat. 495. AKA The Curtis Act
[9] *Certificate of Incorporation of Keetoowah Society,* No. 592, (N.D. Ind. Terr., Sept 20, 1905).



In 1936, the Keetoowah's began the process of organizing an OIWA tribal government. And by 1946, Congress recognized the "Keetoowah's of the Cherokee Nation Oklahoma" as "a band of Indians residing in Oklahoma" within the meaning of the OIWA.[10] In 1950, the UKB adopted (and the United States approved) an OIWA Constitution, By-laws, and Federal Corporate Charter.[11]

The UKB constitution. identifies the Cherokee Reservation (by the phrase, "Old Cherokee Nation") and its historical districts as the boundaries for the election of officers and district representatives to serve on its Council, the governing body of the UKB.[12] It also requires Council meetings to occur within the Cherokee Reservation.[13]

**B.**   **The CNO failed to take advantage of opportunities to form a government as provided by federal law.**

Basic to the concept of jurisdiction, is that the government creating a judicial branch and the courts therein, be legitimately authorized and formed. Here, we have a situation involving legitimacy of the tribal court created by the tribe that has not received the requisite authorization from the federal government. Any court system that the Cherokee Nation of Oklahoma may have had before the Curtis Act was wiped out by the provisions of said act, which eliminated all tribal courts and rendered Cherokee law unenforceable until the government made allowances by the OIWA. The Curtis Act placed the supervision of the courts in the hands of the federal government thereby creating a situation where there was concurrent jurisdiction between the federal and state governments to the exclusion of the now defunct tribal governments.

---

[10] Act of August 10, 1946, 60 Stat.976, (Aug. 10, 1946).
[11] UKB Const. and By-laws (Oct. 3, 1950); UKB Corporate Charter (Oct. 3, 1950). See Defendant's exhibits 4 and 5.
[12] UKB Const. art. II, §§ 1, 2; art. V, § 2.
[13] UKB Const. art. III, § 3.

PAGE 19   (p 111)

Both the CNO and the UKB coexisted from around 1906 until around 1936 without a government. During this period from 1907-1971, the principal chiefs of the Cherokee Nation were appointed by the president of the United States of America. The purpose of these appointments as provided by an act of Congress in 1906, was to formalize the tribal governments obligation under the leadership of an appointed principal chief whose principal duties were to sign documents related to statements of the tribal government as the federal government may request him to complete.

With the passage of the OIWA in 1936, UKB worked with the Department of Interior and Bureau of Indian Affairs to form a OIWA Constitution, Bylaws and Federal Corporate Charter issued by the Department of Interior, which was recognized in 1946 and approved in 1950. CNO neglected to take advantage of the OIWA and did not pursue federal recognition or approval by utilizing the process provided by the federal government in 25 CFR §§ 83.4, 83.11.

## II. THE CNO IS NOT ENTITLED TO HAVE THE TRIBAL COURTS AND THUS HAS NO AUTHORITY IN THIS CASE.

### A. The federal process of acknowledgement and approval.

The Department of Interior promulgated a process for tribes to seek federal acknowledgement and perhaps approval from Congress or the Secretary of the Department of Interior. That process is found in 25 CFR §§ 83.4 and 83.11. Again, having ignored the opportunity granted by the OIWA, Cherokee Nation of Oklahoma ignored the strict requirements of the federal government as stated in 25 CFR. Instead, Cherokee Nation of Oklahoma undertook to write a constitution in 1975, purportedly to be an amendment to the 1839 constitution, apparently hoping that said action would be accepted by the federal government and give Cherokee



Nation of Oklahoma the appearance of having satisfied continuity of government required by 25 CFR § 83.4 (b). But that hope was misplaced. A new "amendment" to the 1975 constitution which purported to supersede both the 1839 and the 1975 constitutions was still being argued with the BIA well into the 21st century.

**B. The federal scheme for approval by the Department of the Interior.**

This brief has previously discussed the history of the two tribes at issue here, UKB and CNO. In the first decades of the post-Curtis Act era the two tribes coexisted in Cherokee Territory with the Keetoowah having a loose governmental organization known as the Keetoowah Society. With the passage of the OIWA in 1936, tribes in Oklahoma became eligible to apply for recognition by the federal government and ultimate approval by Congress and/or the Secretary of Interior. As noted previously the CNO ignored the opportunity of the limitations of the OIWA and did nothing to apply for coverage under that act. The UKB did not ignore the opportunity and cooperated with the Bureau of Indian Affairs who assisted the organization in the application. By 1946 the UKB had earned the recognition of Congress and approval of its Constitution, Bylaws and Corporate Charter as issued October 3, 1950.

Still the CNO did nothing. The Secretary of Interior continued to approve appropriate applications of other tribes on an ad hoc basis. Still, the CNO was motionless.

**C. THE 1975 CONSTITUTION**

The CNO drafted a constitution in 1975 that BIA Commissioner, Morris Thompson approved for referendum for June 26, 1976. Mr. Thompson as a BIA Commissioner did not have the authority to approve the constitution as that was the role of the Secretary of the Department of Interior. No information appears concerning the number of voters who participated in the



8

referendum or what the required number of voters constituting thirty percent of the eligible voters would be in order to approve the constitution.  This was the first time the Cherokee Nation set themselves apart and called themselves The Cherokee Nation of Oklahoma.  The name Cherokee Nation was and is still used as a catch-all phrase for all Cherokee peoples, including the Eastern Band of Cherokee Indians, the Cherokee Nation in Oklahoma, and the United Keetoowah Band of Cherokee Indians of Oklahoma.  Each year, the Cherokee Nation gathers for a Tri-Council meeting for decisions affecting the Cherokee Nation in its entirety with the passing of resolutions which all three tribes vote to either accept or deny.  The location of the meeting alternates each year, and the host tribe is responsible for scheduling activities.

The 1975 Constitution was circulated in three different forms by the CNO.[14]  The first of those proposed Constitutions was a pamphlet prepared for distribution to the voters.  The second was a different Constitution prepared for submission to the BIA and the third was a constitution that was prepared for submission to Congress.  At no time during the processing of the 1975 Constitution did the CNO ever comply with the regulations for approval of the tribes set forth in 25 CFR §§ 83.4 and 83.11.  Upon information and belief, the defendant alleges the approval by the referendum was deficient because the number of voters did not rise to the level of thirty percent of the eligible voters that must vote on the adoption of the constitution.  A majority of those voting is required for approval of the constitution.

**D.  THE 1999 CONSTITUTION[15]**

---

[14] See Defendant's exhibits 1, 2, and 3. For the current version 1975 Constitution go to www.cherokee.org.

[15] For the current version of the 1999 Constitution go to www.cherokee.org.



9

During the next twenty-three years the CNO did nothing to comply with the procedures for gaining approval, and in 1999 drafted another Constitution. That Constitution, likewise, was not preceded by any compliance with the provisions of 25 CFR §§ 83.4 and 83.11, but it was submitted to the people and allegedly approved by referendum in 2003. In addition, with the failure to comply with the federal regulations, the approval for a referendum was signed by Larry Echohawk, a BIA employee. While Mr. Echohawk was later an Assistant to the Secretary to the Department of Interior, that was not his role nor his authority when he signed off on the proposed 1999 Constitution. Therefore, the referendum was tainted from the beginning.

But again, there is a problem regarding the election. The constitution required that there be fifteen percent of the eligible voters to cast a majority vote in order to approve the Constitution. OIWA, section 5203 requires such voters to have participated by thirty percent not fifteen percent. Upon information and belief, the defendant alleges that it did not have the required number of eligible votes to approve the constitution.

The 1999 constitution is sometimes described by the CNO as the 2003 Constitution or the 2006 Constitution, and arose based upon the absence of inclusion, in that Constitution of the Cherokee Freedmen, whom were the descendants of former slaves of the Cherokees who were freed at the end of the Civil War by the Thirteenth Amendment to the Constitution of the United States of America and the Emancipation Proclamation. That matter was apparently resolved by a decision in the case of Vann v. Cherokee Nation (D.C. Cir. 2008) and the requirements for "by blood" for the Freedmen was stricken from the original draft of the 1999 Constitution and replaced with other language that would include the Freedmen in the coverage of that Constitution.





PAGE 23   (of 111)

That brings up another problem; the invalid 1976 Constitution covers amendments to the Constitution in Article XV, which among other things require two thirds of the Council to vote to submit an amendment, and each amendment must have a separate election to determine if it is to be added to the Constitution.

But still no compliance with the requirements of 25 CFR and despite that, on May 12, 2021, the Secretary of Interior, Deb Haaland signed off on some portions of the 1999 or 2003 Constitution of those in particular dealing with the Freedmen situation which may have left other sections of the 1999 Constitution as officially unapproved. The CNO history fails to disclose that the purported organization of CNO has failed to fulfil federal government requirements to be recognized by Congress or by the Secretary of Interior.

**III.  THE DISTRICT COURT AND THE SUPREME COURT OF THE CNO WERE ESTABLISHED ON NOVEMBER 13, 1990, AT A TIME WHEN THERE WAS NO AUTHORIZATION IN EFFECT FOR THOSE COURTS.**

**A. The Constitution of the Cherokee Nation approved by the National Convention of the Cherokee Nation on September 06, 1839, provided the framework for a judiciary branch of the government in Article V.**

That Constitution and government it created in 1839, was terminated by the provisions of the Curtis Act in 1898 and Cherokee laws enacted prior to that date were rendered unenforceable.

Ninety-two years later, on November 13, 1990, the CNO Council enacted a legislative act 11-90 which recreated the District Court of CNO, defining jurisdiction and determining court procedures.[16]

---

[16] The legal opinion, 93-1 addressed to the Principal Chief Wilma Mankiller, by their legal officer, Chadwick Smith dated November 30, 1993, Paragraph IV.



The passage of the legislative act took place when the only authority for such an act was the invalid Constitution that had allegedly been made effective in 1976. The 1976 Constitution Article VII provided only for a Judicial Appeals Tribunal to resolve disputes or questions about the Constitution. Article XII of that Constitution referred to the right of employees to have a hearing before the Judicial Appeals Tribunal and the citizens of the tribe have a widely held opinion that the JAT was nothing more than a court for employees to air their grievances. The differences enumerated herein together with defects in the creation of the CNO government render the Constitution purportedly created to be invalid without any jurisdiction as to criminal or civil cases.

**B. The CNO passed another Constitution in 1999, or 2003 that purports to be an amendment to the 1976 Constitution and repeal of a defunct Constitution of 1839.**

Between the 1976 Constitution and the 1999 Constitution there was no effort by the CNO to comply with the procedures required by the federal government as found in 25 CFR §§ 8.4 and 83.11. The CNO continued to operate under an unapproved government as shown in other sections of this brief.

**IV.    CNO COURTS STILL OPERATE UNDER A CLOUD OF ILLEGITIMACY, LACK OF JUCICIAL INDEPENDENCE, AND UNREPEALED CONGRESSIONAL BAN ON CHEROKEE COURT SYSTEM TAINT TRIBAL JUDICIAL PROCESS.**

**A.   Even as renamed and reorganized under the 1999 Constitution, the tribal court system of the CNO operates under a continuing cloud of illegitimacy for two fundamentally compelling reasons.**

First, the so-called "Cherokee Supreme Court" functions without any semblance of judicial independence from the tribal executive branch. Throughout their terms in office, Cherokee Supreme Court 'justices' remain subject to the unabashed influence, if not overt



control, of the tribal executive branch, or more specifically, the Principal Chief of the CNO. In a word, the CNO court system is rigged. Meaningful judicial review of the abusive misconduct of tribal executive officials is, therefore, practically impossible.

**A. The shadow of the Curtis Act of 1898 that expressly abolished the Cherokee court system.**

Section 28 of the Curtis Act of 1898 provided that, effective July 1, 1898, "all tribal courts in Indian Territory shall be abolished, and no officer of said courts shall thereafter have any authority whatever to do or perform any act theretofore authorized by any law connected with said courts . . ." A subsequent accord with the Cherokee Nation, called the "Cherokee Agreement," was enacted into federal law only three years later in 1901 and made clear that the abolition of Cherokee courts continued in effect. The 1901 Cherokee Agreement stated that none of its terms "shall be construed to revive or reestablish the Cherokee courts abolished" by the Curtis Act. Theses laws stripping CNO of the authority to create and maintain a tribal court system have never been repealed by Congress and remain in full force today. Although the BIA has arguably taken action inconsistent with the plain mandate of these laws, the discretionary action of a federal administrative agency such as the BIA cannot repeal or nullify a federal statute such as the Curtis Act or the Cherokee Agreement statute.

**B. Hodel v Muskogee (Creek) Nation.**

According to the three-judge federal court of appeals panel that decided Muscogee (Creek) Nation v. Hodel, the only way a tribal government like the CNO can restore its lawful authority to create and maintain tribal courts without direct congressional intervention is for the CNO to adopt a new constitution under the 1936 OIWA.



13

In *Hodel,* the Muskogee (Creek) Nation of Oklahoma overcame a similar statutory disability that had eliminated that tribe's authority to establish a tribal court system by reorganizing under the OIWA. Congress had used language to extend the Curtis Act abolition of tribal courts in the 1901 Creek Agreement, almost identical to that used in the 1901 Cherokee Agreement. In *Hodel,* the three-judge panel concluded that since the "Curtis Act and the Creek Agreement expressly stripped the tribe of the power to have courts . . . that power was not part of the 'present' tribal government." Thus, in the absence of any legislation repealing the Curtis Act abolition of tribal courts, the Muskogee (Creek) Nation would not have been able to reestablish a tribal court system. The old disabling legislation continued in force.

The *Hodel* court decided, however, that because the Creeks had to reorganize under the OIWA in 1979, their right to establish a court system had been restored by a "general repealer clause" in the OIWA. This statutory clause was held to have repealed the Curtis Act by implication for those tribes reorganizing under the OIWA. In *Hodel,* the D.C. Circuit held that "the power to adopt a constitution" conferred by the OIWA "certainly encompasses the power to create courts with general civil and criminal jurisdiction." In other words, as an OIWA tribe, the Creeks' inherent sovereign rights of self-government had been fully restored. Since the 1999 Cherokee Constitution was not adopted pursuant to the OIWA, the "general repealer clause" of the OIWA does not apply to restore CNO's legal authority to create and maintain a tribal court system. Thus, until reorganization under the OIWA occurs or Congress repeals the Cherokee tribal court ban, CNO tribal courts are operating in overt violation of federal law as embodied in the still applicable 1898 Curtis Act and the 1901 Cherokee Agreement statute. The Cherokee Supreme Court, like every other CNO court, has no legal authority until Congress expressly repeals the Cherokee court



14

ban or the CNO reorganizes under the OIWA.  The CNO courts are illegal and have no authority

or jurisdiction to act in defendant's case.  The motion to dismiss should be granted.


Deboraugh Rodgers, *pro se*

24357 E 757 RO

Tahlequah, Ok

74464



PAGE 29

(of 111)

# Constitution
## of the
# Cherokee
# Nation
## of
# Oklahoma






DEFENDANT'S EXHIBIT
1

CIV-22-237-JFH-KEW

PAGE 30 (31 111)



**CHEROKEE NATION**

Wilma P. Mankiller
Principal Chief

John A. Ketcher
Deputy Chief

Greetings:

The Constitution of the Cherokee Nation of Oklahoma establishes the outline for our tribal government and provides the framework for the laws that govern this country's second largest Indian tribe. It is fitting that this commemorative copy of the Cherokee Constitution coincide with the beginning of a new term for the tribe's elected officials and with the 200th anniversary of the U.S. Constitution.

At least 300 years prior to the passage of the U.S. Constitution in 1787, North American democracy began with the Iroquois Confederacy's Law of the Great Peace. The Cherokees belong to the Iroquois language family of Eastern North America, which includes five related tribes comprising the Iroquois Confederacy. The representative democracy of the Iroquois was extensively studied and praised by Benjamin Franklin and Thomas Jefferson, who often referred to it as the basis for the U.S. Constitution.

The Iroquois Confederacy remains the oldest surviving democratic constitution on earth. It is the basis for the U.S. Constitution and the modern Cherokee Nation Constitution. As each is related, so are 'we the people' of free nations, who celebrate as one family during the bicentennial of the U.S. Constitution.

*Wilma P. Mankiller*

**Principal Chief**

*John A. Ketcher*

**Deputy Chief**

The Cherokee Nation Constitution was approved for referendum by Commissioner of Indian Affairs Morris Thompson on September 5, 1985, with a second by Principal Chief of the Cherokee Nation Ross O. Swimmer on October 2, 1975. The Cherokee people ratified their Constitution on June 26, 1976.

1



CIV-22-237-JFH-KEW

*Constitution*

*of the*

*Cherokee Nation*

*of Oklahoma*

APPROVED FOR REFERENDUM
BY THE COMMISSIONER
OF INDIAN AFFAIRS,
MORRIS THOMPSON ON SEPTEMBER 5, 1975,
SECOND BY THE PRINCIPAL CHIEF OF THE CHEROKEE NATION,
ROSS O. SWIMMER
ON OCTOBER 2, 1975

| ARTICLE | | PAGE |
|---|---|---|
| I. | FEDERAL REGULATIONS | 3 |
| II. | BILL OF RIGHTS | 3 |
| III. | MEMBERSHIP | 4 |
| IV. | DISTRIBUTION OF POWERS | 5 |
| V. | LEGISLATIVE | 5 |
| VI. | EXECUTIVE | 8 |
| VII. | JUDICIAL | 12 |
| VIII. | CABINET | 12 |
| IX. | ELECTION | 13 |
| X. | FISCAL | 14 |
| XI. | REMOVAL FROM OFFICE | 17 |
| XII. | EMPLOYEE RIGHTS | 18 |
| XIII. | OATH | 18 |
| XIV. | CLANS | 19 |
| XV. | INITIATIVE, REFERENDUM AND AMENDMENT | 19 |
| XVI. | SUPERSEDES OLD CONSTITUTION 1839 | 22 |
| XVII. | SEAT OF GOVERNMENT | 22 |
| XVIII. | ADOPTION | 22 |

---

*Constitution*
*of the*
*Cherokee Nation*
*of Oklahoma*

### PREAMBLE

We, the people of the Cherokee Nation, in order to preserve and enrich our tribal culture, achieve and maintain a desirable measure of prosperity, insure tranquility and to secure to ourselves and our posterity the blessings of freedom, acknowledging, with humility and gratitude, the goodness of the Sovereign Ruler of the Universe in permitting us so to do, and imploring his aid and guidance in its accomplishment—do ordain and establish this Constitution for the government of the Cherokee Nation. The term "Nation" as used in this Constitution is the same as "Tribe".

### Article I. Federal Regulations

The Cherokee Nation is an inseparable part of the Federal Union. The Constitution of the United States is the Supreme law of the land; therefore, the Cherokee Nation shall never enact any law which is in conflict with any Federal law.

**Cross References**

Seat of government, see Article XVII of the Cherokee Constitution.

**Research References**

American Jurisprudence, 2d
41 Am Jur 2d, Indians, §§ 4–6, 50.

### Article II. Bill of Rights

**Section 1.** The judicial process of the Cherokee Nation shall be open to every member of the Cherokee Nation. Speedy and certain remedy shall be afforded under the terms of this Constitution for every wrong and injury to person, property or reputation wherein said remedy does not conflict with the laws of the United States. The Council shall prescribe the procedures pertinent thereto. The appropriate protections guaranteed by the Indian Civil Rights Act of 1968 shall apply to all members of the Cherokee Nation.



PAGE 32 (OF 111)

CIV-22-237-JFH-KEW

## Art. II § 1      CONSTITUTION

### Cross References

Bill of rights generally, see Amendments 1–10 of the United States Constitution.
Employment rights, see Article XII of the Cherokee Constitution.
Indian Civil Rights Act of 1968, see 25 U.S.C. § 1301 et seq.

## Article III. Membership

### Cross References

Right to belong to recognized clans or organizations, see Article XIV of the Cherokee Constitution.

### Research References

American Jurisprudence, 2d
  41 Am Jur 2d, Indians, §§ 1–3.

**Section 1.** All members of the Cherokee Nation must be citizens as proven by reference to the Dawes Commission Rolls, including the Delaware Cherokees of Article II of the Delaware Agreement dated the 8th day of May, 1867, and the Shawnee Cherokees as of Article III of the Shawnee Agreement dated the 9th day of June, 1869, and/or their descendants.

### Cross References

Preparation of rolls of Indian tribes generally, see 25 C.F.R. Part 61 et seq.
Treaties and agreements, see Appendix I, Cherokee Nation Code Annotated.

**Section 2.** There shall be established a Cherokee Register, to be kept by the Registrar, for the inclusion of any Cherokee for membership purposes in the Cherokee Nation who presents the necessary evidence of eligibility for registration.

(a) A Registration Committee shall be established. It shall be the duty of the Registration Committee to consider the qualifications and to determine the eligibility of those applying to have their names entered in the Cherokee Register. The Registration Committee shall consist of a Registrar and two (2) assistants. All members shall be appointed by the Principal Chief, and confirmed by the Council.

(b) There shall be a number assigned to every name which is approved and entered into the Cherokee Register. This number shall be preceded by the three words, "Cherokee Registry Number".

(c) The decisions of the Registration Committee shall be subject to review by the Tribunal created by Article VII.

### Cross References

Courts and procedure generally, see Title 4, Cherokee Nation Code Annotated.

4

---

LEGISLATIVE      Art. V § 1

**Section 3.** Registration as used in this article refers to the process of enrolling as a member of the Cherokee Nation and is not the same as the registration for voting purposes.

### Cross References

Elections generally, see Title 10, Cherokee Nation Code Annotated.

## Article IV. Distribution of Powers

The powers of the government of the Cherokee Nation shall be divided into three (3) separate departments: Legislative, Executive and Judicial; and except as provided in this Constitution, the Legislative, Executive and Judicial departments of government shall be separate and distinct and neither shall exercise the powers properly belonging to either of the others.

### Cross References

Executive branch generally, see Article VI of the Cherokee Constitution.
Judicial branch generally, see Article VII of the Cherokee Constitution.
Legislative branch generally, see Article V of the Cherokee Constitution.

### Research References

American Jurisprudence, 2d
  41 Am Jur 2d, Indians, §§ 6–8.

## Article V. Legislative

### Cross References

Council generally, see Title 6, Cherokee Nation Code Annotated.
Council powers relating to conduct of elections, see Article IX of the Cherokee Constitution.
Distribution of powers, see Article IV of the Cherokee Constitution.
Elections generally, see Title 10, Cherokee Nation Code Annotated.
Qualifications for election to council, see Section 2 of Article IX of the Cherokee Constitution.
Reservation of powers of initiative and referendum, see Section 1 of Article XV of the Cherokee Constitution.

### Research References

American Jurisprudence, 2d
  41 Am Jur 2d, Indians, §§ 6, 7.

**Section 1.** The legislature shall consist of one legislative body to be called the Council of the Cherokee Nation. The initial election of members to the Council pursuant to this Constitution shall occur within 120 days from the date of its ratification on a day to be announced by the Principal Chief.

5

PAGE 33 (of 111)

CIV-22-237-JFH-KEW

Art. V § 1                  CONSTITUTION

### Cross References

Election of Council members generally, see Article IX of the Cherokee Constitution.

**Section 2.** The Council shall establish its rules for its credentials, decorum and procedure.

### Cross References

Council generally, see Title 6, Cherokee Nation Code Annotated.

**Section 3.** The Council shall consist of 15 members, who are members by blood of the Cherokee Nation of Oklahoma, and shall be elected at large.

The term of office of each Council member serving on the first Council shall run until the first Saturday in August of 1979 and until his successor is duly elected and installed. Thereafter, the term of office of each Council member shall be for four (4) years and until his successor is duly elected and installed.

### Cross References

Election of Council members generally, see Article IX of the Cherokee Constitution.
Oath of Council members, see Section 10 of Article V of the Cherokee Constitution.
Removal of Council members, see Section 2 of Article XI of the Cherokee Constitution.

**Section 4.** There shall be at least one regular session of the Council in the calendar year which shall convene on the second Monday in each January or at such other date as the Council shall determine. No business shall be conducted by the Council unless at least two-thirds (2/3) of members thereof regularly elected and qualified shall be in attendance, which number shall constitute a quorum. The session may not exceed a maximum of thirty (30) calendar days for pay purposes.

### Cross References

Public access to meetings, see Section 6 of Article V of the Cherokee Constitution.

**Section 5.** Special meetings of the Council may be called: (A) by the Principal Chief, (B) by the Deputy Principal Chief when he has the full powers of the Principal Chief as elsewhere defined, (C) upon written request of fifty-one percent (51%) of the members of the Council, or (D) upon the written request of ten percent (10%) of the registered voters of the Cherokee Nation. The purposes of said meeting shall be stated in a notice published not less than ten (10) days prior to the meeting, and the Council may not consider any other subject not within such purposes. No special meetings may convene

6

LEGISLATIVE                  Art. V § 9

until (30) days have elapsed after the adjournment of a prior session or meeting, unless called pursuant to (A) and (B) above.

### Cross References

Convening of meetings by Principal Chief, see Section 8 of Article VI of the Cherokee Constitution.
Public access to meetings, see Section 6 of Article V of the Cherokee Constitution.

**Section 6.** All meetings of the Council and of its committees shall be open to the public except: (A) When the discussion shall concern employment, retention or discharge of personnel; (B) When the question of the moral turpitude of any member of the Tribe is discussed; or (C) When the decorum of the audience shall prejudice orderly administration of business. In the event that consideration of a subject shall take place in Executive Session, the vote shall take place in an open meeting.

**Section 7.** The Council shall have the power to establish laws which it shall deem necessary and proper for the good of the Nation, which shall not be contrary to the provisions of this Constitution. Laws or enactments which are required by Federal statutes to be approved shall be transmitted immediately upon enactment as provided by Section 11 of this Article to the President of the United States or his authorized representative.

The style of all bills or laws shall be: "Be It Enacted By The Cherokee Nation". The style of all resolutions shall be "Be It Resolved By The Cherokee Nation".

### Cross References

Prohibition against retroactive laws, see Section 8 of Article V of the Cherokee Constitution.
Regulation of fiscal matters by Council, see Article X of the Cherokee Constitution.

**Section 8.** No laws passed by the Council shall have retroactive effect or operation.

**Section 9.** The Council shall have the power of removal and said removal must be conducted in accordance with Article XI of this Constitution. Nothing herein is intended to abrogate or limit the authority of the President of the United States, or any person or agency to which the President or Congress of the United States shall delegate authority therefore, to remove the Principal Chief or his subordinates.

7

PAGE 34 (of 111)

### Cross References

Approval of cabinet, see Article VIII of the Cherokee Constitution.

**Section 10.** Members of the Council and all Executive Officers shall be bound by oath, provided in Article XIII, to support the Constitution of the Cherokee Nation, the Constitution of the United States of America, do everything within the individual's power to promote the culture, heritage and traditions of the Cherokee Nation and to perform the duties of their respective offices with fidelity.

#### Cross References

Bonds, see Section 11 of Article X of the Cherokee Constitution.
Compensation, see Section 10 of Article X of the Cherokee Constitution.

**Section 11.** Every enactment which shall have been approved by a majority of the members in attendance at the Council shall, before it becomes effective be presented to the Principal Chief, if he approves, he shall sign it; if not, he shall return it with his objections to the Council, which shall enter the objections in the Journal and proceed to reconsider it. If, after such reconsideration, two-thirds (2/3) of the entire council shall agree to pass the enactment, it shall become fully effective and operational notwithstanding the objections of veto of the Principal Chief. In all such cases, the vote of the Council shall be determined by yeas and nays, and the names of the members voting shall be entered on the Council's Journal. If any enactment shall not be returned to the Principal Chief within five (5) days (Sundays and holidays excepted) after it shall have been presented to him, the same shall be law in like manner as if he had signed it, unless the Council shall, by its adjournment, prevent its return, in which case, it shall become a law without the approval of the Principal Chief. No enactment shall become a law after the final adjournment of the Council, unless approved by the Principal Chief within fifteen (15) days after such adjournment.

#### Cross References

Enactment of laws by Council generally, see Sections 7 and 8 of Article V of the Cherokee Constitution.

## Article VI. Executive

#### Cross References

Distribution of powers, see Article IV of the Cherokee Constitution.
Office of the Principal Chief and Deputy Principal Chief generally, see Title 17, Cherokee Nation Code Annotated.

#### Research References

American Jurisprudence, 2d
41 Am Jur 2d, Indians, §§ 6, 7.

**Section 1.** The executive power shall be vested in a Principal Chief, who shall be styled "The Principal Chief of the Cherokee Nation". The Principal Chief shall hold his office for the term of four (4) years; and shall be elected by the qualified voters on the same day and in the same manner, except as otherwise provided by this Constitution, as they shall respectively vote for members of the Council for that particular year, provided, the Principal Chief in office when this Constitution is ratified shall continue in office until his successor is duly elected in the 1979 election and installed.

The returns of the election for the Principal Chief shall be sealed and directed by the lawfully appointed election officials to the Secretary-Treasurer, who shall, immediately after the organization of the Council, and before proceeding to other business, open and publish the same in the presence of a majority of the Council. The person having the highest number of votes, shall be the Principal Chief; but if two (2) or more shall be equal and highest in votes, one of them shall be chosen by a vote of the Council. The manner of determining contested elections shall be as directed by Cherokee law.

#### Cross References

Elections generally, see Title 10, Cherokee Nation Code Annotated.
Removal, see Section 9 of Article V and Section 1 of Article XI of the Cherokee Constitution.

**Section 2.** The Principal Chief of the Cherokee Nation shall be a citizen of the Cherokee Nation of Oklahoma in accordance with Article III. He shall have been born within boundaries of the United States of America, its territories or possessions; and he shall have obtained the age of thirty (30) years at the time of his election and be a member by blood of the Cherokee Nation of Oklahoma.

#### Cross References

Qualifications for office, see Section 2 of Article IX of the Cherokee Constitution.

**Section 3.** The qualified electors shall elect a Deputy Principal Chief, who shall possess the same qualifications as the Principal Chief, for a term of four (4) years at the same time and in the same manner as herein provided for the election of the Principal Chief, provided, that the initial election of the Deputy Principal Chief shall

CIV-22-237-JFH-KEW

**Art. VI § 3**          CONSTITUTION

take place in conjunction with the first Council election pursuant to this Constitution and in accordance with Section 1 of this Article.

### Cross References

Qualifications for office, see Section 2 of Article VI and Section 2 of Article IX of the Cherokee Constitution.
Removal, see Section 9 of Article V and Section 1 of Article XI of the Cherokee Constitution.

**Section 4.** In case of the absence of the Principal Chief from office due to his death, resignation, removal or inability to discharge the powers and duties of the said office, the same shall devolve upon the Deputy Principal Chief for the remaining portion of the four (4) year term to which the Principal Chief has been elected. In case of disability, such powers shall continue during the term of such disability. Vacancies in the office of the Deputy Principal Chief shall be filled by the Council.

### Cross References

Designation of acting Principal Chief in event of removal, death, resignation or disability of Principal Chief and Deputy, see Section 5 of Article VI of the Cherokee Constitution.

**Section 5.** The Council may, in the case of removal, death, resignation or disability of both the Principal Chief and the Deputy Principal Chief, provide by law what officer shall then act as Principal Chief until the disability be removed or a successor shall be elected.

### Cross References

Removal generally, see Section 9 of Article V and Section 1 of Article XI of the Cherokee Constitution.

**Section 6.** The Principal Chief and Deputy Principal Chief shall, at stated times, receive for their service a compensation not inconsistent with Article X.

### Cross References

Surety bonds, see Section 11 of Article X of the Cherokee Constitution.

**Section 7.** Before the Principal Chief assumes his office, he shall take the oath or affirmation as provided for in Article XIII.

**Section 8.** The Principal Chief may on extraordinary occasions convene the Council at the seat of government pursuant to Article V, Section 5, and such notice and other laws as may be prescribed by the Council. The purpose of said meetings must be stated and the

10

---

**EXECUTIVE**          **Art. VI § 12**

Council may consider only such matters as are specified in the call of the extraordinary meetings. Before the extraordinary meetings may be legally sufficient to conduct business, a quorum of the Council must be present.

### Cross References

Council generally, see Title 6, Cherokee Nation Code Annotated.

**Section 9.** At every session of the Council, and immediately upon its organization, the Principal Chief shall communicate by message, delivered to the Council upon the condition of the Cherokee Nation; and shall recommend such matters to the Council as he shall judge expedient.

### Cross References

Council meetings generally, see Sections 4 through 6 of Article V of the Cherokee Constitution.

**Section 10.** The Principal Chief shall cause the laws of the Cherokee Nation to be faithfully executed, and shall conduct in person and in such manner as shall be prescribed by law, all communications and business of the Cherokee Nation. The Principal Chief may cause to be formed and operated, trusts, the beneficiary of which shall be the Cherokee Nation and these trusts shall be granted such powers as provided by law for public trusts. Authorization for these trusts, however, must be approved by a majority vote of the Council.

### Cross References

Fiscal matters generally, see Article X of the Cherokee Constitution.

**Section 11.** The Deputy Principal Chief shall, by virtue of his office, aid and advise the Principal Chief in the administration of the government and shall be President of the Council but shall vote only for the purpose of breaking a tie vote.

### Cross References

Office of Principal Chief and Deputy Principal Chief generally, see Title 17, Cherokee Nation Code Annotated.
Responsibilities of Deputy Principal Chief generally, see Section 4 of Article VI of the Cherokee Constitution.

**Section 12.** Nothing in this Constitution shall be construed as preventing the Principal Chief from appointing such administrative assistants as he deems proper.

11



### Cross References

Office of the Principal Chief generally, see Title 17, Cherokee Nation Code Annotated.

## Article VII. Judicial

### Research References

American Jurisprudence, 2d
41 Am Jur 2d, Indians, § 8.

There is hereby created a Judicial Appeals Tribunal composed of three (3) members all of whom must be admitted to practice law before the highest Court of the State of which they are residents, and all of whom shall be members of the Cherokee Nation, appointed by the Principal Chief and approved by the Council for such terms as the Council may provide. The purpose of this Tribunal shall be to hear and resolve any disagreements arising under any provisions of this Constitution or any enactment of the Council. The Council shall provide for a procedure which shall insure that any litigant receives due process of law together with prompt and speedy relief, and shall generally follow that portion of the Oklahoma Statutes known as the Administrative Procedures Act, Title 75, Oklahoma Statutes, 301 et seq. The decision of the Judicial Appeal Tribunal shall be final insofar as the judicial process of the Cherokee Nation is concerned.

### Cross References

Bill of Rights, see Article II of the Cherokee Constitution.
Courts and procedure generally, see Title 17, Cherokee Nation Code Annotated.
Distribution of powers, see Article IV of the Cherokee Constitution.
Enforcement of employment rights, see Article XII of the Cherokee Constitution.
Oath, see Article XIII of the Cherokee Constitution.
Removal, see Section 9 of Article V and Article XI of the Cherokee Constitution.

## Article VIII. Cabinet

There shall be a cabinet composed of the following persons who shall be members of the Cherokee Nation:

    Secretary-Treasurer
    Secretary of Health, Education and Welfare
    Secretary of Commerce and Industrial Development
    General Counsel
    Secretary of Communications

These persons shall be appointed by the Principal Chief and approved by the Council. The Council, on recommendation of the Chief only, may create additional cabinet positions and departments.

12

The Chief shall prescribe the duties and responsibilities of cabinet members. Cabinet members shall be authorized to appoint such staff and other assistants as they deem necessary. The Council may, with recommendation of the Principal Chief, abolish any established cabinet position or function or revise the title or responsibilities of any foregoing department or function.

### Cross References

Council generally, see Article V of the Cherokee Constitution.
Executive branch generally, see Article VI of the Cherokee Constitution.
Oath, see Article XIII of the Cherokee Constitution.
Removal, see Section 9 of Article V and Article XI of the Cherokee Constitution.

### Research References

American Jurisprudence, 2d
41 Am Jur 2d, Indians, §§ 6, 7.

## Article IX. Election

### Research References

American Jurisprudence, 2d
41 Am Jur 2d, Indians, §§ 6, 7.

**Section 1.** The Council shall enact an appropriate law not inconsistent with the provisions of this Constitution that will govern the conduct of all elections, provided that the initial election of the Council and Deputy Principal Chief shall be conducted pursuant to rules and regulation promulgated by the Principal Chief and the provision set forth in Articles V and VI of this Constitution, notwithstanding, the Principal Chief or Council may adopt rules requiring a majority vote for any elective office.

### Cross References

Conduct of elections generally, see Title 10, Cherokee Nation Code Annotated.

**Section 2.** Any member by blood of the Cherokee Nation at least twenty-five years of age on the date of the election may be a candidate for the Council. No person who shall have been convicted of or has pled guilty or has pled no defense to a felony charge under the laws of the United States of America, or of any State, Territory, or Possession thereof, shall be eligible to hold any office or appointment of honor, profit or trust within this Nation unless such person has received a pardon. Any person who holds any office of honor, profit or trust in any other tribe of Indians, either elective or appointive,

13



shall be ineligible to hold simultaneously any office of honor, profit or trust of the Cherokee Nation unless approved by the Council.

### Cross References

Compensation of public officers, see Section 11 of Article X of the Cherokee Constitution.

Qualifications of candidates generally, see Title 10, Cherokee Nation Code Annotated.

**Section 3.** All elections shall be determined by secret balloting.

### Cross References

Conduct of elections generally, see Title 10, Cherokee Nation Code Annotated.

## Article X. Fiscal

### Cross References

Public finance generally, see Title 9, Cherokee Nation Code Annotated.

### Research References

American Jurisprudence, 2d
41 Am Jur 2d, Indians, §§ 6, 7.

**Section 1.** The fiscal year shall commence on the first day of July in each year, unless otherwise provided by law.

### Cross References

Fiscal year defined, see CNCA § 19-1-1.

**Section 2.** The Council shall provide by law for an annual expenditure of funds, and the source from which funds are to be derived, to defray the estimated expenses of the Executive, Council, Cabinet and Departments of Government of the Cherokee Nation for each fiscal year. The budget shall not exceed estimated revenues.

### Cross References

Requirements for laws authorizing expenditures of public funds, see Section 8 of Article X of the Cherokee Constitution.

Uniform accounting system, see Section 4 of Article X of the Cherokee Constitution.

**Section 3.** At least thirty (30) days prior to the convening of each regular session of the Council, the Secretary-Treasurer shall make and present to the Council an itemized estimate of the revenue to be received by the Cherokee Nation, together with a statement of the sources from which revenues are to be received, under the laws, grants, judgments, interests, and any other sources in effect at the

14

time such estimate is made for the next ensuing fiscal year. The Secretary-Treasurer shall prepare annual financial statements reflecting the results of operations of all tribal activities and shall prepare a consolidated balance sheet in conformity with generally accepted accounting principles within sixty (60) days after the end of the fiscal year.

### Cross References

Acceptance of grants, donations, etc., see Section 5 of Article X of the Cherokee Constitution.

Annual budget, see Section 2 of Article X of the Cherokee Constitution.

Uniform system of accounting, see Section 4 of Article X of the Cherokee Constitution.

**Section 4.** The Council shall require that records be maintained of all funds, monies, accounts and indebtedness and all other accounts bearing upon the fiscal interests of the Cherokee Nation by the use of a uniform system of accounting which records and financial statements shall be audited by a Certified Public Accountant or as otherwise may be prescribed by the Council prior to the submission of said accounts to the Council.

**Section 5.** The Secretary-Treasurer shall be authorized to accept all grants, donations of money, interest of funds of the Cherokee Nation, judgments and any and all other sources of monies available to the Cherokee Nation, for uses and purposes and upon the conditions and limitations for which the same are granted or donated; and the faith of the Cherokee Nation is hereby pledged to preserve such grants and donations as a sacred trust, and to keep the same for the use and purposes for which they were granted or donated.

### Cross References

Deposit of public funds, see Section 9 of Article X of the Cherokee Constitution.

Investment of public funds, see Section 6 of Article X of the Cherokee Constitution.

**Section 6.** The Council shall have the authority to invest funds or money of the Cherokee Nation and the preference to be given to the security for such investments, the manner of selecting the securities, prescribing the rules, regulations, restrictions and conditions upon which the funds shall be loaned or invested, provided that no investment shall be in mortgages other than first mortgages only, and do all things necessary for the safety of the funds and permanence of the investments. If required by law, such investments would be subject to the approval of the Secretary of the Interior.

15

PAGE 37 (of 111)



Art. X § 6                    CONSTITUTION

### Cross References

Deposit of public funds, see Section 9 of Article X of the Cherokee Constitution.

**Section 7.** The credit of the Cherokee Nation shall not be given, pledged, or loaned to any individual, firm, company, corporation, or association without the approval of the Council. The Cherokee Nation shall not make any donations by gift, or otherwise, to any individual, firm, company, corporation, or association without the approval of the Council.

### Cross References

Investments generally, see Section 6 of Article X of the Cherokee Constitution.

**Section 8.** All laws authorizing the expenditures of money by and on behalf of the Cherokee Nation shall specify the purpose for which the money is to be used, and the money so designated shall be used for no other purpose. Annual expenditures shall not exceed the available funds.

### Cross References

Annual budget, see Section 2 of Article X of the Cherokee Constitution.
Use of grants and donations, see Section 5 of Article X of the Cherokee Constitution.

**Section 9.** General laws shall be enacted by the Council providing for the deposit of funds of the Cherokee Nation, and the depository thereof, and such funds shall be under the control of the Secretary-Treasurer, under such terms and conditions as shall be designated by said Council and under such laws which shall provide for the protection of said funds.

### Cross References

Investment of public funs generally, see Section 6, Article X of the Cherokee Constitution.
Public finance generally, see Title 19, Cherokee Nation Code Annotated.

**Section 10.** No official, member or officer of the Council, Cabinet Member, employee of any official, Council, Cabinet, or subdivisions thereof, or any person employed in any capacity by the Cherokee Nation shall receive from any individual, partnership, corporation, or entity doing business with the Cherokee Nation directly or indirectly, any interest, profit, benefits or gratuity, other than wages, salary, per diem, or expenses, specifically provided by law.

16

---

REMOVAL FROM OFFICE            Art. XI § 3

### Cross References

Compensation of Principal Chief and Deputy Principal Chief generally, see Section 6 of Article VI of the Cherokee Constitution.
Requirement of surety bonds, see Section 11 of Article X of the Cherokee Constitution.

**Section 11.** All officers, elected or appointed, who are authorized by this Constitution or any subsequent legislation to a position of trust over any land, property, accounts or monies, shall execute an official surety bond in the amount as may be required by the Council, and such surety bonds shall inure to the benefit of and be paid for by the Cherokee Nation for whose protection or surety the same shall be required and in no event shall said surety bond be other than by a Licensed Insurance Company, authorized to do business in the State of Oklahoma.

## Article XI. Removal From Office

### Cross References

Removal of tribal employees, see Article XII of the Cherokee Constitution.

### Research References

American Jurisprudence, 2d
41 Am Jur 2d, Indians, §§ 6, 7.

**Section 1.** The Principal Chief and the Deputy Principal Chief shall be subject to removal from office for willful neglect of duty, corruption in office, habitual drunkenness, incompetency or any conviction involving moral turpitude committed while in office.

### Cross References

Effect of removal of Principal Chief and Deputy Principal Chief, see Sections 4 and 5 of Article VI of the Cherokee Constitution.
Powers of Council as to removal of public officers generally, see Section 9 of Article V of the Cherokee Constitution.

**Section 2.** All other elective officers shall be subject to removal from office in such manner and for such causes as may be provided by laws passed by the Council.

### Cross References

Powers of Council as to removal of public officers generally, see Section 9 of Article V of the Cherokee Constitution.

**Section 3.** The Council shall pass such laws as are necessary for carrying into effect the provisions of this Article, insuring therein that due process is afforded the accused.

17



## Art. XII CONSTITUTION

### Article XII. Employee Rights

No employee, who having served in a position at least one (1) year, shall be removed from the employment of the Cherokee Nation except for cause. The employee shall be afforded a hearing by the Judicial Appeals Tribunal under such rules and procedures as may be prescribed by the Council. These rules and procedures, however, must follow, as nearly as practicable, the provisions of the Oklahoma Administrative Procedures Act, Title 75, Oklahoma Statutes 301 et seq.

#### Cross References

Labor and industrial relations generally, see Title 15, Cherokee Nation Code Annotated.
Removal of public officers, see Article XI of the Cherokee Constitution.

#### Research References

American Jurisprudence, 2d
41 Am Jur 2d, Indians, § 15.

#### Annotations

1. Persons deemed officers of Cherokee Nation
An employee of the Housing Authority of the Cherokee Nation is not an employee of the Cherokee Nation. In re Cockran (Judicial Appeals Tribunal, 1985).

### Article XIII. Oath

**Section 1.** All officers elected or appointed shall, before entering upon the duties of their respective offices, take and subscribe to the following oath or affirmation:

"I do solemnly swear, or affirm, that I will faithfully execute the duties of _____ of the Cherokee Nation, and will, to the best of my ability, preserve, protect and defend the Constitutions of the Cherokee Nation, and the United States of America. I swear or affirm further, that I will do everything within my power to promote the culture, heritage and traditions of the Cherokee Nation."

#### Cross References

Taking of oath by members of Council and executive officers generally, see Section 10 of Article V of the Cherokee Constitution.
Taking of oath by Principal Chiefs, see Section 7 of Article VI of the Cherokee Constitution.

**Section 2.** The foregoing oath shall be administered by any person authorized by the Council to administer oaths. The oath shall be filed in the Office of the Secretary-Treasurer.

---

### Article XIV. Clans

Nothing in this Constitution shall be construed to prohibit the right of any Cherokee to belong to a recognized clan or organization in the Cherokee Nation.

#### Cross References

Membership in Tribe generally, see Article III of the Cherokee Constitution.

#### Research References

American Jurisprudence, 2d
41 Am Jur 2d, Indians, §§ 1-3, 9.

### Article XV. Initiative, Referendum and Amendment

#### Cross References

Elections generally, see Title 10, Cherokee Nation Code Annotated.

#### Research References

American Jurisprudence, 2d
41 Am Jur 2d, Indians, §§ 6, 7.

**Section 1.** Notwithstanding the provisions of Article V, the people of the Cherokee Nation reserve to themselves the power to propose laws and amendments to this Constitution and to enact or reject the same at the polls independent of the Council, and also reserve power at their own option to approve or reject at the polls any act of the Council.

#### Cross References

Constitutional conventions, see Section 9 of Article XV of the Cherokee Constitution.
Initiatives generally, see Sections 3 and 5 of Article XV of the Cherokee Constitution.
Referenda generally, see Sections 3 through 6 of Article XV of the Cherokee Constitution.

**Section 2.** Any amendment or amendments to this Constitution may be proposed by the Council, and if the same shall be agreed to by a majority of all the members of the Council, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered into the Journal and referred by the Secretary-Treasurer to the people for their approval or rejection, at the next regular general election, except when the Council, by a two-thirds (2/3) vote, shall order a special election for that purpose. If a majority of all the registered voters voting at such election shall vote in favor of any amendment thereto, it shall thereby become a part of this Constitution.

PAGE 39 (§ 111)

CIV-22-237-JFH-KEW



**Cross References**

Approval of amendments by President of United States, see Section 10 of Article XV of the Cherokee Constitution.

Submission of proposed amendments to voters, see Sections 7 and 8 of Article XV of the Cherokee Constitution.

**Section 3.** The first power reserved by the people of the Cherokee Nation is the initiative and ten percent of the registered voters shall have the right to propose any legislative measure by petition and fifteen percent of the registered voters shall have the right to propose amendments to the constitution by petition, and every such petition shall include the full text of the measure so proposed. The second power is the referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health or safety), either by petition signed by five percent of the registered voters or by the Council as other enactments are effectuated. The ratio and percent of registered voters hereinbefore stated shall be based upon the total number of votes cast at the last general election for the officer receiving the highest number of votes at such election.

**Cross References**

Procedures for referenda, see Sections 4 through 6 of Article XV of the Cherokee Constitution.

**Section 4.** Referendum petitions shall be filed with the Secretary-Treasurer not more than ninety days after the final adjournment of the session or meeting of the Council which passed the bill on which the referendum is demanded. The veto power of the Principal Chief shall not extend to measures voted on by the people. All elections on measures referred to the people of the Cherokee Nation shall be had at the next regular general election except when the Council or the Principal Chief shall order a special election for the express purpose of making such reference. Any measure referred to the people by the initiative shall take effect and be in force when it shall have been approved by a majority of the votes cast in such election. Any measure referred to the people by the referendum shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon and provided that no measure which is required to be approved by the President of the United States or his authorized representative shall be effective until approved.

**Section 5.** Petitions and orders for the initiative and for the referendum shall be filed with the Secretary-Treasurer and addressed to the Principal Chief of the Cherokee Nation, who shall submit the

20

same to the people. The Council shall make suitable provisions for carrying into effect the provisions of this Article.

**Section 6.** The referendum may be demanded by the people against one or more items, sections or parts of any enactment of the Council in the same manner in which such power may be exercised against a complete enactment. The filing of a referendum petition against one or more items, sections or parts of an enactment shall not delay the remainder of such act from becoming operative.

**Section 7.** If two or more amendments are proposed they shall be submitted in such manner that electors may vote for or against them separately.

**Cross References**

Proposal of amendments by Council generally, see Section 2 of Article XV of the Cherokee Constitution.

Submission of proposals embracing more than one general subject, see Section 8 of Article XV of the Cherokee Constitution.

**Section 8.** No proposal for the amendment of this Constitution which is submitted to the voters shall embrace more than one general subject and the voters shall vote separately for or against each proposal submitted; provided, however, that in the submission of proposals for the amendment of this Constitution by articles, which embrace a general subject, each proposed article shall be deemed a single proposal or proposition.

**Cross References**

Submission of proposed amendments generally, see Section 7 of Article XV of the Cherokee Constitution.

**Section 9.** No convention shall be called by the Council to propose a new Constitution, unless the law providing for such convention shall first be approved by the people on a referendum vote at a regular or special election. Any amendments, alterations, revisions or new Constitution, proposed by such convention, shall be submitted to the electors of the Cherokee Nation at a general or special election and be approved by a majority of the electors voting thereon, before the same shall become effective. The question of such proposed convention shall be submitted to the members of the Cherokee Nation at least once in every twenty (20) years.

**Cross References**

Presidential approval of changes in Constitution, see Section 10 of Article XV of the Cherokee Constitution.

21



**Art. XV § 10** CONSTITUTION

**Section 10.** No amendment or new Constitution shall become effective without the approval of the President of the United States or his authorized representative.

**Cross References**

Reservation by people of power to propose and approve or reject amendments to Constitution, see Section 1 of Article XV of the Cherokee Constitution.

## Article XVI. Supersedes Old Constitution 1839

The provisions of this Constitution overrule and supersede the provisions of the Cherokee Nation Constitution enacted the 6th day of September 1839.

## Article XVII. Seat of Government

The Seat of Government of the Cherokee Nation shall be at Tahlequah, Oklahoma.

## Article XVIII. Adoption

This Constitution shall become effective when approved by the President of the United States or his authorized representative and when ratified by the qualified voters of the Cherokee Nation at an election conducted pursuant to rules and regulations promulgated by the Principal Chief. It shall be engrossed on parchment and signed by the Principal Chief and the Secretary of the Interior. It shall be filed in the office of the Cherokee Nation and sacredly preserved as fundamental law of the Cherokee Nation.

CONSTITUTION

**Research References**

American Jurisprudence, 2d
41 Am Jur 2d, Indians, §§ 1–22.

Handbook of Federal Indian Law
F. Cohen, Handbook of Federal Indian Law, 229–279, 639–672, 770–797 (1982 ed.).



PAGE 41 (of 111)

CIV-22-237-JFH-KEW

# Constitution

## of the

# Cherokee Nation

## of

# Oklahoma



PAGE 42 (OF 111)



DEFENDANT'S EXHIBIT

CIV-22-237-JFH-KEW

# Constitution
# of the
# Cherokee Nation

**(With Index, History, Cross-References, and Annotations)**

PAGE 43 (of 111)

CIV-22-237-JFH-KEW



The index, history, cross-references, and annotations have been prepared by the
Cherokee Nation Division of Law & Justice to assist readers in locating constitu-
tional and statutory provisions and Judicial Appeals Tribunal decisions on spe-
cific topics. The index, history, cross-references, and annotations are not part of the
official constitution.



**CHEROKEE NATION**
P.O. Box 948
Tahlequah, Okla. 74465
(918) 456-0671

Joe Byrd
KꝊ IꞀꝊꞀ
Principal Chief

James "Garland" Eagle
IꞀH DꝊ꞊Ꝋ꞊
Deputy Principal Chief

*Constitution*
*of the*
*Cherokee Nation*
*of Oklahoma*

APPROVED FOR REFERENDUM
BY THE COMMISSIONER
OF INDIAN AFFAIRS,
MORRIS THOMPSON ON SEPTEMBER 5, 1975,
SECONDED BY THE PRINCIPAL CHIEF OF THE CHEROKEE NATION,
ROSS O. SWIMMER
ON OCTOBER 2, 1975

O-si-yo,

At least 300 years prior to the passage of the United States Constitution, American democracy began with the Iroquois Confederacy's Law of the Great Peace. The Cherokee belong to the Iroquois language family of eastern North America, which includes five related tribes comprising the Iroquois Confederacy. The representative democracy of the Iroquois was extensively studied and praised by Benjamin Franklin and Thomas Jefferson, who often referred to it as the basis for the United States Constitution.

As we approach the 21st Century, it is imperative we examine our past. Contemplate its successes as well as the stumbling blocks we have faced. We must acknowledge the past, but look also at the road we travel today and the road we will travel tomorrow. We must focus on solutions rather than dwelling on problems, and forever envision the future and how to achieve the things we will be proud of, things that last.

The Cherokee Nation Constitution established a blueprint for our tribal government and allowed us to construct a set of laws to effectively govern the second largest Indian tribe in the United States.

Today, the Cherokee People are stronger, more educated, and self-sufficient than anytime in our glorious history. We have always been and will continue to be leaders among all people. We will continue to strengthen and structure a tribal government our grandchildren will be proud to call their own.

Wa-do,

Joe Byrd
**Principal Chief**

James "Garland" Eagle
**Deputy Principal Chief**

# Table of Contents

| ARTICLE | | PAGE |
|---|---|---|
| I. | Federal Regulations | 2 |
| II. | Bill of Rights | 3 |
| III. | Membership | 3 |
| IV. | Distribution of Powers | 4 |
| V. | Legislative | 4 |
| VI. | Executive | 7 |
| VII. | Judicial | 9 |
| VIII. | Cabinet | 9 |
| IX. | Election | 10 |
| X. | Fiscal | 11 |
| XI. | Removal from Office | 13 |
| XII. | Employee Rights | 13 |
| XIII. | Oath | 14 |
| XIV. | Clans | 14 |
| XV. | Initiative, Referendum and Amendment | 15 |
| XVI. | Supersedes Old Constitution 1839 | 17 |
| XVII. | Seat of Government | 17 |
| XVIII. | Adoption | 17 |
| | Index | 18 |



PAGE 44 (of 111)

CIV-22-237-JFH-KEW

*Constitution
of the
Cherokee Nation
of Oklahoma*

## PREAMBLE

We, the people of the Cherokee Nation, in order to preserve and enrich our tribal culture, achieve and maintain a desirable measure of prosperity, insure tranquility and to secure to ourselves and our posterity the blessings of freedom, acknowledging, with humility and gratitude, the goodness of the Sovereign Ruler of the Universe in permitting us so to do, and imploring his aid and guidance in its accomplishment--do ordain and establish this Constitution for the government of the Cherokee Nation. The term "Nation" as used in this Constitution is the same as "Tribe."

### History

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

## Article I. Federal Regulations

The Cherokee Nation is an inseparable part of the Federal Union. The Constitution of the United States is the Supreme law of the land; therefore, the Cherokee Nation shall never enact any law which is in conflict with any Federal law.

### History

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

### Cross References

Seat of government, Article XVII of the Cherokee Constitution.

### Annotations

Rorex v. Cherokee Nation JAT 93-5 (1995)

## Article II. Bill of Rights

**Section 1.** The judicial process of the Cherokee Nation shall be open to every member of the Cherokee Nation. Speedy and certain remedy shall be afforded under the terms of this Constitution for every wrong and injury to person, property or reputation wherein said remedy does not conflict with the laws of the United States. The Council shall prescribe the procedures pertinent thereto. The appropriate protections guaranteed by the Indian Civil Rights Act of 1968 shall apply to all members of the Cherokee Nation.

### History

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

### Cross References

Bill of rights generally, Amendments 1-10 of the United States Constitution.
Employment rights, Article XII of the Cherokee Constitution.
Indian Civil Rights Act of 1968, 25 U.S.C., Section 1301 et seq.

### Annotations

Rorex v. Cherokee Nation JAT 93-5 (1995)

## Article III. Membership

**Section 1.** All members of the Cherokee Nation must be citizens as proven by reference to the Dawes Commission Rolls, including the Delaware Cherokees of Article II of the Delaware Agreement dated the 8th day of May, 1867, and the Shawnee Cherokees as of Article III of the Shawnee Agreement dated the 9th day of June, 1869, and/or their descendants.

**Section 2.** There shall be established a Cherokee Register, to be kept by the Registrar, for the inclusion of any Cherokee for membership purposes in the Cherokee Nation who presents the necessary evidence of eligibility for registration.

(a) A Registration Committee shall be established. It shall be the duty of the Registration Committee to consider the qualifications and to determine the eligibility of those applying to have their names entered in the Cherokee Register. The Registration Committee shall consist of a Registrar and two (2) assistants. All members shall be appointed by the Principal Chief, and confirmed by the Council.

(b) There shall be a number assigned to every name which is approved and entered into the Cherokee Register. This number shall be preceded by the three words, "Cherokee Registry Number."



(c) The decisions of the Registration Committee shall be subject to review by the Tribunal created by Article VII.

**Section 3.** Registration as used in this article refers to the process of enrolling as a member of the Cherokee Nation and is not the same as the registration for voting purposes.

### History

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

### Cross References

Courts and procedure generally, Title 20, Cherokee Nation Code Annotated.
Election generally, Title 26, Cherokee Nation Code Annotated.
Right to belong to recognized clans or organizations, Article XIV of the Cherokee Constitution.
Treaties and agreements, Appendix I, 1986 Cherokee Nation Code Annotated.

## Article IV. Distribution of Powers

The powers of the government of the Cherokee Nation shall be divided into three (3) separate departments: Legislative, Executive and Judicial; and except as provided in this Constitution, the Legislative, Executive and Judicial departments of government shall be separate and distinct and neither shall exercise the powers properly belonging to either of the others.

### History

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

### Cross References

Executive branch generally, Article VI of the Cherokee Constitution.
Judicial branch generally, Article VII of the Cherokee Constitution.
Legislative branch generally, Article V of the Cherokee Constitution.

## Article V. Legislative

**Section 1.** The legislature shall consist of one legislative body to be called the Council of the Cherokee Nation. The initial election of members to the Council pursuant to this Constitution shall occur within 120 days from the date of its ratification on a day to be announced by the Principal Chief.

**Section 2.** The Council shall establish its rules for its credentials, decorum and procedure.

4

**Section 3.** The Council shall consist of fifteen (15) members, who are members by blood of the Cherokee Nation of Oklahoma. Each Council member shall be elected in the general election for a term of four (4) years and until his successor is duly elected and installed.

The Council shall establish representative districts which shall be within the historical boundaries of the Cherokee Nation of Oklahoma. These districts shall be apportioned to afford a reasonably equal division of tribal membership among the districts.

**Section 4.** There shall be at least one regular session of the Council in the calendar year which shall convene on the second Monday in each January or at such other date as the Council shall determine. No business shall be conducted by the Council unless a least two-thirds (2/3) of members thereof regularly elected and qualified shall be in attendance, which number shall constitute a quorum. The session may not exceed a maximum of thirty (30) calendar days for pay purposes.

**Section 5.** Special meetings of the Council may be called: (A) by the Principal Chief, (B) by the Deputy Principal Chief when he has the full powers of the Principal Chief as elsewhere defined, (C) upon written request of fifty-one percent (51%) of the members of the Council, or (D) upon the written request of ten percent (10%) of the registered voters of the Cherokee Nation. The purposes of said meeting shall be stated in notice published not less than ten (10) days prior to the meeting, and the Council may not consider any other subject not within such purposes. No special meetings may convene until (30) days have elapsed after the adjournment of a prior session or meeting, unless called pursuant to (A) and (B) above.

**Section 6.** All meetings of the Council and of its committees shall be open to the public except: (A) When the discussion shall concern employment, retention or discharge of personnel; (B) When the question of the moral turpitude of any member of the Tribe is discussed; or (C) When the decorum of the audience shall prejudice orderly administration of business. In the event that consideration of a subject shall take place in Executive Session, the vote shall take place in an open meeting.

**Section 7.** The Council shall have the power to establish laws which it shall deem necessary and proper for the good of the Nation, which shall not be contrary to the provisions of this Constitution. Laws or enactments which are required by Federal statutes to be approved shall be transmitted immediately upon enactment as provided by Section 11 of this Article to the President of the United States or his authorized representative.

The style of all bills or laws shall be: "Be It Enacted By The Cherokee Nation." The style of all resolutions shall be "Be It Resolved By The Cherokee Nation."

**Section 8.** No laws passed by the Council shall have retroactive effect or operation.

**Section 9.** The Council shall have the power of removal and said removal mu

5

be conducted in accordance with Article XI of this Constitution. Nothing herein is intended to abrogate or limit the authority of the President of the United States, or any person or agency to which the President or Congress of the United States shall delegate authority therefore, to remove the Principal Chief or his subordinates.

**Section 10.** Members of the Council and all Executive Officers shall be bound by oath, provided in Article XIII, to support the Constitution of the Cherokee Nation, the Constitution of the United States of America, do everything within the individual's power to promote the culture, heritage and traditions of the Cherokee Nation and to perform the duties of their respective offices with fidelity.

**Section 11.** Every enactment which shall have been approved by a majority of the members in attendance at the Council shall, before it becomes effective be presented to the Principal Chief, if he approves, he shall sign it; if not, he shall return it with his objections to the Council, which shall enter the objections in the Journal and proceed to reconsider it. If, after such reconsideration, two-thirds (2/3) of the entire council shall agree to pass the enactment, it shall become fully effective and operational notwithstanding the objections of veto of the Principal Chief. In all such cases, the vote of the Council shall be determined by yeas and nays, and the names of the members voting shall be entered on the Council's Journal. If any enactment shall not be returned by the Principal Chief within five (5) days (Sundays and holidays excepted) after it shall have been presented to him, the same shall be law in like manner as if he had signed it, unless the Council shall, by its adjournment, prevent its return, in which case, it shall become a law without the approval of the Principal Chief. No enactment shall become a law after the final adjournment of the Council, unless approved by the Principal Chief within fifteen (15) days after such adjournment.

#### History

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976; Section 3 amended to include district provisions by Referendum on June 20, 1987, pursuant to Cherokee Nation Council Resolution No. 9-87.

#### Cross References

Bonds, Article X, Section 11 of the Cherokee Constitution
Council members, compensation, Article X, Section 10 of the Cherokee Constitution
Council members, election, Article IX of the Cherokee Constitution and Title 26, Cherokee Nation Code Annotated
Council members, qualifications, Article IX, Section 2 of the Cherokee Constitution
Council members, removal, Article XI, Section 2 of the Cherokee Constitution
Council powers, approval of cabinet, Article VIII of the Cherokee Constitution
Distribution of powers, Article IV of the Cherokee Constitution
Fiscal matters, regulation by Council, Article X of the Cherokee Constitution
Initiative and referendum, Article XV, Section 1 of the Cherokee Constitution
Meetings, convening of, Article VI, Section 8 of Cherokee Constitution

#### Annotations

Leach v. Cherokee Nation JAT 94-1 (1994)



Prichett v. Cherokee Nation & Election Comm JAT 95-6 (1995)

### Article VI. Executive

**Section 1.** The executive power shall be vested in a Principal Chief, who shall be styled "The Principal Chief of the Cherokee Nation." The Principal Chief shall hold his office for the term of four (4) years; and shall be elected by the qualified voters on the same day and in the same manner, except as otherwise provided by this Constitution, as they shall respectively vote for members of the Council for that particular year, provided the Principal Chief in office when this Constitution is ratified shall continue in office until his successor is duly elected in the 1979 election and installed.

The returns of the election for the Principal Chief shall be sealed and directed by the lawfully appointed election officials to the Secretary-Treasurer, who shall, immediately after the organization of the Council, and before proceeding to other business, open and publish the same in the presence of a majority of the Council. The person having the highest number of votes, shall be the Principal Chief; but if two (2) or more shall be equal and highest in votes, one of them shall be chosen by a vote of the Council. The manner of determining contested elections shall be as directed by Cherokee law.

**Section 2.** The Principal Chief of the Cherokee Nation shall be a citizen of the Cherokee Nation of Oklahoma in accordance with Article III; shall have been born within boundaries of the United States of America, its territories or possessions; shall have established a bona fide, permanent residence within the historic boundaries of the Cherokee Nation for no less than 270 days immediately preceding the day of the general election in which he or she was elected; and shall have obtained the age of thirty (30) years of age at the time of his or her election and be a member by blood of the Cherokee Nation.

**Section 3.** The qualified electors shall elect a Deputy Principal Chief, who shall possess the same qualifications as the Principal Chief, for a term of four (4) years at the same time and in the same manner as herein provided for the election of the Principal Chief, provided, that the initial election of the Deputy Principal Chief shall take place in conjunction with the first Council election pursuant to this Constitution and in accordance with Section 1 of this Article.

**Section 4.** In case of the absence of the Principal Chief from office due to his death, resignation, removal or inability to discharge the powers and duties of the said office, the same shall devolve upon the Deputy Principal Chief for the remaining portion of the four (4) year term to which the Principal Chief has been elected. In case of disability such powers shall continue during the termof such disability. Vacancies in the office of the Deputy Principal Chief shall be filled by the Council.

**Section 5.** The Council may, in the case of removal, death, resignation or disability of both the Principal Chief and the Deputy Principal Chief, provide by law what office shall then act as Principal Chief until the disability be removed or a successor shall be elected.

7

**Section 6.** The Principal Chief and Deputy Principal Chief shall, at stated times, receive for their service a compensation not inconsistent with Article X.

**Section 7.** Before the Principal Chief assumes his office, he shall take the oath or affirmation as provided for in Article XIII.

**Section 8.** The Principal Chief may on extraordinary occasions convene the Council at the seat of government pursuant to Article V, Section 5, and such notice and other laws as may be prescribed by the Council. The purpose of said meetings must be stated and the Council may consider only such matters as are specified in the call of the extraordinary meetings. Before the extraordinary meetings may be legally sufficient to conduct business, a quorum of the Council must be present.

**Section 9.** At every session of the Council, and immediately upon its organization, the Principal Chief shall communicate by message, delivered to the Council upon the condition of the Cherokee Nation; and shall recommend such matters to the Council as he shall judge expedient.

**Section 10.** The Principal Chief shall cause the laws of the Cherokee Nation to be faithfully executed, and shall conduct in person and in such manner as shall be prescribed by law, all communications and business of the Cherokee Nation. The Principal Chief may cause to be formed and operated, trusts, the beneficiary of which shall be the Cherokee Nation and these trusts shall be granted such powers as provided by law for public trusts. Authorization for these trusts, however, must be approved by a majority vote of the Council.

**Section 11.** The Deputy Principal Chief shall, by virtue of his office, aid and advise the Principal Chief in the administration of the government and shall be President of the Council but shall vote only for the purpose of breaking a tie vote.

**Section 12.** Nothing in this Constitution shall be construed as preventing the Principal Chief from appointing such administrative assistants as he deems proper.

### History

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

### Cross References

Council generally, Title 19, Cherokee Nation Code Annotated.
Council meetings generally, Article V, Sections 4 through 6 of the Cherokee Constitution.
Distribution of powers, Article IV of the Cherokee Constitution.
Elections generally, Title 26, Cherokee Nation Code Annotated
Fiscal matters generally, Article X of the Cherokee Constitution.
Office of Principal Chief and Deputy Principal Chief generally, Title 51, Cherokee Nation Code Annotated
Principal Chief, generally, Article VII, Section 1 of the Cherokee Constitution



Principal Chief, qualifications, Article IX, Section 2 of the Cherokee Constitution
Principal Chief, term, Article VI, Section 1 of the Cherokee Constitution
Removal, Article V, Section 9, and Article XI, Section 1, of the Cherokee Constitution
Surety bonds, Article X, Section 11 of the Cherokee Constitution

### Annotations

Leach v. Election Comm JAT 94-1 (1994)
Waits v. Cherokee Nation JAT 95-2 (1995)

## Article VII. Judicial

There is hereby created a Judicial Appeals Tribunal composed of three (3) members all of whom must be admitted to practice law before the highest Court of the State of which they are residents, and all of whom shall be members of the Cherokee Nation, appointed by the Principal Chief and approved by the Council for such terms as the Council may provide. The purpose of this Tribunal shall be to hear and resolve any disagreements arising under any provisions of this Constitution or any enactment of the Council. The Council shall provide for a procedure which shall insure that any litigant receives due process of law together with prompt and speedy relief, and shall generally follow that portion of the Oklahoma Statutes known as the Administrative Procedures Act, Title 75, Oklahoma Statutes, 301 et seq. The decision of the Judicial Appeals Tribunal shall be final insofar as the judicial process of the Cherokee Nation is concerned.

### History

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

### Cross References

Bill of Rights, Article II of the Cherokee Constitution.
Courts and procedure generally, Title 20, Cherokee Nation Code Annotated.
Distribution of powers, Article IV of the Cherokee Constitution.
Enforcement of employment rights, Article XII of the Cherokee Constitution.
Oath, Article XIII of the Cherokee Constitution.
Removal, Article V and Article XI, Section 9 of the Cherokee Constitution.

### Annotations

Squirrel v. Cherokee Nation JAT 79-1 (1980)
Waits v. Cherokee Nation JAT 95-2 (1995)

## Article VIII. Cabinet

There shall be a cabinet composed of the following persons who shall be members of the Cherokee Nation:

Secretary-Treasurer
Secretary of Health, Education and Welfare
Secretary of Commerce and Industrial Development
General Counsel
Secretary of Communications

These persons shall be appointed by the Principal Chief and approved by the Council. The Council, on recommendation of the Chief only, may create additional cabinet positions and departments. The Chief shall prescribe the duties and responsibilities of cabinet members. Cabinet members shall be authorized to appoint such staff and other assistants as they deem necessary. The Council may, with recommendation of the Principal Chief, abolish any established cabinet position or function or revise the title or responsibilities of any foregoing department or function.

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

**Cross References**

Council generally,  Article V of the Cherokee Constitution.
Executive branch generally,  Article VI of the Cherokee Constitution.
Oath,  Article XIII of the Cherokee Constitution.
Removal,  Article V and Article XI, Section 9  of the Cherokee Constitution.

## Article IX. Election

**Section 1.** The Council shall enact an appropriate law not inconsistent with the provisions of this Constitution that will govern the conduct of all elections, provided that the initial election of the Council and Deputy Principal Chief shall be conducted pursuant to rules and regulations promulgated by the Principal Chief and the provision set forth in Articles V and VI of this Constitution, notwithstanding, the Principal Chief or Council may adopt rules requiring a majority vote for any elective office.

**Section 2.** Any member by blood of the Cherokee Nation at least twenty-five years of age on the date of the election may be a candidate for the Council. No person who shall have been convicted of or has pled guilty or has pled no defense to a felony charge under the laws of the United States of America, or of any State, Territory, or Possession thereof, shall be eligible to hold any office or appointment of honor, profit or trust within this Nation unless such person has received a pardon. Any person who holds any office of honor, profit or trust in any other tribe of Indians, either elective or appointive, shall be ineligible to hold simultaneously any office of honor, profit or trust of the Cherokee Nation unless approved by the Council.

**Section 3.** All elections shall be determined by secret balloting.

10

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

**Cross References**

Conduct of elections generally,  Title 26, Cherokee Nation Code Annotated.
Compensation of public officers,  Article X, Section 11 of the Cherokee Constitution.
Qualifications of candidates generally,  Title 26, Cherokee Nation Code Annotated.

**Annotation**

Mayes, Muskrat v. Cherokee Nation, Bearpaw, & Election Comm JAT 95-7&8 (1995)

## Article X. Fiscal

**Section 1.** The fiscal year shall commence on the first day of July in each year unless otherwise provided by law.

**Section 2.** The Council shall provide by law for an annual expenditure of funds and the source from which funds are to be derived, to defray the estimated expenses of the Executive, Council, Cabinet and Departments of Government of the Cherokee Nation for each fiscal year. The budget shall not exceed estimated revenues.

**Section 3.** At least thirty (30) days prior to the convening of each regular session of the Council, the Secretary-Treasurer shall make and present to the Council an itemized estimate of the revenue to be received by the Cherokee Nation, together with a statement of the sources from which revenues are to be received, under the laws, grants judgements, interests, and any other sources in effect at the time such estimate is made for the next ensuing fiscal year. The Secretary-Treasurer shall prepare annual financial statements reflecting the results of operations of all tribal activities and shall prepare a consolidated balance sheet in conformity with generally accepted accounting principles within sixty (60) days after the end of the fiscal year.

**Section 4.** The Council shall require that records be maintained of all funds, monies, accounts and indebtedness and all other accounts bearing upon the fiscal interests of the Cherokee Nation by the use of a uniform system of accounting which records and financial statements shall be audited by a Certified Public Accountant or as otherwise may be prescribed by the Council prior to the submission of said accounts to the Council.

**Section 5.** The Secretary-Treasurer shall be authorized to accept all grants, donations of money, interest of funds of the Cherokee Nation, judgements and any and all other sources of monies available to the Cherokee Nation, for uses and purposes and upon the conditions and limitations for which the same are granted or donated; and the faith of the Cherokee Nation is hereby pledged to preserve such grants and donations as a sacred trust and to keep the same for the use and purposes for which they were granted or donated.

11



**Section 6.** The Council shall have the authority to invest funds or money of the Cherokee Nation and the preference to be given to the security for such investments, the manner of selecting the securities, prescribing the rules, regulations, restrictions and conditions upon which the funds shall be loaned or invested, provided that no investment shall be in mortgages other than first mortgages only, and do all things necessary for the safety of the funds and permanence of the investments. If required by law, such investments would be subject to the approval of the Secretary of the Interior.

**Section 7.** The credit of the Cherokee Nation shall not be given, pledged, or loaned to any individual, firm, company, corporation, or association without the approval of the Council. The Cherokee Nation shall not make any donations by gift, or otherwise, to any individual, firm, company, corporation, or association with out the approval of the Council.

**Section 8.** All laws authorizing the expenditures of money by and on behalf of the Cherokee Nation shall specify the purpose for which the money is to be used, and the money so designated shall be used for no other purpose. Annual expenditures shall not exceed the available funds.

**Section 9.** General laws shall be enacted by the Council providing for the deposit of funds of the Cherokee Nation, and the depository for such funds shall be under the control of the Secretary-Treasurer, under such terms and conditions as shall be designated by said Council and under such laws which shall provide for the protection of said funds.

**Section 10.** No official, member or officer of the Council, Cabinet Member, employee of any official, Council, Cabinet, or subdivisions thereof, or any person employed in any capacity by the Cherokee Nation shall receive from any individual, partnership, corporation, or entity doing business with the Cherokee Nation directly or indirectly, any interest, profit, benefits or gratuity, other than wages, salary, per diem, or expenses, specifically provided by law.

**Section 11.** All officers, elected or appointed, who are authorized by this Constitution or any subsequent legislation to a position of trust over any land, property, accounts or monies, shall execute an official surety bond in the amount as may be required by the Council, and such surety bonds shall inure to the benefit of and be paid for by the Cherokee Nation for whose protection or surety the same shall be required and in no event shall said surety bond be other than by a Licensed Insurance Company, authorized to do business in the State of Oklahoma.

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

12

**Cross References**

Compensation of Principal Chief and Deputy Principal Chief generally, Article VI, Section 6 of the Cherokee Constitution
Fiscal year defined, Section 62-1-10 of the Cherokee Nation Code Annotated.
Public finance generally, Title 62, Cherokee Nation Code Annotated.

## Article XI. Removal From Office

**Section 1.** The Principal Chief and the Deputy Principal Chief shall be subject to removal from office for willful neglect of duty, corruption in office, habitual drunkenness, incompetency or any conviction involving moral turpitude committed while in office.

**Section 2.** All other elective officers shall be subject to removal from office in such manner and for such causes as may be provided by laws passed by the Council.

**Section 3.** The Council shall pass such laws as are necessary for carrying into effect the provisions of this Article, insuring therein that due process is afforded the accused.

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

**Cross References**

Effect of removal of Principal and Deputy Principal Chief, Article VI, Sections 4 and 5 of the Cherokee Constitution.
Powers of Council as to removal of public officers generally, Article V, Section 9 of the Cherokee Constitution.
Removal of tribal employees, Article XII of the Cherokee Constitution

## Article XII. Employee Rights

No employee, who having served in a position at least one (1) year, shall be removed from the employment of the Cherokee Nation except for cause. The employee shall be afforded a hearing by the Judicial Appeals Tribunal under such rules and procedures as may be prescribed by the Council. These rules and procedures, however, must follow, as nearly as practicable, the provisions of the Oklahoma Administrative Procedures Act, Title 75, Oklahoma Statutes 301 et seq.

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

13

PAGE 51 (51 of 111)

**Cross References**

Labor and industrial relations generally, Title 40, Cherokee Nation Code Annotated.
Removal of public officers, Article XI of the Cherokee Constitution.

**Annotations**

Gourd v. Cherokee Nation JAT 78-1 (1978)
Squirrel v. Cherokee Nation JAT 79-1 (1980)
Sunday v. Cherokee Nation JAT 81-1 (1981)
In Matter of Cochran JAT 83-E2 (1983)
Gossett v. Cherokee Nation JAT 87-7 (1987)
Mayes v. Cherokee Nation JAT 93-1 (1993)
Nix v. Cherokee Nation JAT 93-3 (1993)
Leach v. Election Comm JAT 94-1 (1994)
Mauldin v. Cherokee Nation JAT 95-1 (1995)
Waits v. Cherokee Nation JAT 95-2 (1995)
Prichett v. Cherokee Nation & Election Comm JAT 95-6 (1995)

## Article XIII. Oath

**Section 1.** All officers elected or appointed shall, before entering upon the duties of their respective offices, take and subscribe to the following oath or affirmation: "I do solemnly swear, or affirm, that I will faithfully execute the duties of _____ of the Cherokee Nation, and will, to the best of my ability, preserve, protect and defend the Constitutions of the Cherokee Nation, and the United States of America. I swear or affirm further, that I will do everything within my power to promote the culture, heritage and traditions of the Cherokee Nation."

**Section 2.** The foregoing oath shall be administered by any person authorized by the Council to administer oaths. The oath shall be filed in the Office of the Secretary-Treasurer.

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

**Cross References**

Taking of oath by members of Council and executive officers generally, Article V, Section 10 of the Cherokee Constitution.

Taking of oath by Principal Chiefs, Article VI, Section 7 of the Cherokee Constitution.

## Article XIV. Clans

Nothing in this Constitution shall be construed to prohibit the right of any Cherokee to belong to a recognized clan or organization in the Cherokee Nation.

14

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

**Cross References**

Membership in Tribe generally, Article III of the Cherokee Constitution.

## Article XV. Initiative, Referendum and Amendment

**Section 1.** Notwithstanding the provisions of Article V, the people of the Cherokee Nation reserve to themselves the power to propose laws and amendments to this Constitution and to enact or reject the same at the polls independent of the Council, and also reserve power at their own option to approve or reject at the polls any act of the Council.

**Section 2.** Any amendment or amendments to this Constitution may be proposed by the Council, and if the same shall be agreed to by a majority of all the members of the Council, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered into the Journal and referred by the Secretary-Treasurer to the people for their approval or rejection, at the next regular general election, except when the Council, by a two-thirds (2/3) vote, shall order a special election for that purpose. If a majority of all the registered voters voting at such election shall vote in favor of any amendment thereto, it shall thereby become a part of this Constitution.

**Section 3.** The first power reserved by the people of the Cherokee Nation is the initiative and ten percent of the registered voters shall have the right to propose any legislative measure by petition and fifteen percent of the registered voters shall have the right to propose amendments to the constitution by petition, and every such petition shall include the full text of the measure so proposed. The second power is the referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health or safety), either by petition signed by five percent of the registered voters or by the Council as other enactments are effectuated. The ratio and percent of registered voters hereinbefore stated shall be based upon the total number of votes cast at the last general election for the officer receiving the highest number of votes at such election.

**Section 4.** Referendum petitions shall be filed with the Secretary-Treasurer not more than ninety days after the final adjournment of the session or meeting of the Council which passed the bill on which the referendum is demanded. The veto power of the Principal Chief shall not extend to measures voted on by the people. All elections on measures referred to the people of the Cherokee Nation shall be had at the next regular general election except when the Council or the Principal Chief shall order a special election for the express purpose of making such reference. Any measure referred to the people by the initiative shall take effect and be in force when it shall have been approved by a majority of the votes cast in such election. Any measure referred to the people by the referendum

15

shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon and provided that no measure which is required to be approved by the President of the United States or his authorized representative shall be effective until approved.

Section 5. Petitions and orders for the initiative and for the referendum shall be filed with the Secretary-Treasurer and addressed to the Principal Chief of the Cherokee Nation, who shall submit the same to the people. The Council shall make suitable provisions for carrying into effect the provisions of this Article.

Section 6. The referendum may be demanded by the people against one or more items, sections or parts of any enactment of the Council in the same manner in which such power may be exercised against a complete enactment. The filing of a referendum petition against one or more items, sections or parts of an enactment shall not delay the remainder of such act from becoming operative.

Section 7. If two or more amendments are proposed they shall be submitted in such manner that electors may vote for or against them separately.

Section 8. No proposal for the amendment of this Constitution which is submitted to the voters shall embrace more than one general subject and the voters shall vote separately for or against each proposal submitted; provided, however, that in the submission of proposals for the amendment of this Constitution by articles, which embrace a general subject, each proposed article shall be deemed a single proposal or proposition.

Section 9. No convention shall be called by the Council to propose a new Constitution, unless the law providing for such convention shall first be approved by the people on a referendum vote at a regular or special election. Any amendments, alterations, revisions or new Constitution, proposed by such convention, shall be submitted to the electors of the Cherokee Nation at a general or special election and be approved by a majority of the electors voting thereon, before the same shall become effective. The question of such proposed convention shall be submitted to the members of the Cherokee Nation at least once in every twenty (20) years.

Section 10. No amendment or new Constitution shall become effective without the approval of the President of the United States or his authorized representative.

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

**Cross References**

Elections generally, Title 26, Cherokee Nation Code Annotated

## Article XVI. Supersedes Old Constitution 1839

The provisions of this Constitution overrule and supersede the provisions of the Cherokee Nation Constitution enacted the 6th day of September 1839.

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

## Article XVII. Seat of Government

The Seat of Government of the Cherokee Nation shall be at Tahlequah, Oklahoma.

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

## Article XVIII. Adoption

This Constitution shall become effective when approved by the President of the United States or his authorized representative and when ratified by the qualified voters of the Cherokee Nation at an election conducted pursuant to rules and regulations promulgated by the Principal Chief. It shall be engrossed on parchment and signed by the Principal Chief and the Secretary of the Interior. It shall be filed in the office of the Cherokee Nation and sacredly preserved as fundamental law of the Cherokee Nation.

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

PAGE 52 (of 111)

CIV-22-237-JFH-KEW



# INDEX

Adoption, Article XVIII of the Cherokee Constitution

Amendments, Article 15, Section 1 of the Cherokee Constitution and Title 26, Section 1 of the Cherokee Nation Code Annotated

Bill of Rights, Article II of the Cherokee Constitution

Bonds, Article X, Section 11 of the Cherokee Constitution

Cabinet, Article VIII of the Cherokee Constitution

Citizenship, tribal membership, Article III, Section 1 of the Cherokee Constitution

Clans or organizations, membership in, Article XIV of the Cherokee Constitution

Compensation of public officers, Article X, Section 11 of the Cherokee Constitution

Constitutional Amendments

    Approval by President of United States, Article XV, Section 10 of the Cherokee Constitution

    Constitutional conventions, Article XV, Section 9 of the Cherokee Constitution.

    Proposal by Council generally, Article XV, Section 2 of the Cherokee Constitution

    Reservation by people of power to propose and approve or reject amendments, Article XV, Section 1 of the Cherokee Constitution

    Submission to voters, Article XV, Sections 7 and 8 of the Cherokee Constitution.

Council

    Districts, Article V, Section 3 of the Cherokee Constitution

    Generally , Article V, Section 1 of the Cherokee Constitution and Title 19, Cherokee Nation Code Annotated

    Meetings, generally, Article V, Section 4 thru 6 and Article VI, Sections 8 & 9 of the Cherokee Constitution

Council Members

    Compensation, Article X, Section 10 of the Cherokee Constitution

    Election, Article IX of the Cherokee Constitution and Title 26, Cherokee Nation Code Annotated

    Oath, Article V, Section 10 of the Cherokee Constitution

    Qualifications, Article IX, Section 2 of the Cherokee Constitution

    Removal, Article XI, Section 2, of the Cherokee Constitution

    Term of office, Article V, Section 3 of the Cherokee Constitution

Council Powers

    Approval of cabinet, Article VIII of the Cherokee Constitution

    Fiscal matters, Article X of the Cherokee Constitution

    Removal, Article V, Section 9 of the Cherokee Constitution

    Rules of procedure, Article V, Section 2 of the Cherokee Constitution

Courts and procedure generally, see Article VII of the Cherokee Constitution and Title 20, Cherokee Nation Code Annotated

Departments of Government, Article 4 of the Cherokee Constitution

Deputy Principal Chief

    Compensation, Article VI, Section 6 of the Cherokee Constitution

    Duties, Article VI, Section 11 of the Cherokee Constitution

    Generally, Article VI, Section 4 of the Cherokee Constitution and Title 51, Cherokee Nation Code Annotated

    Qualifications, Article VI, Section 3 of the Cherokee Constitution

    Vacancies, Article VI, Section 4 & 5 of the Cherokee Constitution

Distribution of powers, Article IV of the Cherokee Constitution

Elections

    Article IX, Section 1 of the Cherokee Constitution

    Generally, Title 26, Cherokee Nation Code Annotated

    Qualifications of candidates generally, Title 26, Cherokee Nation Code Annotated

Employee rights, Article XII of the Cherokee Constitution

Executive branch generally, see Principal Chief, this index

Fiscal Matters

    Accounting system, Article X, Section 4 of the Cherokee Constitution

    Budget annual, Article X, Section 2 of the Cherokee Constitution

    Compensation of Principal Chief and Deputy Principal Chief generally, Article VI, Section 6 of the Cherokee Constitution

    Deposit of public funds, Article X, Section 9 of the Cherokee Constitution

    Expenditures of public funds, Article X, Section 8 of the Cherokee Constitution

    Financial statements, Article X, Section 3 of the Cherokee Constitution

    Fiscal year defined, Article X, Section 1 of the Cherokee Constitution and Title 62, Section 1 of the Cherokee Nation Code Annotated.

    Generally, Article X of the Cherokee Constitution

    Gratuities, interests, profits, receipt by officials and employees, Article X, Section 10 of the Cherokee Constitution

    Investments generally, Article X, Section 6 of the Cherokee Constitution.

    Pledges, loans, donations, Article X, Section 7 of the Cherokee Constitution

    Public finance generally, Title 62, Cherokee Nation Code Annotated.

    Requirement of surety bonds, Article X, Section 11 of the Cherokee Constitution.

    Revenue estimates, Article X, Section 3 of the Cherokee Constitution

    Surety bonds, Article X, Section 11 of the Cherokee Constitution

    Treasurer, acceptance of grants, donations, etc., Article X, Section 5 of the Cherokee Constitution

    Use of grants and donations, Article X, Section 5 of the Cherokee Constitution.

Initiative and referendum, Article XV, Section 1 of the Cherokee Constitution

Initiatives generally, Article XV, Section 3 & 5 of the Cherokee Constitution

Judicial Appeals Tribunal

    Article VII of the Cherokee Constitution

    Jurisdiction Title 20, Section 51 of the Cherokee Nation Code Annotated

Judicial branch generally, Article VII of the Cherokee Constitution

Laws

    Approval of, Article V, Section 11 of the Cherokee Constitution

    Enactment of, Article V, Section 7 & 8 of the Cherokee Constitution

Legislative branch generally, Article V of the Cherokee Constitution

Membership

    Generally, Article III of the Cherokee Constitution

    Right to belong to recognized clans or organizations, Article XVI of the Cherokee Constitution

Oath and Affirmations, Article XIII of the Cherokee Constitution

Oath, Article XIII of the Cherokee Constitution

Oath by members of Council and executive officers generally, Article V, Section 10 of the Cherokee Constitution

Principal Chief, Article IV, Section 1 of the Cherokee Constitution

Principal Chief

    Administrative Assistants to Chief, Article VI, Section 12 of the Cherokee Constitution

    Compensation, see Article VI, Section 6 of the Cherokee Constitution

    Duties, Article VI, Section 10 of the Cherokee Constitution

    Generally, Article VII, Section 1 of the Cherokee Constitution and Title 51, Cherokee Nation Code



PAGE 53 (53 111)

CIV-22-237-JFH-KEW

Annotated

   Oath, Article VI, Section 7 of the Cherokee Constitution

   Qualifications, Article VI, Section 2 and Article IX, Section 2 of the Cherokee Constitution

   - Term, Article VI, Section 1 of the Cherokee Constitution

   Vacancies, Article VI, Sections 4 & 5 of the Cherokee Constitution

Referenda, procedures Article XV, Section 4 thru 6 of the Cherokee Constitution

Register of members, Article III, Section 2 of the Cherokee Constitution

Registry number, members, Article III, Section 2 of the Cherokee constitution

Removal from office, Article XI, Section 1of the Cherokee Constitution

Removal, Article V, Section IX, and Article XI, Section 1, of the Cherokee Constitution

Seat of Government, Article XVII of the Cherokee Constitution

Tribal council, Article V, Section 1of lthe Cherokee Constitution

Tribal officers and employees, Article VI, Section 1 and Article 8 of the Cherokee Constitution

   Oaths and affirmations, Article XIII of the Cherokee Constitution

   Removal from office, Article XI, Section 1 of the Cherokee Constitution

   Rights of employees, Article XII of the Cherokee Constitution



Layout and Design
by
Cherokee Nation
Public Affairs Department



# Constitution
## of the
## Cherokee Nation
## of
## Oklahoma

DEFENDANT'S EXHIBIT 3

PAGE 55 (% 111)

CIV-22-237-JFH-KEW



# Constitution
# of the
# Cherokee Nation

(With Index, History, Cross-References, and Annotations)

PAGE 56 (OF 111)

CIV-22-237-JFH-KEW



The index, history, cross-references, and annotations have been prepared by the Cherokee Nation Division of Law & Justice to assist readers in locating constitutional and statutory provisions and Judicial Appeals Tribunal decisions on specific topics. The index, history, cross-references, and annotations are not part of the official constitution.



**CHEROKEE NATION**
P.O. Box 948
Tahlequah, Okla. 74465
(918) 456-0671

Joe Byrd
ᎩᎣ ᏏᎾᏘᏋ
Principal Chief

James "Garland" Eagle
ᎵᎲ ᏓᏀᏴᎱᏐ
Deputy Principal Chief

*Constitution*
*of the*
*Cherokee Nation*
*of Oklahoma*

APPROVED FOR REFERENDUM
BY THE COMMISSIONER
OF INDIAN AFFAIRS,
MORRIS THOMPSON ON SEPTEMBER 5, 1975,
SECONDED BY THE PRINCIPAL CHIEF OF THE CHEROKEE NATION,
ROSS O. SWIMMER
ON OCTOBER 2, 1975

**O-si-yo,**

At least 300 years prior to the passage of the United States Constitution, American democracy began with the Iroquois Confederacy's Law of the Great Peace. The Cherokee belong to the Iroquois language family of eastern North America, which includes five related tribes comprising the Iroquois Confederacy. The representative democracy of the Iroquois was extensively studied and praised by Benjamin Franklin and Thomas Jefferson, who often referred to it as the basis for the United States Constitution.

As we approach the 21st Century, it is imperative we examine our past. Contemplate its successes as well as the stumbling blocks we have faced. We must acknowledge the past, but look also at the road we travel today and the road we will travel tomorrow. We must focus on solutions rather than dwelling on problems, and forever envision the future and how to achieve the things we will be proud of, things that last.

The Cherokee Nation Constitution established a blueprint for our tribal government and allowed us to construct a set of laws to effectively govern the second largest Indian tribe in the United States.

Today, the Cherokee People are stronger, more educated, and self-sufficient than anytime in our glorious history. We have always been and will continue to be leaders among all people. We will continue to strengthen and structure a tribal government our grandchildren will be proud to call their own.

**Wa-do,**



Joe Byrd
Principal Chief

James "Garland" Eagle
Deputy Principal Chief

# Table of Contents

| ARTICLE | | PAGE |
|---|---|---|
| I. | Federal Regulations | 2 |
| II. | Bill of Rights | 3 |
| II. | Membership | 3 |
| IV. | Distribution of Powers | 4 |
| V. | Legislative | 4 |
| VI. | Executive | 7 |
| VII. | Judicial | 9 |
| VIII. | Cabinet | 9 |
| IX. | Election | 10 |
| X. | Fiscal | 11 |
| XI. | Removal from Office | 13 |
| XII. | Employee Rights | 13 |
| XIII. | Oath | 14 |
| XIV. | Clans | 14 |
| XV. | Initiative, Referendum and Amendment | 15 |
| XVI. | Supersedes Old Constitution 1839 | 17 |
| XVII. | Seat of Government | 17 |
| XVIII. | Adoption | 17 |
| | Index | 18 |

1



PAGE 57 (63 111)

CIV-22-237-JFH-KEW

*Constitution*
*of the*
*Cherokee Nation*
*of Oklahoma*

## PREAMBLE

We, the people of the Cherokee Nation, in order to preserve and enrich our tribal culture, achieve and maintain a desirable measure of prosperity, insure tranquility and to secure to ourselves and our posterity the blessings of freedom, acknowledging, with humility and gratitude, the goodness of the Sovereign Ruler of the Universe in permitting us so to do, and imploring his aid and guidance in its accomplishment--do ordain and establish this Constitution for the government of the Cherokee Nation. The term "Nation" as used in this Constitution is the same as "Tribe."

#### History

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

## Article I. Federal Regulations

The Cherokee Nation is an inseparable part of the Federal Union. The Constitution of the United States is the Supreme law of the land; therefore, the Cherokee Nation shall never enact any law which is in conflict with any Federal law.

#### History

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

#### Cross References

Seat of government, Article XVII of the Cherokee Constitution.

#### Annotations

Rorex v. Cherokee Nation JAT 93-5 (1995)

## Article II. Bill of Rights

**Section 1.** The judicial process of the Cherokee Nation shall be open to every member of the Cherokee Nation. Speedy and certain remedy shall be afforded under the terms of this Constitution for every wrong and injury to person, property or reputation wherein said remedy does not conflict with the laws of the United States. The Council shall prescribe the procedures pertinent thereto. The appropriate protections guaranteed by the Indian Civil Rights Act of 1968 shall apply to all members of the Cherokee Nation.

#### History

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

#### Cross References

Bill of rights generally, Amendments 1-10 of the United States Constitution.
Employment rights, Article XII of the Cherokee Constitution.
Indian Civil Rights Act of 1968, 25 U.S.C., Section 1301 et seq.

#### Annotations

Rorex v. Cherokee Nation JAT 93-5 (1995)

## Article III. Membership

**Section 1.** All members of the Cherokee Nation must be citizens as proven by reference to the Dawes Commission Rolls, including the Delaware Cherokees of Article I of the Delaware Agreement dated the 8th day of May, 1867, and the Shawnee Cherokee as of Article III of the Shawnee Agreement dated the 9th day of June, 1869, and/or their descendants.

**Section 2.** There shall be established a Cherokee Register, to be kept by the Registrar, for the inclusion of any Cherokee for membership purposes in the Cherokee Nation who presents the necessary evidence of eligibility for registration.

(a) A Registration Committee shall be established. It shall be the duty of the Registration Committee to consider the qualifications and to determine the eligibility of those applying to have their names entered in the Cherokee Register. The Registration Committee shall consist of a Registrar and two (2) assistants. All members shall be appointed by the Principal Chief, and confirmed by the Council.

(b) There shall be a number assigned to every name which is approved and entered into the Cherokee Register. This number shall be preceded by the three words, "Cherokee Registry Number."

PAGE 58 (of 111)



CIV-22-237-JFH-KEW

(c) The decisions of the Registration Committee shall be subject to review by the Tribunal created by Article VII.

**Section 3.** Registration as used in this article refers to the process of enrolling as a member of the Cherokee Nation and is not the same as the registration for voting purposes.

### History

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

### Cross References

Courts and procedure generally, Title 20, Cherokee Nation Code Annotated.
Election generally, Title 26, Cherokee Nation Code Annotated.
Right to belong to recognized clans or organizations, Article XIV of the Cherokee Constitution.
Treaties and agreements, Appendix I, 1986 Cherokee Nation Code Annotated.

## Article IV. Distribution of Powers   *Council cannot give Chief powers the Const. does not*

The powers of the government of the Cherokee Nation shall be divided into three (3) separate departments: Legislative, Executive and Judicial; and except as provided in this Constitution, the Legislative, Executive and Judicial departments of government shall be separate and distinct and neither shall exercise the powers properly belonging to either of the others.

### History

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

### Cross References

Executive branch generally, Article VI of the Cherokee Constitution.
Judicial branch generally, Article VII of the Cherokee Constitution.
Legislative branch generally, Article V of the Cherokee Constitution.

## Article V. Legislative

**Section 1.** The legislature shall consist of one legislative body to be called the Council of the Cherokee Nation. The initial election of members to the Council pursuant to this Constitution shall occur within 120 days from the date of its ratification on a day to be announced by the Principal Chief.

**Section 2.** The Council shall establish its rules for its credentials, decorum and procedure.

**Section 3.** The Council shall consist of fifteen (15) members, who are members by blood of the Cherokee Nation of Oklahoma. Each Council member shall be elected in the general election for a term of four (4) years and until his successor is duly elected and installed.

The Council shall establish representative districts which shall be within the historical boundaries of the Cherokee Nation of Oklahoma. These districts shall be apportioned to afford a reasonably equal division of tribal membership among the districts.

**Section 4.** There shall be at least one regular session of the Council in the calendar year which shall convene on the second Monday in each January or at such other date as the Council shall determine. No business shall be conducted by the Council unless a least two-thirds (2/3) of members thereof regularly elected and qualified shall be in attendance, which number shall constitute a quorum. The session may not exceed a maximum of thirty (30) calendar days for pay purposes.

**Section 5.** Special meetings of the Council may be called: (A) by the Principal Chief, (B) by the Deputy Principal Chief when he has the full powers of the Principal Chief as elsewhere defined, (C) upon written request of fifty-one percent (51%) of the members of the Council, or (D) upon the written request of ten percent (10%) of the registered voters of the Cherokee Nation. The purposes of said meeting shall be stated in notice published not less than ten (10) days prior to the meeting, and the Council may not consider any other subject not within such purposes. No special meetings may convene until (30) days have elapsed after the adjournment of a prior session or meeting, unless called pursuant to (A) and (B) above.

**Section 6.** All meetings of the Council and of its committees shall be open to the public except: (A) When the discussion shall concern employment, retention or discharge of personnel; (B) When the question of the moral turpitude of any member of the Tribe discussed; or (C) When the decorum of the audience shall prejudice orderly administration of business. In the event that consideration of a subject shall take place in Executive Session, the vote shall take place in an open meeting.

**Section 7.** The Council shall have the power to establish laws which it shall deem necessary and proper for the good of the Nation, which shall not be contrary to the provisions of this Constitution. Laws or enactments which are required by Federal statutes to be approved shall be transmitted immediately upon enactment as provided by Section 11 of this Article to the President of the United States or his authorized representative.

The style of all bills or laws shall be: "Be It Enacted By The Cherokee Nation." The style of all resolutions shall be "Be It Resolved By The Cherokee Nation."

**Section 8.** No laws passed by the Council shall have retroactive effect or operation.

**Section 9.** The Council shall have the power of removal and said removal must

4

5

be conducted in accordance with Article XI of this Constitution. Nothing herein is intended to abrogate or limit the authority of the President of the United States, or any person or agency to which the President or Congress of the United States shall delegate authority therefore, to remove the Principal Chief or his subordinates.

**Section 10.** Members of the Council and all Executive Officers shall be bound by oath, provided in Article XIII, to support the Constitution of the Cherokee Nation, the Constitution of the United States of America, do everything within the individual's power to promote the culture, heritage and traditions of the Cherokee Nation and to perform the duties of their respective offices with fidelity.

**Section 11.** Every enactment which shall have been approved by a majority of the members in attendance at the Council shall, before it becomes effective be presented to the Principal Chief, if he approves, he shall sign it; if not, he shall return it with his objections to the Council, which shall enter the objections in the Journal and proceed to reconsider it. If, after such reconsideration, two-thirds (2/3) of the entire council shall agree to pass the enactment, it shall become fully effective and operational notwithstanding the objections of veto of the Principal Chief. In all such cases, the vote of the Council shall be determined by yeas and nays, and the names of the members voting shall be entered on the Council's Journal. If any enactment shall not be returned by the Principal Chief within five (5) days (Sundays and holidays excepted) after it shall have been presented to him, the same shall be law in like manner as if he had signed it, unless the Council shall, by its adjournment, prevent its return, in which case, it shall become a law without the approval of the Principal Chief. No enactment shall become a law after the final adjournment of the Council, unless approved by the Principal Chief within fifteen (15) days after such adjournment.

### History

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976; Section 3 amended to include district provisions by Referendum on June 20, 1987, pursuant to Cherokee Nation Council Resolution No. 9-87.

### Cross References

Bonds, Article X, Section 11 of the Cherokee Constitution
Council members, compensation, Article X, Section 10 of the Cherokee Constitution
Council members, election, Article IX of the Cherokee Constitution and Title 26, Cherokee Nation Code Annotated
Council members, qualifications, Article IX, Section 2 of the Cherokee Constitution
Council members, removal, Article XI, Section 2 of the Cherokee Constitution
Council powers, approval of cabinet, Article VIII of the Cherokee Constitution
Distribution of powers, Article IV of the Cherokee Constitution
Fiscal matters, regulation by Council, Article X of the Cherokee Constitution
Initiative and referendum, Article XV, Section 1 of the Cherokee Constitution
Meetings, convening of, Article VI, Section 8 of Cherokee Constitution

### Annotations

Leach v. Cherokee Nation JAT 94-1 (1994)

6



Prichett v. Cherokee Nation & Election Comm JAT 95-6 (1995)

## Article VI. Executive

**Section 1.** The executive power shall be vested in a Principal Chief, who shall be styled "The Principal Chief of the Cherokee Nation." The Principal Chief shall hold his office for the term of four (4) years; and shall be elected by the qualified voters on the same day and in the same manner, except as otherwise provided by this Constitution, as they shall respectively vote for members of the Council for that particular year, provided, the Principal Chief in office when this Constitution is ratified shall continue in office until his successor is duly elected in the 1979 election and installed.

The returns of the election for the Principal Chief shall be sealed and directed by the lawfully appointed election officials to the Secretary-Treasurer, who shall, immediately after the organization of the Council, and before proceeding to other business, open and publish the same in the presence of a majority of the Council. The person having the highest number of votes, shall be the Principal Chief; but if two (2) or more shall be equal and highest in votes, one of them shall be chosen by a vote of the Council. The manner of determining contested elections shall be as directed by Cherokee law.

**Section 2.** The Principal Chief of the Cherokee Nation shall be a citizen of the Cherokee Nation of Oklahoma in accordance with Article III; shall have been born within boundaries of the United States of America, its territories or possessions; shall have established a bona fide, permanent residence within the historic boundaries of the Cherokee Nation for no less than 270 days immediately preceding the day of the general election in which he or she was elected; and shall have obtained the age of thirty (30) years of age at the time of his or her election and be a member by blood of the Cherokee Nation.

**Section 3.** The qualified electors shall elect a Deputy Principal Chief, who shall possess the same qualifications as the Principal Chief, for a term of four (4) years at the same time and in the same manner as herein provided for the election of the Principal Chief, provided, that the initial election of the Deputy Principal Chief shall take place in conjunction with the first Council election pursuant to this Constitution and in accordance with Section 1 of this Article.

**Section 4.** In case of the absence of the Principal Chief from office due to his death, resignation, removal or inability to discharge the powers and duties of the said office, the same shall devolve upon the Deputy Principal Chief for the remaining portion of the four (4) year term to which the Principal Chief has been elected. In case of disability, such powers shall continue during the term of such disability. Vacancies in the office of the Deputy Principal Chief shall be filled by the Council.

**Section 5.** The Council may, in the case of removal, death, resignation or disability of both the Principal Chief and the Deputy Principal Chief, provide by law what officer shall then act as Principal Chief until the disability be removed or a successor shall be elected.

7

**Section 6.** The Principal Chief and Deputy Principal Chief shall, at stated times, receive for their service a compensation not inconsistent with Article X.

**Section 7.** Before the Principal Chief assumes his office, he shall take the oath or affirmation as provided for in Article XIII.

**Section 8.** The Principal Chief may on extraordinary occasions convene the Council at the seat of government pursuant to Article V, Section 5, and such notice and other laws as may be prescribed by the Council. The purpose of said meetings must be stated and the Council may consider only such matters as are specified in the call of the extraordinary meetings. Before the extraordinary meetings may be legally sufficient to conduct business, a quorum of the Council must be present.

**Section 9.** At every session of the Council, and immediately upon its organization, the Principal Chief shall communicate by message, delivered to the Council upon the condition of the Cherokee Nation; and shall recommend such matters to the Council as he shall judge expedient.

**Section 10.** The Principal Chief shall cause the laws of the Cherokee Nation to be faithfully executed, and shall conduct in person and in such manner as shall be prescribed by law, all communications and business of the Cherokee Nation. The Principal Chief may cause to be formed and operated, trusts, the beneficiary of which shall be the Cherokee Nation and these trusts shall be granted such powers as provided by law for public trusts. Authorization for these trusts, however, must be approved by a majority vote of the Council.

**Section 11.** The Deputy Principal Chief shall, by virtue of his office, aid and advise the Principal Chief in the administration of the government and shall be President of the Council but shall vote only for the purpose of breaking a tie vote.

**Section 12.** Nothing in this Constitution shall be construed as preventing the Principal Chief from appointing such administrative assistants as he deems proper.

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

**Cross References**

Council generally, Title 19, Cherokee Nation Code Annotated.
Council meetings generally, Article V, Sections 4 through 6 of the Cherokee Constitution.
Distribution of powers, Article IV of the Cherokee Constitution.
Elections generally, Title 26, Cherokee Nation Code Annotated.
Fiscal matters generally, Article X of the Cherokee Constitution.
Office of Principal Chief and Deputy Principal Chief generally, Title 51, Cherokee Nation Code Annotated
Principal Chief, generally, Article VII, Section 1 of the Cherokee Constitution

Principal Chief, qualifications, Article IX, Section 2 of the Cherokee Constitution
Principal Chief, term, Article VI, Section 1 of the Cherokee Constitution
Removal, Article V, Section 9, and Article XI, Section 1, of the Cherokee Constitution
Surety bonds, Article X, Section 11 of the Cherokee Constitution

**Annotations**

Leach v. Election Comm JAT 94-1 (1994)
Waits v. Cherokee Nation JAT 95-2 (1995)

## Article VII. Judicial

There is hereby created a Judicial Appeals Tribunal composed of three (3) members all of whom must be admitted to practice law before the highest Court of the State of which they are residents, and all of whom shall be members of the Cherokee Nation, appointed by the Principal Chief and approved by the Council for such terms as the Council may provide. The purpose of this Tribunal shall be to hear and resolve any disagreements arising under any provisions of this Constitution or any enactment of the Council. The Council shall provide for a procedure which shall insure that any litigant receives due process of law together with prompt and speedy relief, and shall generally follow that portion of the Oklahoma Statutes known as the Administrative Procedures Act, Title 75 Oklahoma Statutes, 301 et seq. The decision of the Judicial Appeals Tribunal shall be final insofar as the judicial process of the Cherokee Nation is concerned.

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

**Cross References**

Bill of Rights, Article II of the Cherokee Constitution.
Courts and procedure generally, Title 20, Cherokee Nation Code Annotated.
Distribution of powers, Article IV of the Cherokee Constitution.
Enforcement of employment rights, Article XII of the Cherokee Constitution.
Oath, Article XIII of the Cherokee Constitution.
Removal, Article V and Article XI, Section 9 of the Cherokee Constitution.

**Annotations**

Squirrel v. Cherokee Nation JAT 79-1 (1980)
Waits v. Cherokee Nation JAT 95-2 (1995)

## Article VIII. Cabinet

There shall be a cabinet composed of the following persons who shall be members of the Cherokee Nation:



PAGE 61 (of 111)

CIV-22-237-JFH-KEW

Secretary-Treasurer
Secretary of Health, Education and Welfare
Secretary of Commerce and Industrial Development
General Counsel
Secretary of Communications

These persons shall be appointed by the Principal Chief and approved by the Council. The Council, on recommendation of the Chief only, may create additional cabinet positions and departments. The Chief shall prescribe the duties and responsibilities of cabinet members. Cabinet members shall be authorized to appoint such staff and other assistants as they deem necessary. The Council may, with recommendation of the Principal Chief, abolish any established cabinet position or function or revise the title or responsibilities of any foregoing department or function.

### History

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

### Cross References

Council generally, Article V of the Cherokee Constitution.
Executive branch generally, Article VI of the Cherokee Constitution.
Oath, Article XIII of the Cherokee Constitution.
Removal, Article V and Article XI, Section 9 of the Cherokee Constitution.

## Article IX. Election

Section 1. The Council shall enact an appropriate law not inconsistent with the provisions of this Constitution that will govern the conduct of all elections, provided that the initial election of the Council and Deputy Principal Chief shall be conducted pursuant to rules and regulations promulgated by the Principal Chief and the provision set forth in Articles V and VI of this Constitution, notwithstanding, the Principal Chief or Council may adopt rules requiring a majority vote for any elective office.

Section 2. Any member by blood of the Cherokee Nation at least twenty-five years of age on the date of the election may be a candidate for the Council. No person who shall have been convicted of or has pled guilty or has pled no defense to a felony charge under the laws of the United States of America, or of any State, Territory, or Possession thereof, shall be eligible to hold any office or appointment of honor, profit or trust within this Nation unless such person has received a pardon. Any person who holds any office of honor, profit or trust in any other tribe of Indians, either elective or appointive, shall be ineligible to hold simultaneously any office of honor, profit or trust of the Cherokee Nation unless approved by the Council.

Section 3. All elections shall be determined by secret balloting.

10

### History

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

### Cross References

Conduct of elections generally, Title 26, Cherokee Nation Code Annotated.
Compensation of public officers, Article X, Section 11 of the Cherokee Constitution.
Qualifications of candidates generally, Title 26, Cherokee Nation Code Annotated.

### Annotation

Mayes, Muskrat v. Cherokee Nation, Bearpaw, & Election Comm JAT 95-7&8 (1995).

## Article X. Fiscal

Section 1. The fiscal year shall commence on the first day of July in each year unless otherwise provided by law.

Section 2. The Council shall provide by law for an annual expenditure of funds and the source from which funds are to be derived, to defray the estimated expenses of the Executive, Council, Cabinet and Departments of Government of the Cherokee Nation for each fiscal year. The budget shall not exceed estimated revenues.

Section 3. At least thirty (30) days prior to the convening of each regular session of the Council, the Secretary-Treasurer shall make and present to the Council an itemized estimate of the revenue to be received by the Cherokee Nation, together with a statement of the sources from which revenues are to be received, under the laws, grants, judgement interests, and any other sources in effect at the time such estimate is made for the next ensuing fiscal year. The Secretary-Treasurer shall prepare annual financial statements reflecting the results of operations of all tribal activities and shall prepare a consolidated balance sheet in conformity with generally accepted accounting principles within sixty (60) days after the end of the fiscal year.

Section 4. The Council shall require that records be maintained of all funds, monies, accounts and indebtedness and all other accounts bearing upon the fiscal interests of the Cherokee Nation by the use of a uniform system of accounting which records and financial statements shall be audited by a Certified Public Accountant or as otherwise may be prescribed by the Council prior to the submission of said accounts to the Council.

Section 5. The Secretary-Treasurer shall be authorized to accept all grants, donations of money, interest of funds of the Cherokee Nation, judgements and any and all other sources of monies available to the Cherokee Nation, for uses and purposes and upon conditions and limitations for which the same are granted or donated; and the faith of the Cherokee Nation is hereby pledged to preserve such grants and donations as a sacred trust and to keep the same for the use and purposes for which they were granted or donated

11



**Section 6.** The Council shall have the authority to invest funds or money of the Cherokee Nation and the preference to be given to the security for such investments, the manner of selecting the securities, prescribing the rules, regulations, restrictions and conditions upon which the funds shall be loaned or invested, provided that no investment shall be in mortgages other than first mortgages only, and do all things necessary for the safety of the funds and permanence of the investments. If required by law, such investments would be subject to the approval of the Secretary of the Interior.

**Section 7.** The credit of the Cherokee Nation shall not be given, pledged, or loaned to any individual, firm, company, corporation, or association without the approval of the Council. The Cherokee Nation shall not make any donations by gift, or otherwise, to any individual, firm, company, corporation, or association with out the approval of the Council.

**Section 8.** All laws authorizing the expenditures of money by and on behalf of the Cherokee Nation shall specify the purpose for which the money is to be used, and the money so designated shall be used for no other purpose. Annual expenditures shall not exceed the available funds.

**Section 9.** General laws shall be enacted by the Council providing for the deposit of funds of the Cherokee Nation, and the depository thereof, and such funds shall be under the control of the Secretary-Treasurer, under such terms and conditions as shall be designated by said Council and under such laws which shall provide for the protection of said funds.

**Section 10.** No official, member or officer of the Council, Cabinet Member, employee of any official, Council, Cabinet, or subdivisions thereof, or any person employed in any capacity by the Cherokee Nation shall receive from any individual, partnership, corporation, or entity doing business with the Cherokee Nation directly or indirectly, any interest, profit, benefits or gratuity, other than wages, salary, per diem, or expenses, specifically provided by law.

**Section 11.** All officers, elected or appointed, who are authorized by this Constitution or any subsequent legislation to a position of trust over any land, property, accounts or monies, shall execute an official surety bond in the amount as may be required by the Council, and such surety bonds shall inure to the benefit of and be paid for by the Cherokee Nation for whose protection or surety the same shall be required and in no event shall said surety bond be other than by a Licensed Insurance Company, authorized to do business in the State of Oklahoma.



---

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

**Cross References**

Compensation of Principal Chief and Deputy Principal Chief generally, Article VI, Section 6 of the Cherokee Constitution
Fiscal year defined, Section 62-1-10 of the Cherokee Nation Code Annotated.
Public finance generally, Title 62, Cherokee Nation Code Annotated.

## Article XI. Removal From Office

**Section 1.** The Principal Chief and the Deputy Principal Chief shall be subject to removal from office for willful neglect of duty, corruption in office, habitual drunkenness, incompetency or any conviction involving moral turpitude committed while in office.

**Section 2.** All other elective officers shall be subject to removal from office in such manner and for such causes as may be provided by laws passed by the Council.

**Section 3.** The Council shall pass such laws as are necessary for carrying into effect the provisions of this Article, insuring therein that due process is afforded the accused.

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

**Cross References**

Effect of removal of Principal and Deputy Principal Chief, Article VI, Sections 4 and 5 of the Cherokee Constitution.
Powers of Council as to removal of public officers generally, Article V, Section 9 of the Cherokee Constitution.
Removal of tribal employees, Article XII of the Cherokee Constitution

## Article XII. Employee Rights

No employee, who having served in a position at least one (1) year, shall be removed from the employment of the Cherokee Nation except for cause. The employee shall be afforded a hearing by the Judicial Appeals Tribunal under such rules and procedures as may be prescribed by the Council. These rules and procedures, however, must follow, as nearly as practicable, the provisions of the Oklahoma Administrative Procedures Act, Title 75, Oklahoma Statutes 301 et seq.

---

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

PAGE 64 (of 111)

**Cross References**

Labor and industrial relations generally, Title 40, Cherokee Nation Code Annotated.
Removal of public officers, Article XI of the Cherokee Constitution.

**Annotations**

Gourd v. Cherokee Nation JAT 78-1 (1978)
Squirrel v. Cherokee Nation JAT 79-1 (1980)
Sunday  v. Cherokee Nation JAT 81-1 (1981)
In Matter of Cochran JAT 83-E2 (1983)
Gossett v. Cherokee Nation JAT 87-7 (1987)
Mayes v. Cherokee Nation JAT 93-1 (1993)
Nix v. Cherokee Nation JAT 93-3 (1993)
Leach v. Election Comm JAT 94-1 (1994)
Mauldin v. Cherokee Nation JAT 95-1 (1995)
Waits v. Cherokee Nation JAT 95-2 (1995)
Prichett v. Cherokee Nation & Election Comm JAT 95-1 (1995)

## Article XIII. Oath

**Section 1.** All officers elected or appointed shall, before entering upon the duties of their  respective offices, take and subscribe to the following oath or affirmation: "I do solemnly swear, or affirm, that I will faithfully execute the duties of _____ of the Cherokee Nation, and will, to the best of my ability, preserve, protect and defend the Constitutions of the Cherokee Nation, and the United States of America. I swear or affirm further, that I will do everything within my power to promote the culture, heritage and traditions of the Cherokee Nation."

**Section 2.** The foregoing oath shall be administered by any person authorized by the Council to administer oaths. The oath shall be filed in the Office of the Secretary-Treasurer.

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

**Cross References**

Taking of oath by members of Council and executive officers generally, Article V, Section 10 of the Cherokee Constitution.
Taking of oath by Principal Chiefs, Article VI, Section 7 of the Cherokee Constitution.

## Article XIV. Clans

Nothing in this Constitution shall be construed to prohibit the right of any Cherokee to belong to a recognized clan or organization in the Cherokee Nation.

14

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

**Cross References**

Membership in Tribe generally, Article III of the Cherokee Constitution.

## Article XV. Initiative, Referendum and Amendment

**Section 1.** Notwithstanding the provisions of Article V, the people of the Cherokee Nation reserve to themselves the power to propose laws and amendments to this Constitution and to enact or reject the same at the polls independent of the Council, and also reserve power at their own option to approve or reject at the polls any act of the Council.

**Section 2.** Any amendment or amendments to this Constitution may be proposed by the Council, and if the same shall be agreed to by a majority of all the members of the Council, such proposed amendment or amendments shall, with the yeas and nays thereon be entered into the Journal and referred by the Secretary-Treasurer to the people for their approval or rejection, at the next regular general election, except when the Council, by a two-thirds (2/3) vote, shall order a special election for that purpose. If a majority of all the registered voters voting at such election shall vote in favor of any amendment thereto, i shall thereby become a part of this Constitution.

**Section 3.** The first power reserved by the people of the Cherokee Nation is the initiative and ten percent of the registered voters shall have the right to propose any legis lative measure by petition and fifteen percent of the registered voters shall have the righ to propose amendments to the constitution by petition, and every such petition shall in clude the full text of the measure so proposed. The second power is the referendum, and i may be ordered (except as to laws necessary for the immediate preservation of the public peace, health or safety), either by petition signed by five percent of the registered voters o by the Council as other enactments are effectuated. The ratio and percent of registered voters hereinbefore stated shall be based upon the total number of votes cast at the las general election for the officer receiving the highest number of votes at such election.

**Section 4.** Referendum petitions shall be filed with the Secretary-Treasurer no more than ninety days after the final adjournment of the session or meeting of the Counci which passed the bill on which the referendum is demanded. The veto power of the Prin cipal Chief shall not extend to measures voted on by the people. All elections on measure referred to the people of the Cherokee Nation shall be had at the next regular genera election except when the Council or the Principal Chief shall order a special election fo the express purpose of making such reference. Any measure referred to the people by th initiative shall take effect and be in force when it shall have been approved by a majorit of the votes cast in such election. Any measure referred to the people by the referendur

shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon and provided that no measure which is required to be approved by the President of the United States or his authorized representative shall be effective until approved.

Section 5. Petitions and orders for the initiative and for the referendum shall be filed with the Secretary-Treasurer and addressed to the Principal Chief of the Cherokee Nation, who shall submit the same to the people. The Council shall make suitable provisions for carrying into effect the provisions of this Article.

Section 6. The referendum may be demanded by the people against one or more items, sections or parts of any enactment of the Council in the same manner in which such power may be exercised against a complete enactment. The filing of a referendum petition against one or more items, sections or parts of an enactment shall not delay the remainder of such act from becoming operative.

Section 7. If two or more amendments are proposed they shall be submitted in such manner that electors may vote for or against them separately.

Section 8. No proposal for the amendment of this Constitution which is submitted to the voters shall embrace more than one general subject and the voters shall vote separately for or against each proposal submitted; provided, however, that in the submission of proposals for the amendment of this Constitution by articles, which embrace a general subject, each proposed article shall be deemed a single proposal or proposition.

Section 9. No convention shall be called by the Council to propose a new Constitution, unless the law providing for such convention shall first be approved by the people on a referendum vote at a regular or special election. Any amendments, alterations, revisions or new Constitution, proposed by such convention, shall be submitted to the electors of the Cherokee Nation at a general or special election and be approved by a majority of the electors voting thereon, before the same shall become effective. The question of such proposed convention shall be submitted to the members of the Cherokee Nation at least once in every twenty (20) years.

Section 10. No amendment or new Constitution shall become effective without the approval of the President of the United States or his authorized representative.

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved by Referendum on June 26, 1976.

**Cross References**

Elections generally, Title 26, Cherokee Nation Code Annotated

16

## Article XVI. Supersedes Old Constitution 1839

The provisions of this Constitution overrule and supersede the provisions of th Cherokee Nation Constitution enacted the 6th day of September 1839.

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved I Referendum on June 26, 1976.

## Article XVII. Seat of Government

The Seat of Government of the Cherokee Nation shall be at Tahlequah, Oklahoma.

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, Seconded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved Referendum on June 26, 1976.

## Article XVIII. Adoption

This Constitution shall become effective when approved by the President of t United States or his authorized representative and when ratified by the qualified voters the Cherokee Nation at an election conducted pursuant to rules and regulations promu gated by the Principal Chief. It shall be engrossed on parchment and signed by the Prin pal Chief and the Secretary of the Interior. It shall be filed in the office of the Cherok Nation and sacredly preserved as fundamental law of the Cherokee Nation.

**History**

Approved for Referendum by the Commissioner, Morris Thompson, on September 5, 1975, S onded by the Principal Chief of the Cherokee Nation, Ross O. Swimmer, on October 2, 1975, approved Referendum on June 26, 1976.

17



# INDEX

Adoption, Article XVIII of the Cherokee Constitution

Amendments, Article 15, Section 1 of the Cherokee Constitution and Title 26, Section 1 of the Cherokee Nation Code Annotated

Bill of Rights, Article II of the Cherokee Constitution

Bonds, Article X, Section 11 of the Cherokee Constitution

Cabinet, Article VIII of the Cherokee Constitution

Citizenship, tribal membership, Article III, Section 1 of the Cherokee Constitution

Clans or organizations, membership in, Article XIV of the Cherokee Constitution

Compensation of public officers, Article X, Section 11 of the Cherokee Constitution

Constitutional Amendments
    Approval by President of United States, Article XV, Section 10 of the Cherokee Constitution
    Constitutional conventions, Article XV, Section 9 of the Cherokee Constitution.
    Proposal by Council generally, Article XV, Section 2 of the Cherokee Constitution
    Reservation by people of power to propose and approve or reject amendments, Article XV, Section 1 of the Cherokee Constitution
    Submission to voters, Article XV, Sections 7 and 8 of the Cherokee Constitution.

Council
    Districts, Article V, Section 3 of the Cherokee Constitution
    Generally, Article V, Section 1 of the Cherokee Constitution and Title 19, Cherokee Nation Code Annotated
    Meetings, generally, Article V, Section 4 thru 6 and Article VI, Sections 8 & 9 of the Cherokee Constitution

Council Members
    Compensation; Article X, Section 10 of the Cherokee Constitution
    Election, Article IX of the Cherokee Constitution and Title 26, Cherokee Nation Code Annotated
    Oath, Article V, Section 10 of the Cherokee Constitution
    Qualifications, Article IX, Section 2 of the Cherokee Constitution
    Removal, Article XI, Section 2, of the Cherokee Constitution
    Term of office, Article V, Section 3 of the Cherokee Constitution

Council Powers
    Approval of cabinet, Article VIII of the Cherokee Constitution
    Fiscal matters, Article X of the Cherokee Constitution
    Removal, Article V, Section 9 of the Cherokee Constitution
    Rules of procedure, Article V, Section 2 of the Cherokee Constitution

Courts and procedure generally, see Article VII of the Cherokee Constitution and Title 20, Cherokee Nation Code Annotated

Departments of Government, Article 4 of the Cherokee Constitution

Deputy Principal Chief
    Compensation, Article VI, Section 6 of the Cherokee Constitution
    Duties, Article VI, Section 11 of the Cherokee Constitution
    Generally, Article VI, Section 4 of the Cherokee Constitution and Title 51, Cherokee Nation Code Annotated
    Qualifications, Article VI, Section 3 of the Cherokee Constitution
    Vacancies, Article VI, Section 4 & 5 of the Cherokee Constitution

Distribution of powers, Article IV of the Cherokee Constitution

Elections
    Article IX, Section 1 of the Cherokee Constitution
    Generally, Title 26, Cherokee Nation Code Annotated
    Qualifications of candidates generally, Title 26, Cherokee Nation Code Annotated

Employee rights, Article XII of the Cherokee Constitution

Executive branch generally, see Principal Chief, this index

Fiscal Matters
    Accounting system, Article X, Section 4 of the Cherokee Constitution
    Budget annual, Article X, Section 2 of the Cherokee Constitution
    Compensation of Principal Chief and Deputy Principal Chief generally, Article VI, Section 6 of the Cherokee Constitution
    Deposit of public funds, Article X, Section 9 of the Cherokee Constitution
    Expenditures of public funds, Article X, Section 8 of the Cherokee Constitution
    Financial statements, Article X, Section 3 of the Cherokee Constitution
    Fiscal year defined, Article X, Section 1 of the Cherokee Constitution and Title 62, Section 1 of the Cherokee Nation Code Annotated.
    Generally, Article X of the Cherokee Constitution
    Gratuities, interests, profits, receipt by officials and employees, Article X, Section 10 of the Cherokee Constitution
    Investments generally, Article X, Section 6 of the Cherokee Constitution.
    Pledges, loans, donations, Article X, Section 7 of the Cherokee Constitution
    Public finance generally, Title 62, Cherokee Nation Code Annotated.
    Requirement of surety bonds, Article X, Section 11 of the Cherokee Constitution.
    Revenue estimates, Article X, Section 3 of the Cherokee Constitution
    Surety bonds, Article X, Section 11 of the Cherokee Constitution
    Treasurer, acceptance of grants, donations, etc., Article X, Section 5 of the Cherokee Constitution
    Use of grants and donations, Article X, Section 5 of the Cherokee Constitution.

Initiative and referendum, Article XV, Section 1 of the Cherokee Constitution

Initiatives generally, Article XV, Section 3 & 5 of the Cherokee Constitution

Judicial Appeals Tribunal
    Article VII of the Cherokee Constitution
    Jurisdiction Title 20, Section 51 of the Cherokee Nation Code Annotated

Judicial branch generally, Article VII of the Cherokee Constitution

Laws
    Approval of, Article V, Section 11 of the Cherokee Constitution
    Enactment of, Article V, Section 7 & 8 of the Cherokee Constitution

Legislative branch generally, Article V of the Cherokee Constitution

Membership
    Generally, Article III of the Cherokee Constitution
    Right to belong to recognized clans or organizations, Article XVI of the Cherokee Constitution

Oath and Affirmations, Article XIII of the Cherokee Constitution

Oath, Article XIII of the Cherokee Constitution

Oath by members of Council and executive officers generally, Article V, Section 10 of the Cherokee Constitution

Principal Chief, Article IV, Section 1 of the Cherokee Constitution

Principal Chief
    Administrative Assistants to Chief, Article VI, Section 12 of the Cherokee Constitution
    Compensation, see Article VI, Section 6 of the Cherokee Constitution
    Duties, Article VI, Section 10 of the Cherokee Constitution
    Generally, Article VII, Section 1 of the Cherokee Constitution and Title 51, Cherokee Nation C

Annotated
Oath, Article VI, Section 7 of the Cherokee Constitution
Qualifications, Article VI, Section 2 and Article IX, Section 2 of the Cherokee Constitution
Term, Article VI, Section 1 of the Cherokee Constitution
Vacancies, Article VI, Sections 4 & 5 of the Cherokee Constitution
Referenda, procedures Article XV, Section 4 thru 6 of the Cherokee Constitution
Register of members, Article III, Section 2 of the Cherokee Constitution
Registry number, members, Article III, Section 2 of the Cherokee constitution
Removal from office, Article XI, Section 1of the Cherokee Constitution
Removal, Article V, Section IX, and Article XI, Section 1, of the Cherokee Constitution
Seat of Government, Article XVII of the Cherokee Constitution
Tribal council, Article V, Section 1of lthe Cherokee Constitution
Tribal officers and employees, Article VI, Section 1 and Article 8 of the Cherokee Constitution
Oaths and affirmations,  Article XIII of the Cherokee Constitution
Removal from office, Article XI, Section 1 of the Cherokee Constitution
Rights of employees, Article XII of the Cherokee Constitution



PAGE 67

(68 111)

CIV-22-237-JFH-KEW



Layout and Design
by
Cherokee Nation
Public Affairs Department

PAGE 68 (OF 111)

CIV-22-237-JFH-KEW

# CONSTITUTION AND BY-LAWS

### OF THE

## UNITED KEETOOWAH BAND OF

## CHEROKEE INDIANS

## OKLAHOMA

✛

### RATIFIED OCTOBER 3, 1950





DEFENDANT'S EXHIBIT



*Subordinate — placed in or belonging to a lower order or rank, of less importance. Subject to or under the authority of a superior.*

UNITED STATES
**DEPARTMENT OF THE INTERIOR**
BUREAU OF INDIAN AFFAIRS

# CONSTITUTION AND BY-LAWS

### OF THE

## UNITED KEETOOWAH BAND OF

## CHEROKEE INDIANS

## OKLAHOMA

+

RATIFIED OCTOBER 3, 1950



UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1951

PAGE 69 (of 111)



CIV-22-237-JFH-KEW

# CONSTITUTION AND BY-LAWS OF UNITED KEETOOWAH BAND OF CHEROKEE INDIANS IN OKLAHOMA

### PREAMBLE

We the members of the United Keetoowah Band of Cherokee Indians in Oklahoma, in order to promote our common welfare and to secure to ourselves and our posterity the rights, powers and privileges authorized and offered by the Oklahoma Indian Welfare Act of June 26, 1936 (49 Stat. 1967) and the Act of August 10, 1946 (60 Stat. 976), do hereby ordain and establish the following constitution and by laws.

## Article I—Name

The name of this organization shall be the United Keetoowah Band of Cherokee Indians in Oklahoma.

## Article II—Headquarters

The headquarters of this Band shall be Tahlequah, Oklahoma, county seat of Cherokee County, unless and until otherwise provided by the governing body.

## Article III—Objectives

The objective of this Band shall be:

**Section 1.** To secure for its members the benefits, rights, privileges and powers as provided for under the Act of Congress approved June 26, 1936 (49 Stat. 1967), known as the Oklahoma Indian Welfare Act and the Act of Congress approved June 18, 1934 (48 Stat. 984), known as the Indian Reorganization Act, so far as the same has been made applicable to Oklahoma Indians.

**Sec. 2.** To secure the benefits, rights, privileges and powers as provided for by any laws of the United States now existing or that may hereafter be enacted for the benefit of Indians or other citizens of the United States and administered by various government agencies, such as relief, conservation, rehabilitation, resettlement, welfare, education, health and other programs.

**Sec. 3.** To promote the general welfare of the Band and its members.

956692—51

2

## Article IV—Membership of Band

**Section 1.** The membership of the United Keetoowah Band of Cherokee Indians in Oklahoma shall consist of:

All persons whose names appear on the list of members identified by a resolution dated April 19, 1949, and certified by the Superintendent of the Five Civilized Tribes Agency on November 16, 1949; Provided, that within five (5) years after the approval of this Constitution and Bylaws, such roll may be corrected by the Council of the United Keetoowah Band of Cherokees, subject to the approval of the Secretary of the Interior.

**Sec. 2.** The governing body of the Band shall have power to prescribe rules and regulations governing future membership.



### Article V—Governing Body

**Section 1.** The supreme governing body of the Band shall be the Council of the United Keetoowah Band of Cherokee Indians in Oklahoma.

**Sec. 2.** The Council shall consist of nine (9) members, male or female, twenty-one (21) years of age or over, elected to represent the nine (9) districts of the Old Cherokee Nation, and four (4) officers, elected at large, as provided in Article VI.

**Sec. 3.** The term of office of members of the Council, other than the officers of the Band, shall be for a period of two years, or until their successors are duly elected and qualified.

**Sec. 4.** No councilman shall be eligible to hold any other elective office in the Band during his tenure as a member of the Council.

**Sec. 5.** The Council shall have power to appoint subordinate personnel, committees and representatives, to transact business, and otherwise speak or act on behalf of the Band in all matters on which the Band is empowered to act now or may be empowered to act upon in the future. The Council shall also have the power to delegate such powers to individuals, or subordinate groups consistent with law, and under such rules and regulations as may be prescribed by the Council.

### Article VI—Officers
#6

The officers of the Band shall be a chief, assistant chief, a secretary and a treasurer. The officers shall serve for a period of four (4) years, or until their successors are duly elected and qualified. The officers shall be elected at large by the eligible voters of the Band and the Council shall provide by resolution for a method of selecting candidates for the aforesaid offices.

3

## Article VII—Elections

**Section 1.** The first regular election of officers and members of the Council shall be held on the first Monday in the month following the approval of this Constitution, and regular elections shall be held thereafter on the first Monday of the same month, under rules and regulations to be prescribed by the Council.

**Sec. 2.** All members of the Band, twenty-one (21) years of age and over, shall be eligible to vote in any election, provided that in elections for representation on the Council only qualified electors, residing in, or affiliated with, the district to be represented shall be eligible to vote for the member to represent such district.

**Sec. 3.** Any member of the Band, 21 years of age or over, living outside of the territory known as the Old Cherokee Nation, in Oklahoma, shall have the right to vote in any district with which he may choose to affiliate by notifying the Council in writing of his choice, but no voter shall be permitted to vote in more than one district.

**Sec. 4.** The Council shall have the power to call and conduct special elections whenever necessary.

### Article VIII—Vacancies

In the case of death, removal from office, or other disability amounting to incapacity, vacancies in any elective office may be filled by the Council for the unexpired term at any special or regular meeting.

### Article IX—Impeachment
# 9

The Council shall prescribe rules and regulations for the investigation of complaints of misconduct in office and for removal of any member of the Council or of any officer, provided that the accused shall be given a hearing and that a two-thirds vote of the Council shall be necessary to remove any person from office.

### Article X—Provisional Organization

The present constitutional committee, consisting of Daniel Hummingbird, Chairman, Ben Birdchopper, Jim Pickup, J.B. Sixkiller, Jack Wolfe and John Ketcher, shall have the power to appoint officers and members of a council, known as the Provisional Council, who shall serve until the first election provided for in Article VII, or until their successors are duly elected and qualified. This Provisional Council shall have power to prescribe regulations for the conduct of the first election provided for in Article VII.

4

## Article XI—Bill of Rights

**Section 1.** All members of the Band shall enjoy without hindrance freedom of worship, conscience, speech, press, assembly and association.

**Sec. 2.** This Constitution shall not in any way be construed to impair, abridge or otherwise jeopardize the rights and privileges of the members of this Band as citizens of the State of Oklahoma or of the United States.

**Sec. 3.** The individual vested property rights of any member of the Band shall not be impaired, abridged or otherwise affected by the provisions of this Constitution and By-laws without the consent of such individual member.

## Article XII—Amendments

Amendments to this Constitution and attached By-laws may be proposed by a majority vote of the Council or by a petition of thirty (30) percent of the eligible voters of the Band filed with the Secretary of the Interior. Such amendments, if approved by the Secretary, shall be submitted by him to a referendum vote of the eligible voters of the Band, and shall be effective if approved by a majority vote in an election in which at least thirty (30) percent of the eligible voters cast their ballots.

## BY-LAWS OF THE KEETOOWAH BAND OF CHEROKEE INDIANS IN OKLAHOMA

## Article I—Duties of Officers

**Section 1.** *Chief.*—The chief shall preside at all meetings of the Council and of the membership. He shall have general supervision of the affairs of the Council and shall perform all duties appertaining to the office of chairman. He shall have a right to vote at Council meetings only in the case of a tie.

**Sec. 2.** *Assistant Chief.*—In the absence of the chief, the assistant chief shall perform the duties of that office. In case of vacancy, the assistant chief shall succeed at once to the office of the chief until such office may be regularly filled.

**Sec. 3.** *Secretary.*—The secretary shall perform his duties in pursuance to instructions of the Council. He shall keep an accurate account of all proceedings and official records of the Council and membership meetings. He shall be responsible for the prompt and efficient handling of all correspondence pertaining to the business of the Council. All official records of the secretary shall be open to inspection by the members of the Council, in the presence of the



5

secretary. He shall keep a correct list of all members of the Council and of the Band membership, shall authenticate all accounts or orders of the Council and, in the absence of the chief and assistant chief shall call meetings to order until a chairman pro tem is elected. He shall render a written report at the annual council meeting and, at the expiration of his term of office, the records and all papers in his possession shall be delivered to his successor.

**Sec. 4.** *Treasurer.*—The treasurer shall be the custodian of all funds in possession of the Council from any source. He shall keep an accurate record of all such funds and shall disburse the same in accordance with the vote of the Council. He shall render a written report at the annual Council meeting and at such times that he is requested to do so by the Council. He shall keep all Band moneys entrusted to his care in a special account. At any time that such account shall amount to more than Fifty dollars ($50.00), he shall file a bond satisfactory to the Council. The premium for such bond shall be paid for by the Band. At the expiration of his term of office, the records and all papers and funds in his possession shall be duly accounted for and delivered to his successor.

## Article II—Qualifications of Officers and Council Members

**Section 1.** Any person elected or appointed to the offices of chief and assistant chief shall be not less than thirty-five years of age, a resident of the Old Cherokee Nation and a member of the United Keetoowah Band of Cherokee Indians in Oklahoma.

**Sec. 2.** Any person elected or appointed to the offices of secretary and treasurer shall be not less than twenty-one years of age, a resident of the Old Cherokee Nation and a member of the United Keetoowah Band of Cherokee Indians in Oklahoma.

**Sec. 3.** Any person elected or appointed to membership on the Council shall be not less than twenty-one years of age, a resident of the district he represents and a member of the United Keetoowah Band of Cherokee Indians in Oklahoma.

**Sec. 4.** Any person holding an elective office who removes from the territory or territories prescribed in this article shall automatically forfeit the office.

## Article III—Meetings

**Section 1.** Regular meetings of the Council shall be held on the first Monday in September of each year unless otherwise provided by resolution of the Council.

**Sec. 2.** Special meetings of the Council may be called by the chief at his discretion and shall be called by him upon the written request of seven (7) members of the Council.

6

Sec. 3. All meetings of the Council shall be held at the headquarters of the organization, or at any other place within the Old Cherokee Nation as may be designated from time to time by the Council.

Sec. 4. Band membership meetings may be called by the chief at his discretion, and shall be called by him upon the written request of seven (7) members of the Council, for the purpose of receiving reports and transacting any other business that may be referred to it by the Council, provided that at least ten (10) days' notice as to the time and place of the meeting and the purpose for which it is called is given to the membership of the Band.

Sec. 5. All meetings of the Council and of the Band shall be conducted under rules of procedure prescribed by the Council.

### Article IV—Quorum

Seven (7) members of the Council shall constitute a quorum to transact business at any meeting.

### Article V—Adoption

This Constitution and By-laws upon approval by the Secretary of the Interior shall be effective when ratified by a majority of the eligible voters of the Band, voting in an election called by the Secretary of the Interior under rules and regulations prescribed by him pursuant to Section 3 of the Oklahoma Indian Welfare Act of June 26, 1936 (49 Stat. 1967), provided that at least thirty (30) percent of the eligible voters cast their ballots in such election.

I, William E. Warne, the Assistant Secretary of the Interior of the United States of America, by virtue of the authority granted me by the Act of June 26, 1936 (49 Stat. 1967), do hereby approve the attached Constitution and Bylaws of the United Keetoowah Band of Cherokee Indians in Oklahoma.

All officers and employees of the Interior Department are ordered to abide by the provisions of the said Constitution and By-laws.

Approval recommended: May 8, 1950.

D.S. Myer,
*Commissioner of Indian Affairs.*

**William E. Warne,**
*Assistant Secretary of the Interior.*

**Washington, D.C., May 8, 1950.**

7

### CERTIFICATION

Pursuant to an order approved May 8, 1950, by the Assistant Secretary of the Interior, the attached Constitution and By-laws was submitted for ratification to the members of the United Keetoowah Band of Cherokee Indians in Oklahoma and was on October 3, 1950, duly ratified by a vote of 1,414 for, and 1 against, in an election in which at least 30 percent of those entitled to vote cast their ballots, pursuant to Section 3 of the Oklahoma Indian Welfare Act of June 26, 1936 (49 Stat. 1967), and pursuant to the Act of August 10, 1946 (60 Stat. 976).

**Jim Pickup,**
*Chief, United Keetoowah Band of*
*Cherokee Indians, Oklahoma.*
**White Runabout,**
*Secretary, United Keetoowah Band of*
*Cherokee Indians, Oklahoma.*

W. O. ROBERTS,
*Area Director, Muskogee Area Office.*

O



# CORPORATE CHARTER

### OF THE

# UNITED KEETOOWAH BAND OF

# CHEROKEE INDIANS

# OKLAHOMA

✛

### RATIFIED OCTOBER 3, 1950





DEFENDANT'S
EXHIBIT



PAGE 74 (OF 111)

CIV-22-237-JFH-KEW

**UNITED STATES**
**DEPARTMENT OF THE INTERIOR**
BUREAU OF INDIAN AFFAIRS

# CORPORATE CHARTER

### OF THE

## UNITED KEETOOWAH BAND OF

## CHEROKEE INDIANS

## OKLAHOMA

✝

RATIFIED OCTOBER 3, 1950



**UNITED STATES**
**GOVERNMENT PRINTING OFFICE**
**WASHINGTON : 1951**



## CORPORATE CHARTER OF THE UNITED KEETOOWAH BAND OF CHEROKEE INDIANS IN OKLAHOMA

### A FEDERAL CORPORATION CHARTERED UNDER THE ACT OF JUNE 26, 1936 (49 STAT. 1967) AND THE ACT OF AUGUST 10, 1946 (60 STAT. 976)

Whereas, the United Keetoowah Band of Cherokee Indians in Oklahoma were recognized as a band of Indians residing in Oklahoma by the act of August 10, 1946 (60 Stat. 976), and seeks to organize under section 3 of the Oklahoma Indian Welfare Act of June 26, 1936 (49 Stat. 1967), by the adoption of a constitution and bylaws and a charter of incorporation approved by the Secretary of the Interior; and

Whereas, the said Band, by resolution of the Provisional Committee of the United Keetoowah Band of Cherokee Indians, has requested that a charter of incorporation be issued to the said Band, subject to ratification by a vote of the members of the Band;

Now, therefore, I, William E. Warne, Assistant Secretary of the Interior, by virtue of the authority conferred upon me by the said act of June 26, 1936, do hereby issue this Charter of Incorporation to the United Keetoowah Band of Cherokee Indians in Oklahoma, to be effective from and after such time as it may be ratified by a majority vote of the adult members of the Band voting; *Provided, however,* That such election shall be void unless the total vote cast be at least 30 percent of those entitled to vote.

*Corporate Purposes.*

1. The corporate purposes of the United Keetoowah Band of Cherokee Indians in Oklahoma shall be:

   (a) To define and safeguard the rights and powers of the United Keetoowah Band of Cherokee Indians in Oklahoma and its members;

   (b) To advance the standard of living of the Band through the development of its resources, the acquisition of land, the preservation of existing landholdings, the better utilization of land and the development of a credit program for the Band;

   (c) To promote in any other way the general welfare of the Indians of the United Keetoowah Band of Cherokee Indians in Oklahoma.

956686—51                    (1)



**2**

**Name, Membership, and Organization.**

2. The name of this corporation shall be the United Keetoowah Band of Cherokee Indians in Oklahoma, as provided in the Constitution and Bylaws of the said Band. The membership, the officers, and the management of the incorporated Band shall be as provided in the said Constitution and Bylaws.

**Corporate Powers.**

3. The United Keetoowah Band of Cherokee Indians in Oklahoma, subject to any restrictions contained in the Constitution and laws of the United States or in the Consitution and Bylaws of the Band, and subject to the limitations of sections 4 and 5 of this Charter, shall have the following corporate powers as provided by section 3 of the Oklahoma Indian Welfare Act of June 26, 1936 (49 Stat. 1967).

(a) To have succession by its corporate name perpetually.

(b) To sue and be sued; to complain and defend in any courts; *Provided, however,* that the grant or exercise of such power shall not be deemed a consent by the Band or by the United States to the levy of any judgment, lien or attachment upon the property of the Band other than income or chattles especially pledged or assigned.

(c) To make and use a common seal and alter the same at pleasure.

(d) To appoint such subordinate officers and agents as the business of the Band may require, and to allow them suitable compensation.

(e) To enter into any obligations or contracts essential to the transaction of its ordinary affairs or for the corporate purposes above set forth.

(f) To borrow money from the Indian Credit Fund in accordance with the terms of section 10 of the act of June 18, 1934 (48 Stat. 984), and section 6 of the act of June 26, 1936 (49 Stat. 1967), from any other governmental agency, from any member or association of members of the Band, or from any other source.

(g) To deposit corporate funds in a national bank insured by the Federal Deposit Insur-

**3**

ance Corporation or in the Postal Savings Bank or with a bonded disbursing officer of the United States.

(h) To negotiate with the Federal, State, or local governments and to advise or consult with the representatives of the Interior Department on all activities of the Department that may affect the United Keetoowah Band of Cherokee Indians in Oklahoma.

(i) To employ counsel for the protection and advancement of the rights of the Band and its members.

(j) To prevent any disposition, lease or encumbrance of land belonging to the Band, interest in land, or other Band assets.

(k) To advise the Secretary of the Interior with regard to appropriation estimates or Federal projects for the benefit of the Band prior to the submission of such estimates to the Bureau of the Budget and to Congress.

(l) To make assignmnents of land belonging to the Band to members of the Band, and to regulate the use and disposition of such assignments.

(m) To appropriate corporate funds for expenses of administering the affairs of the corporation and for other purposes of benefit to the United Keetoowah Band of Cherokee Indians in Oklahoma.

(n) To regulate the manner of holding Band elections.

(o) To regulate the procedures of the officers and membership and all other Band committees and officers.

(p) To protect and preserve the property, natural resources, crafts, and traditions of the United Keetoowah Band of Cherokee Indians in Oklahoma.

(q) To impose penalties on members of the United Keetoowah Band of Cherokee Indians in Oklahoma for violation of the corporate bylaws or ordinances, not exceeding in any case $100 for any one offense, or in the alternative, expulsion from the Band or suspension of voting rights therein.

PAGE 78 (of 111)

CIV-22-237-JFH-KEW

4

(r) To purchase, take by gift, bequest, or otherwise own, hold, manage, operate, and dispose of property of every description, real or personal.

(s) To issue bonds or other interests in corporate property in exchange for restricted Indian lands.

(t) To protect any interest which the United Keetoowah Band or its members may have in treaties made with the Cherokee Nation.

(u) To delegate to subordinate bodies, committees, or officers, or to any cooperative association which is open to all members of the Band, any of the foregoing powers, reserving the right to review any actions taken by virtue of such delegated powers.

(v) To exercise such further powers as may in the future be delegated to the Band by the Secretary of the Interior or by any duly authorized officer or agency of government.

Limitation of Corporate Powers.

4. The foregoing corporate powers shall be subject to the following limitations.

(a) No land belonging to the Band or interest in land shall ever be sold or mortgaged.

(b) No land or interest in land owned by the Band shall be leased for a longer period than ten years, except that oil, gas, or mineral leases may be made for longer periods when authorized by law.

(c) Any lease, grazing permit, or timber sale contract covering land owned by the Band shall provide that the person to whom such lease, permit, or contract is awarded, must conform with regulations issued by the Secretary of the Interior under section 6 of the act of June 18, 1934 (48 Stat. 984).

(d) No assignment of future income, other than assignments to the United States, shall be made for more than five years in advance.

(e) In any attorneys' contracts hereafter exe-cuted by the Band, the choice of attorneys and the fixing of fees shall be subject to the approval of the Secretary of the Interior.

5

(f) No distribution of corporate property among the members of the Band shall be made, except out of the net profit of corporate enterpises after all corporate debts then due have been paid.

Departmental Review of Corporate Acts.

5. Until ten years from the date of ratification of this Charter, or such other date as may be fixed pursuant to section 6, the following corporate acts or transactions shall be valid only after approval by the Secretary of the Interior or his duly authorized representatives:

(a) Any contract involving a payment by the Band of more than $5,000.00.

(b) Any transaction by which the Band borrows money where such borrowing brings the total indebtedness of the Band, aside from loans from the Indian Credit Fund, to a figure in excess of $500.00.

(c) Any resolution or ordinance governing the making of land assignments to members of the Band, the acquisition of land from members of the Band, or the use by individuals of land owned by the Band.

(d) Any lease, grazing permit, or other contract affecting land owned by the Band, including minerals or other interest in land owned by the Band.

(e) Any per capita distribution of corporate income to members of the Band in excess of $200.00 in any one year.

Extension and Termination of Supervisory Powers.

6. At any time within ten years after the ratification of this Charter any power of approval established by secton 5 may be terminated by the Secretary of the Interior with the consent of the United Keetoowah Band of Cherokee Indians in Oklahoma. At or before the expiration of this ten year period, the Secretary of the Interior may propose a further extension of this period. Such proposed extension shall be effective unless disapproved by three-fourths vote of the membership of the United Keetoowah Band of Cherokee Indians in Oklahoma.

6

*Corporate Rights and Property.*

7. Any rights and powers heretofore vested in the United Keetoowah Band of Cherokee Indians in Oklahoma, not expressly referred to in the Constitution, Bylaws, or Charter of the said Band, shall not be abridged, but may be exercised by the people of the United Keetoowah Band of Cherokee Indians In Oklahoma, through the adoption of appropriate additions and amendments to the Constitution, Bylaws, or Charter of said Band. No property rights or claims of the United Keetoowah Band of Cherokee Indians in Oklahoma existing prior to the ratification of this Charter shall be in any way impaired by anything contained in this Charter. The Band ownership of unallotted lands, whether or not occupied by particular individuals, is hereby expressly recognized. The individually owned property of members of the Band shall not be subject to any corporate debts or liabilities, without such owners' consent.

*Amendments.*

8. This Charter shall be not be revoked or surrendered except by an act of Congress, but amendments may be proposed by a majority vote of the Council or by a petition signed by 30 percent of the adult members of the Band and filed with the Secretary. Such amendments, if approved by the Secretary of the Interior, shall be submitted to a referendum vote of all members of the Band, and shall be effective if approved by a majority vote, provided that at least 30 percent of the eligible voters shall vote.

*Ratification.*

9. This Charter shall be effective from and after the date of its ratification by a majority vote of the adult members of the United Keetoowah Band of Cherokee Indians in Oklahoma, provided that at least 30 percent of the eligible voters shall vote, and provided further that the Band has agreed to a Constitution and Bylaws approved by the Secretary of the Interior. The ratification of the Charter shall be formally certified by the General Superintendent of the Five Civilized Tribes Agency and by the Chief and the Secretary of the Band.

Submitted by the Assistant Secretary of the Interior for ratification by the United Keetoowah Band of Cherokee Indians in Oklahoma.

**William E. Warne,**
*Assistant Secretary of the Interior.*

Washington, D.C., May 8, 1950.



7

I, William E. Warne, Assistant Secretary of the Interior of the United States of America, by virtue of the authority granted me by the act of June 26, 1936 (49 Stat. 1967) and the act of August 10, 1946 (60 Stat. 976), do hereby approve the attached Charter of the United Keetoowah Band of Cherokee Indians in Oklahoma, subject to ratification by the Band in the manner therein provided.

Upon ratification of this Charter all rules and regulations heretofore promulgated by the Interior Department or by the Bureau of Indian Affairs, so far as they may be incompatible with any of the provisions of the said Charter and the Constitution and Bylaws will be inapplicable to this Band from and after the date of their ratification thereof.

All officers and employees of the Interior Department are ordered to abide by the provisions of the said Constitution and Bylaws, and the Charter, if and when ratified by the Band.

Approval recommended : May 8, 1950.

**D. S. MYER,**
*Commissioner of Indian Affairs.*

**William E. Warne,**
*Assistant Secretary of the Interior.*

Washington, D. C., *May 8, 1950.*

CERTIFICATION

Pursuant to section 3 of the act of June 26, 1936 (49 Stat. 1967), this Charter issued on May 8, 1950, by the Assistant Secretary of the Interior to the United Keetoowah Band of Cherokee Indian in Oklahoma was duly submitted for ratification to the adult members of the Band, and was on October 3, 1950, duly ratified by a vote of 1,414 for, and 1 against, in an election in which at least 30 percent of those entitled to vote cast their ballots.

**Rev. Jim Pickup,**
*Chief, United Keetoowah Band of Cherokee Indians, Oklahoma.*

**White Runabout,**
*Secretary, United Keetoowah Band of Cherokee Indians, Oklahoma.*

**W. O. Roberts,**
*Area Director,*
*Muskogee Area Office.*

FILED

IN THE DISTRICT COURT OF THE CHEROKEE NATION
CRIMINAL DIVISION

2022 JUL 26  AM 8:58

CHEROKEE NATION DISTRICT COURT MUSKOGEE AREA COURT CLERK

CHEROKEE NATION,
                    Plaintiff,
vs.                                                  Case No. CM-21-772
DEBORAUGH D RODGERS
DOB: 11/17/1966
                    Defendant.

## AMENDED INFORMATION

**COUNT 1:**   **DRIVING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF DRUGS –
INCAPABLE OF SAFELY DRIVING - 47 CNCA § 11-902**

**COUNT 2:**   **RESISTING AN OFFICER - 21 CNCA § 268**

**COUNT 3:**   **TRANSPORTING LOADED FIREARM IN MOTOR VEHICLE - 21 CNCA 1289.13**

## IN THE NAME AND BY THE AUTHORITY OF THE CHEROKEE NATION:

I, Sara Hill, Attorney General of the Cherokee Nation, upon oath and affirmation of office,
give information that in the Cherokee Nation and within Indian Country as defined by 18 U.S.C.
section 1151 and the laws of the Cherokee Nation, anterior to the presentment thereof,
**Deboraugh D Rodgers** did commit the following crime(s):

### COUNT 1:

That **DEBORAUGH D RODGERS** did, on or about April 7, 2021, commit the crime of
**Driving a Motor Vehicle while Under the Influence of Drugs**, by driving and operating a GMC
pickup, bearing license plate UKB K009, over and upon a public highway at 4th Street and El
Molcajete parking lot, Tahlequah, Ok, Cherokee Nation Reservation, while under the influence of
intoxicating substances to a degree which rendered her incapable of safely driving a motor
vehicle.

### COUNT 2:

That **DEBORAUGH D RODGERS** did, on or about April 7, 2021 commit the crime of
**Resisting an Officer**, by refusing to follow the request of Officer Frits for her driver's license,
refusing to get out of the vehicle upon command and grabbing the steering wheel to pull away
from the officers. The said defendant knowing Dexter Scott and Matthew Frits to be a police
officer in the performance of said officer's official duties.



PAGE 80  (of 111)

## COUNT 3:

That **DEBORAUGH D RODGERS** did, on or about April 7, 2021, commit the crime of **Transporting Loaded Firearm In Motor Vehicle**, a Misdemeanor, by unlawfully, willfully and wrongfully, carry and transport a loaded firearm, to-wit:  a a 9mm Taurus in a motor vehicle over a public highway, to-wit: 4th Street/El Molcajete parking lot in Cherokee Nation County, Oklahoma, said firearm not being then and there in a locked compartment of said motor vehicle.

**FURTHER**, the defendant and/or victim qualify as an Indian as defined in 25 U.S.C. section 1301, being a member of the Cherokee Nation, a federally recognized tribe, and the defendant did, within the Cherokee Nation and on Indian Country on the dates aforesaid, commit the above crime(s), contrary to the Cherokee Nation statutes cited above, and against the peace and dignity of the Cherokee Nation.

SARA HILL
**ATTORNEY GENERAL**

By: _____
**Sandy J. Crosslin, CNBA #CNBA-0771**
**Assistant Attorney General**

## WITNESSES ENDORSED FOR THE CHEROKEE NATION

| | | |
|---|---|---|
| Matthew Frits | Tahlequah PD<br>100 Phoenix Ave. | Tahlequah, OK 74464 |
| Dexter Scott | Tahlequah PD<br>100 Phoenix Ave. | Tahlequah, OK 74464 |

PAGE 81  (of 111)

IN THE DISTRICT COURT OF THE CHEROKEE NATION
CRIMINAL DIVISION

FILED

2022 AUG -8 AM 10: 26

CHEROKEE NATION,

     Plaintiff,

vs.

Deboraugh Rodgers,

     Defendant.

)
)
)
)
)
)
)
)
)

CHEROKEE NATION
DISTRICT COURT
KRISTI HONCOOYEA
COURT CLERK

Case No. CM-21-772

## PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS FOR WANT OF JURISDICTION AND BRIEF IN SUPPORT

Plaintiff Cherokee Nation responds here to Defendant Deboraugh Rodger's Motion to Dismiss for Want of Jurisdiction filed July 26, 2022. There she asserts that both the Cherokee Nation government and judicial system possess no functional legal authority and the latter therefore lacks the jurisdiction to arbitrate the defendant's case. There is no merit to the defendant's claims, which are predicated on the dubious assertion that the Cherokee Nation has not properly established its government in accordance with the Oklahoma Indian Welfare Act.[1] The defendant's motion should be overruled, and the prosecution should proceed.

### SUMMARY OF ARGUMENT

The Cherokee Nation possesses the inherent sovereign authority to criminally prosecute individuals who violate Cherokee Nation law. The Cherokee Nation – both in its governmental and jurisdictional capacity – is operating under a valid constitution which has been passed,



---

[1] 74 P.L. 816, 49 Stat. 1967, 74 Cong. Ch. 831.

1

ratified, and approved[2] in accordance with all applicable legal requirements.[3] Further, the

Cherokee Nation maintains the inherent power of self-government to prosecute any Indian

defendant accused of a crime taking place within the boundaries of the Cherokee Nation

Reservation.[4] As a federally recognized Tribe, the Cherokee Nation has jurisdiction to adjudicate

the defendant's violations of the Tribe's laws which occur on the Tribe's reservation.[5]

## I.   The Cherokee Nation is operating under a valid Constitution.

The defendant makes a number of allegations regarding the legitimacy of the Cherokee

Nation constitution, and by extension attacks the authority of the Cherokee Nation to prosecute.

Such arguments have already been addressed and resolved by other courts and in other cases.

The Cherokee Nation Supreme Court found that the 1999 Constitution was properly proposed

and ratified by the citizens of the Cherokee Nation.[6] Despite a legal requirement of

Constitutional approval, the Cherokee Nation regardless sought approval from the Department of

---

[2] Press Release, Debra Haaland, Secretary of the Interior, Secretary Haaland Approves New Constitution for the Cherokee Nation, Guaranteeing Full Citizenship Rights for Cherokee Freedmen (May 12, 2021). https://www.doi.gov/pressreleases/secretary-haaland-approves-new-constitution-cherokee-nation-guaranteeing-full.

[3] *In re: The Status and Implementation of the 1999 Constitution of the Cherokee Nation*, JAT 05-04 (June 7, 2005). (https://www.cherokeecourts.org/Portals/cherokeecourts/Documents/Supreme_Court/Opinions/JAT-05-04%2022-Opinion%206-7-06.pdf).

[4] 25 U.S.C. § 1301. *See also Hogner v. State*, P.3d 629 (2021). (The Oklahoma Court of Criminal Appeals extended the conclusion of *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020) to affirm that the Cherokee Nation reservation was not disestablished.)

[5] Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 87 Fed. Reg. 4,636 (Jan. 28, 2022). (https://www.govinfo.gov/content/pkg/FR-2022-01-28/pdf/2022-01789.pdf).

[6] *In re: The Status and Implementation of the 1999 Constitution of the Cherokee Nation*, JAT 05-04 3 (June 7, 2005).

CIV-22-237-JFH-KEW

Interior.[7] After a period of internal litigation, Cherokee Nation received full approval from United States Department of Interior Secretary Debra Haaland in March 2021.[8]

Finally, the defendant alleges that the Cherokee Nation government was never properly reestablished under the Oklahoma Indian Welfare Act.[9] Similar arguments have already been tested in federal court;[10] appropriately, such courts have ruled in favor of the Cherokee Nation's inherent right to self-government: "Whether the Cherokee Nation subsequently reorganized under the OIWA is not determinative; the OIWA repealed the Curtis Act..."[11] The Court continued, noting a distinct lack of "any federal statute or treaty conditioning the ability to create tribal courts on federal approval of the Nation's constitution..."[12]

It is clear from the decisions on the Cherokee Nation Courts, Federal Courts, and the United States government, that the Cherokee Nation is a federally recognized Indian tribe with inherent sovereign authority to prosecute Indians for violations of the Nation's criminal law committed on the Cherokee Nation Reservation.

---

[7] *Secretary Haaland Approves New Constitution for the Cherokee Nation, Guaranteeing Full Citizenship Rights for Cherokee Freedmen* (May 12, 2021). https://www.doi.gov/pressreleases/secretary-haaland-approves-new-constitution-cherokee-nation-guaranteeing-full.

[8] *Secretary Haaland Approves New Constitution for the Cherokee Nation, Guaranteeing Full Citizenship Rights for Cherokee Freedmen* (May 12, 2021). https://www.doi.gov/pressreleases/secretary-haaland-approves-new-constitution-cherokee-nation-guaranteeing-full.

[9] Oklahoma Indian Welfare Act, 25 U.S.C. § 5203 (1936).

[10] *United Keetoowah Band of Cherokee Indians v. T. Luke Barteaux*, Case no. 20-CV-8-GKF-JFJ (Sept. 30, 2020).

[11] *Id.*

[12] *United Keetoowah Band of Cherokee Indians v. T. Luke Barteaux*, Case no. 20-CV-8-GKF-JFJ (Sept. 30, 2020)., citing *United States v. Wheeler*, 435 U.S. 313, 323 (1978).

3



## II.   The Cherokee Nation can validly exercise jurisdiction over the defendant in the instant case.

Under established federal Indian law principles, the Cherokee Nation has the authority to prosecute any Indian for crimes committed on the reservation.[13] Following the Supreme Court's decision in *McGirt v. Oklahoma* and subsequent supplementary rulings from the Oklahoma Court of Criminal Appeals, the existence of the Cherokee Nation reservation in northeastern Oklahoma has been legally confirmed.[14] According to Defendant's Motion to Dismiss, Defendant Rodgers is a "duly enrolled 'member' in the United Keetoowah Band of Cherokee Indians in Oklahoma (UKB) [sic] and a 'citizen' of the Cherokee Nation".[15] As such, both the tribal status of the defendant and the land status of the Cherokee reservation would provide basis for adjudication by the Cherokee judicial system.

The laws of the Cherokee Nation are similarly conclusive. Regarding territorial jurisdiction, Article II of the 1999 Cherokee constitution provides the operative boundaries as "those described by the patents of 1838 and 1846 diminished only by the Treaty of July 29, 1866, and the Act of March 3, 1893."[16] These boundaries align with those confirmed following the *McGirt* decision.[17] The Cherokee Nation tribal code further illuminates the breadth of the Tribe's jurisdiction by explicitly exercising jurisdiction over "disputes arising under the laws of

---

[13] 25 U.S.C. § 1301.

[14] *McGirt*, 140 S. Ct. 2452; *Hogner v. State*, P.3d 629 (2021); *Castro-Huerta [Appeals Court]*.

[15] Defendant's Motion to Dismiss for Want of Jurisdiction, 1.

[16] CHEROKEE NATION CONST. art. II.

[17] *McGirt*, 140 S. Ct. 2452.



4

Constitution of Cherokee Nation in both law and equity, whether criminal or civil in nature"[18] which occur in the territorial bounds of "Cherokee country"[19] or "Indian country"[20]. As such, there is no valid premise which would deny the Cherokee Nation jurisdiction over the defendant in the instant case.

### III.   The Defendant previously presented this same motion orally to the Court and the motion was denied.

The instant case was set for disposition on May 19, 2022 in the District Court of the Cherokee Nation. On that date, the Defendant requested that she be allowed to make oral motions to the Court. On that date, the Defendant asserted the same motion to dismiss for want of jurisdiction and argument orally as she has asserted in her written Motion to Dismiss for Want of Jurisdiction. The Honorable T. Luke Barteaux denied all defendant's motions on that day.

The principle of res judicata is applicable herein as the issue has already been decided by this very Court, in the same proceeding.

### CONCLUSION

In the instant case, the defendant is not levying a challenge against her own tribal status, nor the status of the land – only the validity of the government exercising the jurisdiction. These assertions are clearly without merit; the Cherokee Nation is operating under the force of a valid and legally grounded constitution and possess the inherent sovereign authority to criminally prosecute Indians who commit crimes on the Nation's reservation. Under established principles of Indian law, a Tribe has the authority to adjudicate the case of an Indian defendant whose

---

[18] 20 CNCA § 24.

[19] 20 CNCA § 25.

[20] 20 CNCA § 25; 18 USC § 1151 (1964).

5



PAGE 86 (0₃ 111)

CIV-22-237-JFH-KEW

crimes allegedly occurred within the bounds of their reservation. The facts in this case lend

themselves to such jurisdiction. Therefore, the Cherokee Nation is solidly capable of exercising

criminal jurisdiction over the defendant, and the defendant's motion to dismiss should be denied.

Respectfully submitted,

SARA HILL
Attorney General
SANDY J. CROSSLIN, CNBA #771
Assistant Attorney General
PO Box 1533
Tahlequah, OK  74465
(918) 453-5262

### CERTIFICATE OF MAILING

I, hereby certify that on the _____8th_____ day of _August_, 2022 I mailed a true,
correct, and copy of this to Deboraugh Rodgers, pro se to 24357 E. 757 Rd., Tahlequah, OK
74464.

Sandy J. Crosslin



PAGE 87 (of 111)





# IN THE DISTRICT COURT OF THE CHEROKEE NATION

2022 AUG 12 PM 1:12

Cherokee Nation,

        **Plaintiff,**

v.

Deboraugh Rodgers, DOB: 11/17/1966,
        **Defendant.**

Case No. CM 21 - 772

CHEROKEE NATION
DISTRICT COURT
PASTI MONCOOYEA
COURT CLERK

### Order Denying *Defendant's Motion to Dismiss for Want of Jurisdiction*

    Comes now the Court on *Defendant's Motion to Dismiss for Want of Jurisdiction* filed herein on July 25, 2022, and the *Plaintiff's Objection to Defendant's Motion to Dismiss for Want of Jurisdiction and Brief in Support* filed here in on August 8, 2022. The Nation is represented by Attorney General Sara Hill and Assistant Attorney General Sandy J. Crosslin. Defendant has elected to proceed pro se. It should be noted that Defendant has retained two different private attorneys during this matter, the Court has encouraged her to obtain new council or to fill out a pauper's affidavit on multiple occasions, but the Court has declined to do so. The Court finds and orders as follows:

    Defendant has been charged with three counts, namely:

        COUNT 1: DRIVING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF DRUGS – INCAPABLE OF SAFELY DRIVING - 47 CNCA § 11-902

        COUNT 2: RESISTING AN OFFICER - 21 CNCA §268

        COUNT: 3 TRANSPORTING LOADED FIREARM IN MOTOR VEHICLE - 21 CNCA 1289.13

    The Defendant's *Motion* contains same or similar arguments to the oral arguments made on May 19, 2022. The Court denied said oral arguments.

    The Court further adopts the Nation's legal analysis contained in *Plaintiff's Objection to Defendant's Motion to Dismiss for Want of Jurisdiction and Brief in Support*.

    This matter is currently set for and shall proceed with Jury Trial on August 22, 2022 at 8:30 AM.

    The Court denies the Defendant's *Motion*.



It is so ordered.

Dated: August 12, 2022

Judge of the District Court

### Certificate of Mailing

I, the undersigned, do hereby certify that on the 10 day of August, 2022, that I emailed, deposited in their Court mailbox, faxed, hand delivered, and or mailed a true and correct file stamped copy of the foregoing document to the following person(s):

Deboraugh Rodgers
24357 E 757 Rd
Tahlequah, OK 74464

Sandy Crosslin

Clerk of the District Court

I ... the foregoing instrument is a true
... correct copy of the original document filed
... records of the District Court of the
... Nation.

... 8/22/22 KRISTI MONCOOYEA, COURT CLERK

By: ____BB____
      DEPUTY

PAGE 89 (of 111)

CIV-22-237-JFH-KEW

IN THE DISTRICT COURT OF THE CHEROKEE NATION

CRIMINAL DIVISION

FILED

2022 AUG 18  PM 3:37

. . . NATION
. . . T COURT
. . . TI NONCOOYEA
COURT CLERK

CHEROKEE NATION,     )

      Plaintiff,     )

vs.     )     Case No.  CM-21-772

Deboraugh D Rodgers,     )

      Defendant,     )

## DEFENDANT'S MOTION TO STAY PROCEEDINGS

The undersigned, Deboraugh D. Rodgers, proceeding pro se, respectfully moves the court to grant a stay of the jury trial scheduled for August 22, 2022, at 8:30a.m., pending an appellate review of the *Order Denying Defendant's Motion to Dismiss for Want of Jurisdiction* which denied defendant's motion to dismiss.  This matter would present serious legal questions that need to be determined and the defendant would suffer irreparable injury if the jury trial would continue without being heard.  District Court should not move forward with the jury trial scheduled for August 22, 2022, at 8:30a.m. until the Supreme Court has made a decision on this matter.

Respectfully submitted,

Deboraugh D Rodgers

PAGE 90 (of 111)

CIV-22-237-JFH-KEW

## CERTIFICTION OF DELIVERY

I hereby certify that on the __18th__ day of August 2022, a true and correct copy of the foregoing document was hand-delivered to the following:

Cherokee Nation Attorney General

PO Box 1097

Tahlequah, Ok 74464,

_____

Deboraugh D Rodgers

IN THE DISTRICT COURT OF THE CHEROKEE NATION
CRIMINAL DIVISION

F I L E D

2022 AUG 19  AM 11: 36

CHEROKEE NATION,                    )
    Plaintiff,                      )
                        )
vs.                                 )   Case No. CM-21-772
                        )
DEBORAUGH D. RODGERS,               )
    Defendant                       )

_... NATION_
_... CT COURT_
_... H MONCOOYEA_
_... CLERK_

### Cherokee Nation's Objection and Response
### To Defendant's Motion to Stay Proceedings

    COMES NOW the Plaintiff, Cherokee Nation, and hereby objects to the Defendant's Motion to Stay Proceedings filed in this court on August 18, 2022.  The Nation would present the following facts and arguments to the Court:

1. That this matter is set for jury trial on August 22, 2022 at 8:30 a.m.
2. That the Plaintiff is ready for trial and objects to the last minute, last ditch effort of Defendant to further delay these proceedings.
3. That there is not currently any matters pending before the Cherokee Nation Supreme Court which could affect the outcome of the criminal prosecution of the Defendant.
4. That the Defendant failed to provide to this Court in her Motion to Stay any statutory authority or basis which would support her request.
5. That the Cherokee Nation Supreme Court Rules and Procedures, Rule 70 is applicable in this case and states in relevant part as follows:

    **APPELLATE PROCEDURE**
    **Rule 70.  Who may Appeal**
    **B.  Any party in a criminal case, may appeal a judgment or sentence.**

6. That the Defendant is attempting to stay this criminal prosecution with an interlocutory appeal, which is not available to her under Cherokee law.
7. That there is not a final judgment or sentence to appeal to the Supreme Court at this time.
8. That the Plaintiff can find no appellate decision on this issue by the Cherokee Nation Supreme Court. Although not binding but merely persuasive, there is Oklahoma law that addresses this issue.
9. Appeal is a creature of statute and exists only when expressly authorized. *White v. Coleman*, 1970 OK CR 133, ¶ 11, 475 P.2d 404, 406; *Weatherford v. State*, 2000 OK CR 22, ¶ 3; 13 P.3d 987, 988; *Burnham v. State*, 2002 OK CR 6, ¶ 6, 43 P.3d 387, 389; *City of Elk City v. State*, 2007



OK CR 15, ¶ 7, 157 P.3d 1152, 1154. "[U]nless we are vested with original jurisdiction, all exercise of power must be derived from our appellate jurisdiction, which is the power and the jurisdiction to review and correct those proceedings of inferior courts brought for determination in the manner provided by law." *In the matter of L.N.*, 1980 OK CR 72, ¶ 4, 617 P.2d 239, 240.

10. Oklahoma Courts do not engage in interlocutory review of an issue unless the defendant offers some constitutional, statutory, or judicially-created authority for interlocutory review under the circumstance. *Smith v. State*, 2013 OK CR 14, ¶ 24, 306 P.3d 557, 567. Petitioner offers no such authority in this matter and cannot provide any law of the Cherokee Nation that would give her this right.

11. In fact, Rule 70 stated above clearly indicates that appeal is a post-conviction or post-judgment right or remedy in criminal cases.

12. The Defendant alleges in her Motion to Stay that she will suffer irreparable injury if the jury trial moves forward.  However, she fails to allege what that injury would be.

13. The Nation alleges that there is no irreparable harm or injury that would occur if the stay is not granted as the defendant will have all rights of appeal guaranteed by Cherokee law at the conclusion of the criminal case.

WHEREFORE, premises considered, the Plaintiff requests that this Court deny the Defendant's Motion to Stay Proceedings and that the jury trial scheduled for August 22, 2022 proceed as previously ordered.

Respectfully submitted,

Sandy J. Crosslin, CNBA - #771
Assistant Attorney General

FILED

2022 AUG 18 PM 4: 24

CHEROKEE NATION
DISTRICT COURT
KELSI MONCOOYEA
COURT CLERK

IN THE DISTRICT COURT OF THE CHEROKEE NATION

CRIMINAL DIVISION

CHEROKEE NATION,                    )
                Plaintiff,         )
                           )
vs.                                 )          Case No.  CM-21-772
Deboraugh D Rodgers,                )
                Defendant,        )

## DEFENDANT'S MOTION TO STAY PROCEEDINGS

## ORDER

The foregoing motion having been heard by the Court, is hereby ORDERED:

GRANTED      ⟨ **DENIED** ⟩

By the Court,

_F. hube Borteaus_

Judge

PAGE 94 (OF 111)

CM-22-237-JFH-KEW

FILED

## IN THE SUPREME COURT OF THE CHEROKEE NATION

Deboraugh D. Rodgers,                          )
     Appellant/Defendant,                )          2022 AUG 22  AM 8: 44
                                                          )
vs.                                                             )          District Court No. CM-21-772 OH
                                                          )          SUPREME COURT
CHEROKEE NATION,                          )          KENDALL BIRD, COURT CLERK
     Appellee/Plaintiff,                        )          Supreme Court No. SC-22- 07

### PETITION IN ERROR

__X___     PETITION IN ERROR
_____     AMENDED OR SUPPLEMENTAL PETITION
_____     CROSS PETITION
_____     COUNTER-PETITION

DATE FIRST PETITION IN ERROR WAS FILED: __August 22, 2022_

### I.  TRIAL COURT HISTORY

COURT/ COMMISSION: _____District Court of the Cherokee Nation _____

CASE NO.: _____CM-21-772_____

JUDGE/ HEARING OFFICER: ____Honorable T. Luke Barteaux_____

NATURE OF CASE: _____Criminal Misdemeanor_____

NAME OF PARTY(IES) FILING THIS PETITION IN ERROR: _Deboraugh D. Rodgers _

_____

THE APPEAL IS BROUGHT FROM: (check one)

_____     Judgment, Decree or Final order of the District Court
_____     Appeal from order granting summary judgment or motion to dismiss
_____     Final Order of Other Tribunal, Commission, or Hearing Board
__X___     Interlocutory Order Appealable by right
_____     Other

### II.  TIMELINESS OF APPEAL

1.     Date judgment, decree, or order appealed was filed: ____August 12, 2022_____

2.     Does the judgment or order on appeal dispose of *all* claims by and against *all* parties? ___X___ Yes _____ No

3.     Were any post-trial motions filed? No
_____Type                              Date Filed               Date Disposed _____

I

4.   This Petition is filed by:     __X____   Delivery to Clerk, or
                                     _____    Mailing to Clerk by U.S. Certified Mail,
                                               Return Receipt Requested

## III.  RELATED OR PRIOR APPEALS

____NONE_____

## IV.  SETTLEMENT CONFERENCE

Is the appellant willing to participate in a Settlement Conference? _____Yes ___X__No

## V.  RECORD ON APPEAL

_____     A Transcript will be ordered
___X___    No Transcript will be ordered because no record was made and/or
           no transcript will be necessary for this appeal
___X__     Narrative Statement will be filed

## VI.  JUDGMENT, DECREE OR ORDER APPEALED-- EXHIBIT "A"

Attach as Exhibit "A" to the Petition in Error a certified copy of the judgment, of <u>DATE</u>

## VII.  SUMMARY OF CASE -- Exhibit "B"

Attach Exhibit "B" a brief summary of the case.

## VIII.  ISSUES TO BE RAISED ON APPEAL -- Exhibit "C"

Attach as Exhibit "C" the issues proposed to be raised.

## IX.  NAME OF PARTY, IF PRO SE

ATORNEY FOR APPELLANT                    ATORNEY FOR APPELLEE
Name: __Deboraugh Rodgers_____        Name: _____
CBNA: _____        CBNA: _____
Firm: _____       Firm: _____
Address: ___24357 E 757 RD_____       Address: _____
_____        _____

City:_____Tahlequah_____        City:_____
State: ___OK_____ Zip: __74464_____     State: _____ Zip: _____
Phone: (_918__) __718-1079_____       Phone: (_____) _____
Fax:  (_____) _____        Fax:  (_____) _____

DATE: ___August 22, 2022_____

2

Verified by: _____
               (Signature of Pro Se Party)

CNBA: _____
Firm: _____
Address: ___24357 E 757 RD_____

City:_____Tahlequah_____
State: ___OK_____ Zip: __74464____
Phone: (__918__) ____718-1079_____
Fax:  (_____) _____

## X.  CERTIFICATE OF MAILING TO ALL PARTIES
## AND COURT CLERK

I hereby certify that a true and correct copy of the Petition in Error, was mailed this 22nd day of August, 2022 to the following:

Sara Hill
Cherokee Nation Attorney General
Sandi Crosslin,
Cherokee Nation Assistant Attorney General
P.O. Box 1533
Tahlequah, OK 74465

Kristi Moncooyea
Cherokee Nation District Court Clerk
P.O. Box 1097
Tahlequah, OK 74465

I further certify that a copy of the Petition in Error was mailed to, or filed in, the office of the Court Clerk of the Cherokee Nation Supreme Court on the 22nd day of August, 2022.

_____
Court Clerk

3

## SUMMARY OF CASE – EXHIBIT "B"

1. Petitioner, Deboraugh D. Rodgers, was arrested on April 7, 2021 and incarcerated. Upon release, the case was transferred to the Cherokee Nation District Court in which she was charged with three charges.

Petitioner requested a change of venue and it was denied. Petitioner then filed Motion to Dismiss which was also denied on August 12, 2022. Petition filed a motion to stay the further proceedings to allow the opportunity afforded by the Court Rules to appeal. The stay was also denied. Petitioner is requesting appeal to the Supreme Court of the Cherokee Nation.



4

**DOCUMENTS** • CM-2021-0000772   Cherokee Nation vs. Deborough D Rogers

CASE STATUS • Pending - May 7, :

FROM DATE   
TO DATE   
DOCUMENT TITLE TEXT

INCLUDE ASSOCIATED CASES DOCUMENTS

Select All, None

1 - 25 of 25

| SEL | | DOCUMENT ID | 88366 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 05-07-2021 | *TITLE | Information | | VIEW | |
| ROA | | | | | | |

| SEL | | DOCUMENT ID | 88371 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 05-21-2021 | *TITLE | Court Minute Order 05-18-2021 | | VIEW | |
| ROA | | | | | | |

| SEL | | DOCUMENT ID | 88375 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 07-08-2021 | *TITLE | Defendant's Motion of Discovery, Inspection and Production of Evidence | | VIEW | |
| ROA | | | | | | |

| SEL | | DOCUMENT ID | 88377 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 07-09-2021 | *TITLE | Court Minute Order 7-21-2021 | | VIEW | |
| ROA | | | | | | |

| SEL | | DOCUMENT ID | 88383 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 09-10-2021 | *TITLE | Motion for Discovery | | VIEW | |
| ROA | | | | | | |

| SEL | | DOCUMENT ID | 88387 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 09-24-2021 | *TITLE | Court Minute Order 9-21-2021 | | VIEW | |
| ROA | | | | | | |

| SEL | | DOCUMENT ID | 88389 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 11-19-2021 | *TITLE | Court Minute Order 11-16-2021 | | VIEW | |
| ROA | | | | | | |

| SEL | | DOCUMENT ID | 88391 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 01-13-2022 | *TITLE | Court Minute Order 1-11-2022 | | VIEW | |
| ROA | | | | | | |

| SEL | | DOCUMENT ID | 88393 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 03-16-2022 | *TITLE | Court Minute Order 3-15-2022 | | VIEW | |
| ROA | | | | | | |

| SEL | | DOCUMENT ID | 88395 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 04-19-2022 | *TITLE | Motion to Withdraw | | VIEW | |
| ROA | | | | | | |

| SEL | | DOCUMENT ID | 88397 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 04-19-2022 | *TITLE | Order Allowing Withdrawal as Attorney of Record | | VIEW | |
| ROA | | | | | | |

| SEL | | DOCUMENT ID | 88399 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 05-20-2022 | *TITLE | Court Minute Order 5-19-2021 | | VIEW | |
| ROA | | | | | | |

*88399*   ← (sic)

| SEL | | DOCUMENT ID | 88401 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 06-23-2022 | *TITLE | Defendant's Motion to Return Seized Property | | VIEW | |
| ROA | | | | | | |

| SEL | | DOCUMENT ID | 88403 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 06-30-2022 | *TITLE | Order Denying Motion to Return Property | | VIEW | |
| ROA | | | | | | |

| SEL | | DOCUMENT ID | 88404 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 07-25-2022 | *TITLE | Defendant's Motion to Dismiss for Want of Jurisdiction | | VIEW | |
| ROA | | | | | | |

*88405*   ✗ SEALED   get cert copy

| SEL | | DOCUMENT ID | 88412 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 07-20-2022 | *TITLE | Amended Information | | VIEW | |
| ROA | | | | | | |

*88413*

| SEL | | DOCUMENT ID | 88404 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 07-26-2022 | *TITLE | Court Minute Order 7-26-22 | | VIEW | |
| ROA | | | | | | |

| SEL | | DOCUMENT ID | 93759 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 08-11-2022 | *TITLE | State's Objection to Defendant's Motion to Dismiss | | VIEW | |
| ROA | | | | | | |

*93759*

| SEL | | DOCUMENT ID | 93995 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 08-08-2022 | *TITLE | List of Witnesses Intended to Be Called at Trial and Other Relevant Discovery | | VIEW | |
| ROA | | | | | | |

| SEL | | DOCUMENT ID | 93997 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 08-08-2022 | *TITLE | Motion to Endorse Additional Witnesses | | VIEW | |
| ROA | | | | | | |

| SEL | | DOCUMENT ID | 93999 | VERIFIED | | SEALED |
|---|---|---|---|---|---|---|
| SCAN DATE | 08-08-2022 | *TITLE | Order Allowing Endorsement of Additional Witnesses | | | |

PAGE 99 (of 111)



98059

98061

98497

CIV-22-237-JFH-KEW

|  | SEL | | DOCUMENT ID | 98095 | VERIFIED | | | SEALED |
| SCAN DATE | | 09-15-2022 | *TITLE | | Defendant's Motion to Stay Proceedings | | | |
| ROA | | | | | | VIEW | | |
|  | SEL | | DOCUMENT ID | 98096 | VERIFIED | | | SEALED |
| SCAN DATE | | 09-15-2022 | *TITLE | | Defendant's Motion to Stay Proceedings Order | | | |
| ROA | | | | | | VIEW | | |
|  | SEL | | DOCUMENT ID | 98497 | VERIFIED | | | SEALED |
| SCAN DATE | | 09-15-2022 | *TITLE | | Muscogee Nation's Objection and Response to Defendant's Motion to Stay Proceedings | | | |
| ROA | | | | | | VIEW | | |

Select All None

1 - 25 of 25

Certified copy

CIV-22-237-JFH-KEW

FILED

## IN THE DISTRICT COURT OF THE CHEROKEE NATION

2022 AUG 12 PM 1:12

CHEROKEE NATION
DISTRICT COURT
KRISTI MONCOOYEA
COURT CLERK

Cherokee Nation,

        Plaintiff,

v.

Deboraugh Rodgers, DOB: 11/17/1966,

        Defendant.

Case No. CM 21 - 772

### Order Denying *Defendant's Motion to Dismiss for Want of Jurisdiction*

       Comes now the Court on *Defendant's Motion to Dismiss for Want of Jurisdiction* filed herein on July 25, 2022, and the *Plaintiff's Objection to Defendant's Motion to Dismiss for Want of Jurisdiction and Brief in Support* filed here in on August 8, 2022. The Nation is represented by Attorney General Sara Hill and Assistant Attorney General Sandy J. Crosslin. Defendant has elected to proceed pro se. It should be noted that Defendant has retained two different private attorneys during this matter, the Court has encouraged her to obtain new council or to fill out a pauper's affidavit on multiple occasions, but Defendant has declined to do so. The Court finds and orders as follows:

       Defendant has been charged with three counts, namely:

           COUNT 1: DRIVING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF DRUGS – INCAPABLE OF SAFELY DRIVING - 47 CNCA § 11-902

           COUNT 2: RESISTING AN OFFICER - 21 CNCA §268

           COUNT: 3 TRANSPORTING LOADED FIREARM IN MOTOR VEHICLE - 21 CNCA 1289.13

       The Defendant's *Motion* contains same or similar arguments to the oral arguments made on May 19, 2022. The Court denied said oral arguments.

       The Court further adopts the Nation's legal analysis contained in *Plaintiff's Objection to Defendant's Motion to Dismiss for Want of Jurisdiction and Brief in Support*.

       This matter is currently set for and shall proceed with Jury Trial on August 22, 2022 at 8:30 AM.

       The Court denies the Defendant's *Motion.*

It is so ordered.

Dated: August 12, 2022

*(signature)*

Judge of the District Court

## Certificate of Mailing

I, the undersigned, do hereby certify that on the 10 day of August, 2022, that I emailed, deposited in their Court mailbox, faxed, hand delivered, and or mailed a true and correct file stamped copy of the foregoing document to the following person(s):

Deboraugh Rodgers
24357 E 757 Rd
Tahlequah, OK 74464

Sandy Crosslin

*(signature)*

Clerk of the District Court

I certify that the foregoing instrument is a true and correct copy of the original document filed in the records of the District Court of the Cherokee Nation.

Date: 8/22/22  KRISTI MONCOOYEA, COURT CLERK

By: _BB_____
     DEPUTY

## ISSUES TO BE RAISED ON APPEAL – EXHIBIT "C"

Issue 1:  Did the Curtis Act have the effect of eliminating tribal courts and rendering Cherokee law unenforceable?

Issue 2:  Did the Curtis Act place the supervision of tribal courts in the hands of the Federal Government?

Issue 3:  Did that create a situation where there was concurrent jurisdiction between Federal and State governments to the exclusion of a defunct tribal governments?

Issue 4:  When the OIWA (Oklahoma Indian Welfare Act) was passed in 1936, it became possible for Indian tribes to obtain recognition by the Federal Government and after compliance with the OIWA provisions.  Was Federal approval of tribal governments possible?

Issue 5:  Did the Cherokee Nation of Oklahoma (CNO) avail themselves of the opportunity to organize a government under OIWA legislation?

Issue 6:  The UKB (United Keetoowah Band of Cherokee Indians in Oklahoma) tribe did avail themselves of the OIWA.  Did the UKB cooperate with the OIWA in the development of a constitution, bylaws and a federal corporate charter that became effective in 1950?

Issue 7:  Did the Federal Government, acting through the Secretary of Department of Interior approve the UKB organization of government in 1950?

Issue 8:  Has the UKB operated as an acknowledged and approved government since October 3, 1950?

Issue 9:  When the Federal Government organized a process under 25 CFR § 83.4 (B), did the CNO take advantage of that opportunity to organize a government?

Issue 10:  Did CNO attempt in its 1975 constitution to create an appearance of continuity of governance utilizing the constitution of 1839, in order to qualify for the government organization promulgated under 25 CFR §§ 83.4 and 83.11?

Issue 11: Was the constitution of 1839 rendered ineffectual by the Curtis Act?

Issue 12: Did the Bureau of Indian Affairs (BIA) commissioner, Morris Thompson, have the authority to authorize a referendum on the 1975 constitution?

Issue 13: In the 1976 referendum, called to ratify the 1975 constitution, how many adult eligible citizens of the CNO actually voted in that referendum?

Issue 14: What percentage of the Cherokee Nation population participated in the 1976 referendum?

5



CIV-22-237-JFH-KEW

Issue 15: In the 1999 constitution, what percentage of eligible votes was called for by the provision in the constitution regarding the number of eligible voters necessary to vote in order for there to be a ratification?

Issue 16: If the 1999 constitutions' provision provided for fifteen percent of the adult voting population to vote, was that in violation of the provisions of the OIWA § 5203 which required thirty percent of the adult citizens to vote?

Issue 17: What was the number of actual votes and what was the number of the actual population of the CNO when the referendum was conducted in the early 2000's concerning the 1999 constitution?

Issue 18: When the CNO Council on November 13, 1990, voted to create, under legislative act 11-90, a judiciary for the CNO, did the CNO Council have that authority?

Issue 19: Did the 1975 constitution provide for a JAT to authorized the creation of a comprehensive judicial organization ranging from the District Court through the Supreme Court?

Issue 20: Has the Curtis Act ever been repealed by an act of Congress?

Issue 21: Has the Cherokee Agreement of 1901 ever been repealed by an act of Congress?

Issue 22: Is it possible for a federal administrative agency such as the BIA to repeal or nullify a federal statute without the action of Congress?

Issue 23: Did the CNO take any steps between 1976 and 1999 to conform to the acknowledgment and approval elements of the process outlined in 25 CFR §§ 83.4 and 83.11?

Issue 24: Between 1999 and May 12, 2021, has the CNO ever taken any steps to comply with the administrative acknowledgement and approval process set forth in the CFR?

Issue 25: Since the constitution of 1999 was not adopted under the OIWA, the "general repealer clause" does not apply.

Issue 26: Did the Principal Chiefs Act authorize the creation of a government by the CNO?

Issue 27: Did the 1999 constitution, purportedly ratified in 2003, constitute the formation of a legitimate government under federal law?

Issue 28: Did the Secretary of Interior, Deb Haaland, exceed her authority when she purportedly signed a document approving the 1999 constitution?



PAGE 104 (OF 111)

Issue 29: Where any steps taken by the CNO to comply with the federal laws concerning the acknowledgement and approval of the tribal governments between 1999 and the signing of the approval by the Secretary of Interior in 2021?

Issue 30:



7

PAGE 105 (of 111)

FILED

# IN THE SUPREME COURT OF THE CHEROKEE NATION

2022 AUG 22  AM 8:46

|  |  |  |
|---|---|---|
| Deboraugh D. Rodgers, | ) | CHEROKEE NATION |
| Appellant/Defendant, | ) | SUPREME COURT |
| | ) | KENDALL BIRD, COURT CLERK |
| | ) | District Court No.   CM-21-772 |
| vs. | ) | |
| CHEROKEE NATION, | ) | Supreme Court No.  SC-22-*07* |
| Appellee/Plaintiff, | ) | |

## APPLICATION FOR STAY PROCEEDINGS

The undersigned, Deboraugh D. Rodgers, proceeding *pro se*, respectfully moves the court to grant a stay of the proceedings in the District Court of the Cherokee Nation, including but not limited to the jury trial scheduled for August 22, 2022, at 8:30a.m., pending an appellate review of the ***Order Denying Defendant's Motion to Dismiss for Want of Jurisdiction,*** dated August 12, 2022, in which the District Court of the Cherokee Nation denied defendant's motion to dismiss.  Appellant then moved the District Court of the Cherokee Nation to stay jury trial proceedings with the filing of ***Defendant's Motion to Stay Proceedings*** which was denied on August 18, 2022.

Appellant has filed a Petition in Error in the office of the clerk of the Supreme Court of the Cherokee Nation within the time constraints of **Rule 71. B.** of the Supreme Court and that appeal is being made from an order of the District Court as described in **Rule 75** of the Supreme Court, which also authorizes the stay of an order of the District Court, pending resolution of appeal.  This application meets the requirements of 20 C.N.C.A. § 51 as noted in **Rule 22** of the Supreme Court.

This matter would present serious legal questions that need to be determined



1

PAGE 106 (of 111)

and the appellant would suffer irreparable injury and irreversible harm to include possible jail sentence and or penalties that the appellant wouldn't have if the motion to dismiss would have been granted by the District Court. This ruling denied appellant due process and a fair trial under the fifth and fourteenth amendments of the U.S. Constitution by the refusal of the District Court to stay proceedings on the denied jurisdictional motion resulting in an appeal to the Supreme Court of the Cherokee Nation or an appeal to the Federal Court by appellant.

Wherefore, the appellant prays that the court enter an order of stay as described herein.

Respectfully submitted,

Deboraugh D Rodgers, *pro se*

Under the penalties of the Criminal Code, these contents are true and correct to the best of the declarant's knowledge and belief.

Deboraugh D Rodgers, *pro se*

2

**DISTRICT COURT OF CHEROKEE NATION**

FILED

**CHEROKEE NATION,**

vs.

Deborough Rodgers

TR/CM/CF 21-772
TR/CM/CF _____
TR/CM/CF _____
TR/CM/CF _____
TR/CM/CF _____

2022 MAY 20 PM 1:21

CHEROKEE NATION
DISTRICT COURT
KRISTI MONCOOYEA
COURT CLERK

**COURT MINUTE / ORDER**

Date: 5-19 , 20 22
Judge: ☒Barteaux ☐Page ☐Barnard
Court Reporter: ☐No ☐Yes _____

Cherokee Nation appeared by S. Crosslin

Defendant appeared ☒in person ☐by counsel pro se _____ ☐in custody ☒out of custody

☐Defendant failed to appear bench warrant ordered, ☐Bond forfeited, Bond ☐2X ☐_____ X
☐Interpreter

**THE COURT FINDS AND ORDERS:**
☐Defendant appeared for initial appearance. Arraignment held.☐Pleas Not Guilty ☐Pleas Guilty
☐Instructed to fill out poverty affidavit ☐Waives right to counsel ☐Count(s) _____dismissed
☐Identifiers amended: _____ ☐Enters a blind plea
☐Defendant confesses:☐Application to Accelerate ☐Motion to revoke
☐CN's ☐Def's ☐Agreed Motion to Continue ☐with ☐without objection is ☐granted ☐denied

**CASE SET FOR FURTHER PROCEEDINGS AS FOLLOWS:**
☐Further Arraignment ☐Disposition ☐Conference ☐Plea ☐Motion Hearing ☒Pre-Trial ☐Trial - Jury
☐Trial - Non Jury ☐Review ☐Sentencing ☐Hearing on Application to ☐Revoke ☐Accelerate ☐Remove

NEXT COURT DATE IS 7-26 , 2022 . AT 9 : 30 ☒AM ☐PM. **DEFENDANT IS RECOGNIZED BACK ON SAID DATE AND TIME.**

☐Defendant is released on previously posted bond or own recognizance bond.
Other: Plea offer extended by AG; Defendant declines offer and requests trial; Motions of Defendant denied by Court
X Defendant present in Court; refused to sign cmo and give actual notice of date in open Court,

It is so ordered.

Defendant / Attorney

Attorney General

District Court Judge

and given copy of this order.

PAGE 108 (of 111)

CIV-22-237-JFH-KEW

## DISTRICT COURT OF CHEROKEE NATION

**CHEROKEE NATION,**

**vs.**

*Deboraug Rodgers*

| | |
|---|---|
| TR/CM/CF | *CM* 21-772 |
| TR/CM/CF | |
| TR/CM/CF | |
| TR/CM/CF | |
| TR/CM/CF | |

2022 AUG 22 AM 10:59

### COURT MINUTE / ORDER

Date: **8-22**, 20**22**

Judge: ☒Barteaux ☐Page ☐Barnard
Court Reporter: ☐No ☐Yes _____

Cherokee Nation appeared by _____

Defendant appeared ☒in person ☐by counsel _____ ☐in custody ☐out of custody

☐Defendant failed to appear bench warrant ordered, ☐Bond forfeited, Bond ☐2X ☐_____X
☐Interpreter

### THE COURT FINDS AND ORDERS:
☐Defendant appeared for initial appearance. Arraignment held. ☐Pleas Not Guilty ☐Pleas Guilty
☐Instructed to fill out poverty affidavit ☐Waives right to counsel ☐Count(s) _____ dismissed
☐Identifiers amended: _____ ☐Enters a blind plea
☐Defendant confesses: ☐Application to Accelerate ☐Motion to revoke
☐CN's ☐Def's ☐Agreed Motion to Continue ☐with ☐without objection is ☐granted ☐denied

### CASE SET FOR FURTHER PROCEEDINGS AS FOLLOWS:
☒Further Arraignment ☐Disposition ☐Conference ☐Plea ☐Motion Hearing ☐Pre-Trial ☐Trial - Jury
☐Trial - Non Jury ☐Review ☐Sentencing ☐Hearing on Application to ☐Revoke ☐Accelerate ☐Remove

**NEXT COURT DATE IS** *Aug 23*, 20**22** **AT** *10:00* ☒AM ☐PM. **DEFENDANT
IS RECOGNIZED BACK ON SAID DATE AND TIME.**

☐Defendant is released on previously posted bond or own recognizance bond.
Other: *JT, reset to next PT & JT*
*A refused to proceed after multiple requests.*
*Bond revoked & contempt of court.*
*Amanda Bradley appointed.*

_____
Defendant / Attorney

_____
Attorney General

It is so ordered,

_____
District Court Judge

PAGE **109** (of 111)

CIV-22-237-JFH-KEW

### DISTRICT COURT OF CHEROKEE NATION

**CHEROKEE NATION,**

**VS.**

Deboraugh Rodgers

TR/CM/CF 21-772
TR/CM/CF _____
TR/CM/CF _____
TR/CM/CF _____
TR/CM/CF _____

2022 AUG 23 PM 1:02

FILED

### COURT MINUTE / ORDER

Date: 8-23 , 20 22

Judge: ☐Barteaux ☒Page ☐Barnard

Court Reporter: ☐No ☐Yes _____

Cherokee Nation appeared by S. Bishop

CCDC

Defendant appeared ☐in person ☐by counsel _____ ☒in custody ☐out of custody

☐Defendant failed to appear bench warrant ordered, ☐Bond forfeited, Bond ☐2X ☐_____ X
☐Interpreter

### THE COURT FINDS AND ORDERS:

☐Defendant appeared for initial appearance. Arraignment held. ☐Pleas Not Guilty ☐Pleas Guilty
☐Instructed to fill out poverty affidavit ☐Waives right to counsel ☐Count(s) _____ dismissed
☐Identifiers amended: _____ ☐Enters a blind plea
☐Defendant confesses: ☐Application to Accelerate ☐Motion to revoke
☐CN's ☐Def's ☐Agreed Motion to Continue ☐with ☐without objection is ☐granted ☐denied

### CASE SET FOR FURTHER PROCEEDINGS AS FOLLOWS:

☒Further Arraignment ☐Disposition ☐Conference ☐Plea ☐Motion Hearing ☐Pre-Trial ☐Trial - Jury
☐Trial - Non Jury ☐Review ☐Sentencing ☐Hearing on Application to ☐Revoke ☐Accelerate ☐Remove

**NEXT COURT DATE IS** August 30 , 20 22 . AT 10 : 00 ☒AM ☐PM. **DEFENDANT IS RECOGNIZED BACK ON SAID DATE AND TIME.**

☐Defendant is released on previously posted bond or own recognizance bond.
Other: Continued at N's request. A requested time to consult with an attorney before entering any plea to the contempt.

It is so ordered.

_____
**Defendant / Attorney**

_____
**Attorney General**

_____
**District Court Judge**

PAGE 110 (of 111)

**DISTRICT COURT OF CHEROKEE NATION**

CHEROKEE NATION,

vs. _Deboraugh Rodgers_

| TR/CM/CF | 21-772 |
| TR/CM/CF | |
| TR/CM/CF | |
| TR/CM/CF | |
| TR/CM/CF | |

FILED

AUG 30 2022

CHEROKEE NATION
DISTRICT COURT

## COURT MINUTE / ORDER

Date: ___8-30___, 20 _22_

Judge: ☐Barteaux ☒Page ☐Barnard
Court Reporter: ☐No ☐Yes _____

Cherokee Nation appeared by ___C. Bowlin___

Defendant appeared ☐in person ☐by counsel _____  CCDC  ☒in custody ☐out of custody

☐Defendant failed to appear bench warrant ordered, ☐Bond forfeited, Bond ☐2X ☐_____X
☐Interpreter

**THE COURT FINDS AND ORDERS:**
☒Defendant appeared for initial appearance. Arraignment held. ☒Pleas Not Guilty ☐Pleas Guilty
☐Instructed to fill out poverty affidavit ☐Waives right to counsel ☐Count(s) _____dismissed
☐Identifiers amended: _____ ☐Enters a blind plea
☐Defendant confesses: ☐Application to Accelerate ☐Motion to revoke
☐CN's ☐Def's ☐Agreed Motion to Continue ☐with ☐without objection is ☐granted ☐denied

**CASE SET FOR FURTHER PROCEEDINGS AS FOLLOWS:**
☐Further Arraignment ☒Disposition ☐Conference ☐Plea ☐Motion Hearing ☐Pre-Trial ☐Trial - Jury
☒Trial - Non Jury ☐Review ☐Sentencing ☐Hearing on Application to ☐Revoke ☐Accelerate ☐Remove

**NEXT COURT DATE IS** _October 6_, 20_22_. **AT** _10:00_ (AM) PM. **DEFENDANT IS RECOGNIZED BACK ON SAID DATE AND TIME.**

☐Defendant is released on previously posted bond or own recognizance bond.
Other: _Δ given O.R. bond on contempt charge only._
_____

_____
Defendant / Attorney

_____
Attorney General

It is so ordered.

_Tony R. Page_

District Court Judge